**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 09CR179** |
| | ) | **Motions Hearing: June 12, 2009** |
| | ) | |
| **MIRWAIS MOHAMADI,** | ) | **The Honorable Liam O'Grady** |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY

Defendant Mirwais Mohamadi hereby moves this Honorable Court to exclude evidence of identifications made by Gebru Haile and Kimberly Riley.  Mr. Mohamadi further moves to suppress any in-court identification of Mr. Mohamadi by Mr. Haile and Ms. Riley.  In support of this motion, Mr. Mohamadi states as follows:

## BACKGROUND

Mr. Mohamadi is charged in a ten-count indictment with: (1) two counts of Hobbs Act robberies in violation of 18 U.S.C. §1951; (2) two counts of use and carry of a firearm during a crime of violence  in violation of 18 U.S.C. § 924(c); (3) one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g); (4) two counts of solicitation to commit murder for hire in violation of 18 U.S.C. § 373; (5) one count of using the mails and telephones with the intent that a murder be committed in violation of 18 U.S.C. §1958; and (6) two counts of attempting to persuade a witness to hinder, delay and prevent the witness from communicating information to a law enforcement officer in violation of 18 U.S.C. § 1512.

The government alleges that on May 26, 2007, Mr. Mohamadi committed a robbery against Kimberly Riley.  The government further alleges that on May 27, 2007, Mr. Mohamadi committed a robbery against Gebru Haile.  As part of the investigation of the two alleged robberies, Alexandria enforcement officers showed a six-photograph array of pictures to Mr. Haile on June 1, 2007 and to Ms. Riley on June 5, 2007.  Ms. Riley was shown a different, nine-photograph array on June 14, 2007 by Washington, D.C. law enforcement officers.

<u>ARGUMENT</u>

Pursuant to the Due Process Clause, a defendant is entitled to pretrial identification procedures that are not impermissibly suggestive or conducive to a mistaken identification.  *Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).  To ensure that a defendant's constitutional rights are protected, the Court must engage in a two-step inquiry.  First, the Court should examine whether the out-of-court identification was impermissibly suggestive. *Holdren v. Legursky*, 16 F.3d 57, 61 (4th Cir. 1994).  Second, assuming suggestiveness, the Court then should determine whether that identification was nonetheless reliable under the totality of the circumstances.  *Id*.; *see also United States v. Dorta*, 783 F.2d 1179, 1183 (4th Cir. 1986).

A.  <u>Suggestiveness</u>

*<u>Alexandria Photo Array</u>*

1.    June 1, 2007 identification by Mr. Haile.

The identification by Mr. Haile occurred under unduly suggestive circumstances.  As presented to counsel, the photos for each person in the line-up include extraneous information, including the suspect's name, age and date of birth.  Mr. Mohamadi's picture, by contrast, sits alone

2

with no additional information.  Not only would this extraneous information allow Mr. Haile to narrow his choices by using the distinguishing information, it also sets Mr. Mohamadi's picture apart as obviously different than the others.

Further, even if Mr. Haile was shown just the picture for the other individuals (and not the additional information), the pictures themselves focus attention on Mr. Mohamadi's picture.  While the other five pictures show the shoulders and upper chest of the individuals.  Because of the broader range of the pictures, an observer can see they are wearing street clothes.  Mr. Mohamadi's picture, in contrast, shows just his head and neck.  This makes his picture distinct and noticeable compared to the other photos.  Further, it appears from his picture that Mr. Mohamadi is wearing a jail jumpsuit.

Lastly, although the law enforcement officers initially presented Mr. Haile with the photographs one at a time, Mr. Haile asked, and was allowed, to view Mr. Mohamadi's picture alongside another picture.  This defeats the purpose of showing the photographs individually, which is the less suggestive format.

For these reasons, the photo array that was presented to Mr. Haile was unduly suggestive.

2.      June 5, 2007 identification by Ms. Riley

The identification by Ms. Riley occurred under unduly suggestive conditions.  As Ms. Riley viewed the same photo array as Mr. Haile, the array she observed was suggestive for the reasons stated above.  In Ms. Riley's case, however, the circumstances surrounding the viewing were even more suggestive.  Prior to being shown the array, Ms. Riley met with the officer presenting the photographs.  When that officer opened his file, Ms. Riley was able to view a picture of Mr. Mohamadi that the officer had collected as part of his investigation.  This photo was not part of the

photographic line-up.  When Ms. Riley viewed the photograph, she stated that was the person who had robbed her.  These are precisely the circumstances that a proper photo array hopes to avoid: a single picture of an individual that the person is aware is a suspect.  After viewing the single photograph from the officer's file, Ms. Riley was then shown the full array.  Having already seen a picture of Mr. Mohamadi, she cannot have made an independent evaluation of the photographs contained in the array.  Further, the officer's caution that the suspect may or may not be contained in the array was meaningless.  Ms. Riley clearly knew that the suspect was contained in the array, as she had seen his picture moments before.  Ms. Riley's identification, therefore, was not based on her independent recollection of the person she met, but rather was based on her knowledge that the police considered Mr. Mohamadi a suspect.  This, again, is precisely the situation a photo array hopes to avoid.

The indication of which person was a suspect, coupled with the fact that Mr. Mohamadi stood out from the other photographs, created an unduly suggestive set of circumstances under which Ms. Riley made the identification on June 2, 2007 unreliable.

### *Washington, D.C. Photo Array*

1.    June 14, 2007 identification by Ms. Riley

The second photo array that Ms. Riley observed also occurred under unduly suggestive circumstances.  Again, most of the individuals pictures are wearing street clothes, while Mr. Mohamadi is wearing what appears to be a jail jumpsuit.  More importantly, however, no line-up that was created by the Washington, D.C. police could avoid the fact that Ms. Riley's identification was already tainted by the fact that she had seen a photograph of the person the police suspected.  The photo array from the Washington, D.C. police was presented after Ms. Riley had already seen the

photograph of Mr. Mohamadi in the file. Just as having that information led her to pick out Mr. Mohamadi's picture on June 5, 2007, Ms. Riley's identification on June 14, 2007 was influenced by her knowledge of who the main suspect was. Buttressing her belief that Mr. Mohamadi was the person she should select was, of course, the fact that he appeared in both photo arrays.

Because the process used by authorities was unduly suggestive, this Court must next decide whether the identification was nonetheless reliable enough to avoid exclusion.

B.  Reliability

If the confrontation is suggestive, an identification may be admitted only if it is substantially reliable. *Smith v. Coiner*, 473 F.2d 877, 881 (4th Cir, 1973) (*citing Neil v. Biggers,* 409 U.S. 188 (1972)). Factors that the Court should consider in assessing the reliability of any identification include:

> (1) [the] witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention at the time of [the] offense; (3) the accuracy of [the] witness' prior description of the perpetrator; (4) the witness' level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the crime and the confrontation.

*United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997) (citing, *inter alia*, *Neil v. Biggers*, 409 U.S. at 199-200); *accord Manson*, 432 U.S. at 114.

*Identification by Mr. Haile*

1.  The Opportunity to View

Mr. Haile alleges to have been robbed by an individual who was a passenger in his taxicab. That individual was not previously known to Mr. Haile and rode in the backseat of the car. Although the two men spoke, the interaction only lasted the duration of a cab ride from several points, all within the District of Columbia, and then to Alexandria.

5

2.  The Degree of Attention

Mr. Haile is a taxicab driver who likely drives dozens of people every day.  The individual in his taxicab clearly did not present as a threat at the time or Mr. Haile would not have agreed to transport him.  There was no particular reason for this person to stand out, or for Mr. Haile to have paid anymore attention to him than other customers.

3.  Accuracy of the Description

Mr. Haile was only able to provide the law enforcement officers a description that encompassed two possible races and an age range of ten years.  He described Mr. Mohamadi as either black or Hispanic and between twenty and thirty years old.  Mr. Mohamadi is neither black, nor Hispanic.  While Mr. Mohamadi falls within the broad age range provided by the witness, it is such a broad description, it becomes overly inclusive.  It certainly is not specific enough to render an otherwise unreliable identification reliable.

4.  The Witness' Level of Certainty

Mr. Haile was not certain of his identification.  He stated that a person depicted in another photograph was "close, somewhat."  Before selecting Mr. Mohamadi's picture, he asked to see the other photograph again.   Mr. Haile viewed both photographs together before selecting Mr. Mohamadi's photograph.  Only then was he able to select Mr. Mohamadi's photograph.

5.  The Time Between the Crime and the Confrontation

Mr. Haile alleges to have been robbed in the early morning hours of May 27, 2007.  He was not shown the photo array until June 1, 2007.  Nearly a full week elapsed between the time of the incident and the time of the identification.

For the reasons stated above, the factors surrounding Mr. Haile's identification of Mr. Mohamadi do not show that the identification was otherwise reliable.

*Identification by Ms. Riley*

1.  The Opportunity to View

Although Ms. Riley had a better opportunity to view her supposed attacker than Mr. Haile did his, she still did not have an opportunity that would lend inherent reliability to her identification. Ms. Riley and the individual met via the Internet on the day of the incident.  They were not long-time friends or even casual acquaintances.  Ms. Riley had never met this person before.  Although they spent some time together on the night of the alleged robbery, she did not have an opportunity to view that individual such that her tainted identification could be considered otherwise reliable.

2.  The Degree of Attention

Ms. Riley clearly did not fear the individual as she was interacting with him throughout the course of the night.  She did not have any particular reason to pay attention to his physical characteristics at the time she observed him.  Her degree of attention, therefore, was no more than that paid to the average client and, therefore, is not sufficient to make her tainted identification otherwise reliable.

3.  Accuracy of the Description

Ms. Riley was only able to provide the law enforcement officers a description that encompassed two possible races and an age range of ten years.  She described Mr. Mohamadi as either Asian or Hispanic and between twenty and thirty years old.  Mr. Mohamadi is neither Asian, nor Hispanic.  While Mr. Mohamadi falls within the broad age range provided by the witness, it is

such a broad description, it becomes overly inclusive.  It certainly is not specific enough to render an otherwise unreliable identification reliable.

### 4.  The Witness' Level of Certainty

Although Ms. Riley arguably displayed a degree of certainty in her June 5, 2007 and June 14, 2007 identifications, this must be viewed with all the circumstances of the identification: Ms. Riley had already seen a picture of the man the police suspected.  Although she likely did feel certain in her identification, she was not certainly identifying him from her independent recollection of the incident.  Rather, she was certainly identifying Mr. Mohamadi from her knowledge that the police considered Mr. Mohamadi a suspect.  Her certainty, therefore, does not lend reliability to an otherwise tainted identification.

### 5.  The Time Between the Crime and the Confrontation

Ms. Riley alleges to have been robbed on May 26, 2007.  She was not shown the first photo array until June 5, 2007 and not shown the second until June 14, 2007.  Nearly a full week elapsed, therefore, before the first identification and another nine days passed before the second, making it weeks after the incident.  This length of time makes the tainted identification less reliable, not more.

These five factors demonstrate that the identification is not substantially reliable.  Accordingly, this Court should suppress all evidence of Mr. Haile and Ms. Riley's out-of-court identifications of Mr. Mohamadi.

### C.  In-Court Identification

An in-court identification should be suppressed unless the government can "'establish by clear and convincing evidence that the in-court identification[ ] [was] based upon observations of the suspect other than the [suggestive] identification.'"  *United States v. Burgos*, 55 F.3d 933, 941

8

(4th Cir. 1995) (quoting *United States v. Wade*, 388 U.S. 218, 240 (1967)).  That is, the Government must show that any subsequent identification is not "tainted" by the improper pretrial identification. *United States v. Crews*, 445 U.S. 463, 471-73 (1980); *see also Johnson*, 114 F.3d at 441-42.  The taint must be such as to give rise to a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384 (1968).

In the instant case, the June 1, 2007, June 5, 2007 and June 14, 2007 identification procedures were impermissibly suggestive and conducive to misidentification.  The totality of the circumstances, as outlined in the *Neil v. Biggers* analysis, demonstrates that Mr. Haile's initial observation of the alleged robber was short and marked by Mr. Haile's inability to directly view the attacker in the back seat during the majority of their contact.  In contrast, Mr. Haile was apparently given no limit on the time he spent observing the pictures and was, in fact, able to revisit previous pictures and compare and contrast them until he made the identification.  Ms. Riley's identification suffers from a different, but equally serious reliability problem.  Ms. Riley's identification of Mr. Mohamadi on June 5, 2007 was made in the shadow of the picture of a suspect she saw in the file immediately prior to making her identification.  Her June 14, 2007 identification was made subsequent to viewing both the picture in the file and a picture of Mr. Mohamadi that appeared in a prior photo array.  Any in-court identification will be tainted by this same improper knowledge. The suggestive nature of the initial identifications can not help but taint any attempts by Mr. Haile and Ms. Riley to identify Mr. Mohamadi in court and will cause a substantial likelihood of irreparable misidentification.

<u>CONCLUSION</u>

Accordingly, for the foregoing reasons, and any others to be adduced at a hearing on this motion, it is respectfully requested that this motion be granted, and that the Court suppress all evidence of and all testimony related to: (1) the alleged out-of-court identifications by Mr. Haile and Ms. Riley of Mr. Mohamadi made on June 1, 2007, June 5, 2007 and June 14, 2007, (2) any attempted in-court identification by Mr. Haile or Ms. Riley of Mr. Mohamadi to be made at the trial in this matter which is tainted by the suggestive identifications made on the dates above.

Respectfully submitted,
MIRWAIS MOHAMADI
By Counsel

_____/s/_____
Kevin Brehm
pro hoc vice
Whitney E.C. Minter
Virginia Bar No. 47193
Assistant Federal Public Defenders
Counsel for Mr. Mohamadi
1650 King St., Suite 500
Alexandria, Virginia 22314
(703) 600-0840 (tel.)
(703) 600-0880 (fax)
Whitney_Minter@fd.org

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing  (NEF) to the following:

Ronald L. Walutes, Jr.
Stephanie Bibighaus Hammerstrom
Assistant U.S. Attorneys
2100 Jamieson Ave.
Alexandria, Virginia, 22314
(703) 299-3700
(703) 299-2584 (facsimile)
ron.walutes@usdoj.gov
stephanie.bibighaus@usdoj.gov

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____
Kevin Brehm
pro hoc vice
Whitney E.C. Minter
Virginia Bar No. 47193
Assistant Federal Public Defenders
Counsel for Mr. Mohamadi
1650 King St., Suite 500
Alexandria, Virginia 22314
(703) 600-0840 (tel.)
(703) 600-0880 (fax)
Whitney_Minter@fd.org