1

```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF VIRGINIA
                      Alexandria Division




------------------------------:
                              :
UNITED STATES OF AMERICA      :
                              :
                              :
    -vs-                      :       Case No. 1:09-cr-179
                              :
                              :
MIRWAIS MOHAMADI,             :
              Defendant.      :
                              :
------------------------------:
```

                         MOTIONS HEARING


                          May 8, 2009


                Before:  Liam O'Grady, Judge




APPEARANCES:

Ronald L. Walutes, Jr., and Stephanie B. Hammerstrom,
Counsel for the United States

Kevin Brehm, Counsel for the Defendant

The Defendant, M. Mohamadi, in person

2

1          THE CLERK:  Criminal case number 1:09-cr-179, the

2   United States of America versus Mirwais Mohamadi.  Counsel

3   please identify themselves for the record.

4          MR. WALUTES:  Good morning, Your Honor.  Ronald

5   Walutes for the United States, joined by Stephanie

6   Hammerstrom.

7          THE COURT:  All right.  Good morning.

8          MR. BREHM:  Good morning, Your Honor.  Kevin Brehm

9   on behalf of Mr. Mohamadi.  He is present in court today in

10   the Marshal's custody.

11          Your Honor, I believe the purpose today is on our

12   motion asking to change and modify some of the conditions he

13   is being held under as a pretrial detainee.

14          THE COURT:  Yes, sir.

15          MR. BREHM:  We tried to in some respects kind of

16   streamline the issue in our response to really try to focus on

17   what are the key concerns that we have raised.  The first

18   primary concern is the issue about contact with the family.

19          Then in addition to that, there are some concerns

20   about some of the restrictions in the institution where he

21   would normally, if considered a regular inmate, have certain

22   programs he could attend and other rights.  And those are

23   being taken away, and that is the second issue we want to

24   address.

25          We have proposed to the Court a possible order that

3

1    would address these issues.  The biggest concern we have at

2    this point is he has been in federal custody although he is

3    placed in a state or regional institution, but he is a federal

4    detainee.

5         We understand the Government is saying, well, but he

6    is also a sentenced state prisoner, but our concern is that

7    that in some respects is not a real factor because even in the

8    state system if he was to go to one of the Virginia state

9    prisons, he is going to start off with the rights that we are

10   asking for even as a state-sentenced prisoner.  And those

11   rights would only be taken away if he is has some conduct in

12   the institution where he is sent that would allow them through

13   disciplinary procedures to take away that these rights.

14        THE COURT:  Well, what do you want that he doesn't--

15   I mean, he is a state prisoner.  He has demonstrated, at least

16   to this stage with the evidence that I have looked at, that he

17   will use anyone and anything at his disposal to try and avoid

18   a successful prosecution for the charges against him, and that

19   in part has led to more charges against him.  And he has

20   demonstrated that he really deserves absolutely nothing more

21   than the minimal constitutional requirements while he is a

22   state prisoner in the custody of the federal system.

23        So, tell me what you don't have and that you believe

24   is a constitutional deprivation because I don't think that Mr.

25   Mohamadi deserves any more than, frankly, he has right now.

4

1          MR. BREHM:  Well, I think what's first most obvious

2     is that he is being denied any contact with the family.

3          THE COURT:  Well, he is using his family to further

4     criminal behavior.  How do you propose allowing family contact

5     and not further his criminal behavior?

6          MR BREHM:  Well, our contention is he has not used

7     the family to further--

8          THE COURT:  Well, they have got calls to the sister

9     urging her to falsify documents.

10         MR. BREHM:  Well, first of all, we contest the

11    accuracy of that allegation.  But more importantly for

12    purposes of the restrictions on contact with family, that has

13    absolutely nothing to do with any of the allegations in the

14    indictment as to trying to affect the prosecution.

15         THE COURT:  Doesn't the institution have a right to

16    prevent future crimes as well and other crimes?

17         MR. BREHM:  Well, Your Honor, as we made fairly

18    clear, we don't in any way suggest that the contact with the

19    family would be unsupervised.  We know and we would anticipate

20    that it would be extremely carefully monitored, supervised.

21    Correspondence from him to family and from them to him would

22    be reviewed before it was allowed to go in and out.  Phone

23    calls are going to be recorded, they are going to be

24    monitored.

25         The Court could certainly, as we suggest, require,

5

1   it wouldn't be unusual, that verbal communications be only in

2   English and not any other foreign language.  So, that's easy

3   for the Court to establish.

4          And as far as visits, if there are personal visits,

5   they are normally regulated anyway for almost any inmate.

6          And so, there are certainly means that they could

7   have--  There would be no contact visits and there could be

8   means to supervise the visits.

9          So, what we are simply suggesting is as to the

10  immediate family, we are not talking about anyone beyond that,

11  he should be able to have these basic rights of contact that

12  we understand will be heavily supervised and monitored, but he

13  still should have those.

14         And what I think is somewhat ironic, apparently even

15  in the Northern Neck Regional Jail's inmate manual, I would

16  proffer they have certain classifications for their special

17  housing, one of them is administrative segregation, and that's

18  usually to be applied to individuals who might be deemed

19  dangerous or charged with very serious crimes.  Even under

20  their procedures at Northern Neck, in administrative

21  segregation you still have the substantial rights including

22  the family contact rights.

23         And then there is a more elevated form of housing

24  which is called punitive detention, and that's when someone

25  actually has committed some violation in the institution and

6

1   there has been some kind of process for determining that that

2   violation occurred.  And even in Northern Neck's own manual

3   and their procedures, even if you are elevated to punitive

4   detention, you are still at least allowed correspondence to go

5   in and out.

6           So, what we have got here is going even beyond that,

7   an extreme of total prohibition of family contact.  That's

8   something that even I think in cases like the Moussaoui case

9   there was some provisions for family contact.  We are just

10  going well beyond what this case would justify.

11          And again, our request is very, in some respects

12  very narrow and limited.  We are asking for family contact

13  with immediate family which could be very strictly monitored

14  and supervised, and we don't in any way dispute that.

15          And then in addition to that, we are just simply

16  asking that, not necessarily that the administrative

17  segregation, not that all those conditions be removed, but

18  that he at least get some of the basic rights that people in

19  administrative segregation get.  That's going to include the

20  ability to participate in religious programs like church or

21  Bible studies.  Some time out of the cell for recreation,

22  basic recreation, even though that might be limited to his not

23  being able to interact with other inmates, he would still have

24  a chance to be out of his cell for a certain number of hours

25  per day and per week.

7

1          THE COURT:  And the jail doesn't disagree with you

2    there, they say he is going to get that, right?

3          MR. BREHM:  Well, no, that's the problem.  They have

4    had said on the one hand, the Marshals seem to acknowledge--

5    And again, it is the Marshals that are putting the

6    restrictions on.  Again, this is beyond what the jail would

7    normally do for their own inmates, that's one of the points we

8    are making.  And what the Marshals have said is, well, he has

9    a right to a certain amount of rec time, but apparently, and I

10   would proffer he is still not getting even that, even though

11   that is even less than what Northern Neck would normally

12   provide.

13          So, we are simply asking for lifting some of these

14   restrictions that are still in no way going to impact the risk

15   to the security of the institution, to the security of others.

16   Again, we are not asking him to be treated like an inmate in

17   general population.  We are trying to be reasonable in our

18   request to narrowly focus it to what would seem to me to be

19   more nonpunitive.  Because one of the concerns is at this

20   point, especially as a pretrial detainee not being convicted

21   on this case, and certainly we are challenging these

22   allegations and we will be going to trial to fight these

23   allegations, in a sense by adding restrictions on to him that

24   Northern Neck would normally not impose, simply has to be

25   punitive.  Because Northern Neck, they would have their own

8

1    restrictions for administrative and security purposes, and

2    this goes well beyond that.  So, it has to be punitive.

3          And then for the Government to say, well, here are

4    two Second Circuit cases from years ago that say a

5    state-sentenced prisoner isn't to be given the rights of a

6    pretrial detainee, first of all, I don't know that applies in

7    this situation because those cases had nothing to do with this

8    situation.  One case was a 1983 action where well after the

9    period of incarceration the inmate was bringing a lawsuit and

10   there was a summary judgment issue.

11         And the other one was a Fourth Amendment issue where

12   inmates had been convicted of a federal crime and said, our

13   conversations were recorded.  And the Court there said, the

14   Willoughby case that the Government cites, the Court there

15   said it doesn't really matter whether you are a pretrial

16   detainee or a sentenced prisoner, you don't have a privacy

17   right in an institution to your conversations with other

18   inmates.

19         So, those cases don't apply here.  The point is,

20   even as a state prisoner, he is entitled to these rights.

21         THE COURT:  I understand.

22         MR. BREHM:  That's what we are asking for.

23         THE COURT:  Okay, let me hear from the Government.

24         MR. WALUTES:  Your Honor, there is also an Eighth

25   Circuit case I neglected to include in my reply that is cited

9

1    within the Second Circuit case.

2          In the Second Circuit case, first off, there is an

3    institutional knowledge.  When a person harms a staff member

4    or commits a violation, they moved him from the Southern

5    District of New York Metropolitan Regional Jail, which is

6    federal, to a more enhanced security institution.  He didn't

7    get to start over in that new institution.  He was placed in

8    very severe restrictions in the Second Circuit case.

9          They say that if he is serving a state sentence, he

10   is a convicted prisoner.  And then that leaves him with only

11   two constitutional concerns, Your Honor, that I would

12   articulate at this point.  One is the Sixth Amendment right to

13   counsel, which the parties are in agreement there is no

14   barrier to.

15         The second is an Eighth Amendment right relating to

16   unreasonable punishment.  Your Honor, here there is nothing

17   being done other than attempting to freeze the status quo

18   until we can try this case next month.  The Government resents

19   the reference to Moussaoui.  Moussaoui was trying to plead

20   guilty.  He was not in any fashion doing anything to harm a

21   witness.

22         This defendant has done everything under his power

23   to kill a witness before his trial and avoid trial.  If he is

24   convicted on these charges, he is very likely to spend the

25   rest of his life in jail.

10

1              Bell, which the Government doesn't believe applies,

2    but even if we for sake of argument use Bell, Bell says that

3    federal prisoners who are detained--  And I would note,

4    defense counsel attached last night the Court's detention

5    order.  The Court explicitly found, there is reason, that

6    there is a serious risk this defendant will endanger the

7    safety of another person or the community.

8              The statute has added that language because the

9    federal courts recognize that that was a very serious category

10   of case.  And this defendant under this indictment squarely

11   fits within it.

12             Your Honor, I would note monitoring is absolutely

13   useless.  And the best example of that--  Even monitoring of

14   English language communications.  Yesterday I sat at my desk

15   and I read the defense counsel's motion that is docketed in

16   June on venue.  He attached the identity of the second victim

17   in this case, which to the date had not yet attempted to be

18   killed.  As an attachment, he puts the victim's vehicle, the

19   make, model, year, color and tag number.

20             Now, I wonder if the defense counsel knew when he

21   put that on the Internet whether or not she is currently using

22   that vehicle.  The truth is she is not.  But, Your Honor, I

23   monitored that conversation, but I could not stop the passage

24   of that very risky information now onto the public domain.

25   Monitoring does not protect the Government's concerns.

11

1          The defendant must prove that the restrictions are

2    arbitrary and capricious.  Your Honor, he cannot.  Under this

3    indictment, probable cause having already been made, the

4    restrictions on this defendant are reasonable and appropriate.

5          His family has attempted to alter public documents.

6    They have flagged witnesses going before the federal grand

7    jury.  He is a registered gangster in the jails in Virginia.

8    And he is referring to people he is calling who are out in the

9    community and still out in the community today.  One of his

10   friends is currently incarcerated for murder, but the others

11   are all there, Your Honor, and he tells them, keep it

12   gangster.

13         Your Honor, that is the concern.  We cannot realtime

14   and the jail should not be asked realtime to monitor this

15   defendant's communications.  And his family has proved, even

16   his mother, even his sister, their willingness to do as

17   instructed at his wishes.

18         Your Honor, we believe the defendant's motion, and

19   it is his burden, fails.

20         THE COURT:  So, after conferring with the jail, you

21   still don't believe the family visits under any circumstances

22   would be secure?

23         MR. WALUTES:  I do not, Your Honor.  I will tell the

24   Court that I brought today Investigator Burnham with some

25   thirty-plus years of law enforcement experience who is the one

12

1   who first spotted the defendant's prostitution activities

2   within the jail, and that caused the monitoring to elevate on

3   this defendant, and subsequently identified the attempts to

4   kill witnesses and other very severe obstruction of federal

5   grand jury proceedings.

6           The problem, Your Honor, with putting witnesses on

7   the stand, and that's why I hesitate to do it, is all it does

8   is, frankly, educate this defendant as to how he was caught

9   and allows him then to circumvent it.

10          I will also inform the Court that I asked the

11  Marshals to have Major Hall available should the Court wish.

12  He is not available until 10.  I asked that he still come in

13  case the Court had concerns.

14          But, Your Honor, I do not believe given the history

15  of this defendant--  It is not a situation where we don't know

16  the family and we could presume them to act in appropriate

17  behavior.  Your Honor, here--  And this is another point I

18  should articulate, Your Honor.  We don't know who his mother

19  three-wayed him to when he should have been talking to a

20  lawyer.  Alexandria does not record the attorney lines.

21  Fairfax does.  And we will come later to the Court for an

22  order seeking those telephone calls, but we'll defer that to

23  another day.  Alexandria doesn't record them.

24          The only thing we know is that on recorded calls

25  after Alexandria caught him using the attorney line

13

1    inappropriately, he tells his mother to change her number

2    because it's now blocked.  She is three-waying him.  We don't

3    know to who and we don't know what was said on that.  Still

4    today, Your Honor, I do not know.  And that is a serious

5    concern under these facts.

6            THE COURT:  Okay.  All right, thank you.

7            MR. BREHM:  Just briefly, Your Honor.  First of all,

8    I don't know about any of these allegations that weren't

9    raised in their brief about some gang aspects, things of that

10   nature and communicating to people outside.  Again, we are--

11           THE COURT:  The conversation with the mother

12   three-waying a call is a--

13           MR. BREHM:  I haven't seen any evidence about that.

14           THE DEFENDANT:  She doesn't--

15           MR. BREHM:  Excuse me, excuse me.

16           THE COURT:  You need to talk to your counsel?  Take

17   a moment and talk to him.

18           MR. BREHM:  I don't need to, Your Honor.  The

19   Government's brief, the Government's brief, that's one of the

20   problems.  They have all had all this time to lay out specific

21   allegations about the family, and look what little that they

22   have told this Court.  Nothing of any connection--

23           THE COURT:  What do I need more than the fact he is

24   that using an attorney line in the jail with his mother's

25   cooperation to bring in a third party who is unknown to the

14

1   Government?

2         MR. BREHM:  Well, we contest that.  We don't know

3   what the attorney line aspect is.  All I know from their

4   allegation here is that a number was being blocked, which is

5   apparently a number to the mother.  And there was an

6   allegation that he communicated to the mother to change the

7   number so he could speak with her.  There is no allegation in

8   there that that contact with the mother then went on to

9   somebody else.

10        THE COURT:  He encouraged the mother to change her

11  number so that it wouldn't be a number that was familiar to

12  the jail and it wouldn't be blocked automatically.

13        MR. BREHM:  Okay.

14        THE COURT:  I understand your argument.  Your motion

15  is denied.  I find that the Government has not acted

16  arbitrarily and capriciously, nor has the jail in limiting

17  severely, I agree with you, the contact that Mr. Mohamadi can

18  have with the outside world.

19        It is a limitation in every respect that he has

20  earned based on the evidence that I have reviewed to date by

21  his continuing criminal behavior, his engagement with others,

22  including several family members, in that unlawful conduct.

23  And he is presently without these restrictions an extremely

24  dangerous person to the community, including witnesses who may

25  potentially testify against him.  And that the restrictions

15

1    are reasonable and they don't violate his Sixth or Eighth

2    Amendment constitutional rights.

3            Your exception is noted, Mr. Brehm.

4            MR. WALUTES:  Thank you, Your Honor.

5            THE COURT:  All right.

6            MR. BREHM:  Your Honor, Mr. Mohamadi wants me to

7    mention to the Court he would like to file a motion that he

8    wants to represent himself pro se from this point on.  So, we

9    will file the necessary motion so he can address that with the

10   Court.

11           THE COURT:  Certainly, Mr. Brehm.  Well, we will

12   hear your motion on that, Mr. Mohamadi, when it is noticed.  I

13   notice there is a motion for--  Is there any objection to

14   extending the deadline for filing of pretrial motions?

15           MR. WALUTES:  Not at all, Your Honor.

16           THE COURT:  Okay, I will enter that order.  It may

17   have to be further modified.  But also that there is a venue

18   motion that has been filed, and we will deal with that.

19           Mr. Mohamadi, probably the most ill-advised thing

20   you could do would be to represent yourself in these

21   proceedings.  You have a very experienced counsel who is an

22   extraordinary advocate, and you are not going to get any

23   better legal representation.

24           THE DEFENDANT:  Your Honor--

25           THE COURT:  I am just giving you, this is a lecture,

16

1    and we will have a conversation next time properly after

2    briefs have been filed.

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  I will hear your argument.  But I am

5    just telling you in advance, I know that you have been

6    involved in the criminal justice system and you may have had

7    in the past many different court-appointed counsel and you may

8    not have been happy with them.  You are now in a system where

9    the Federal Public Defender service has the best advocates in

10   Virginia here working on behalf of defendants.  And you are

11   going to be well served in having representation, and poorly

12   served in representing yourself.

13             So, I want you to think about that before filing

14   your motion.  All right.

15             THE DEFENDANT:  How can we argue when this guy is

16   just making broad allegations that he bases off of--

17             THE COURT:  But I have ruled.  Mr. Brehm has filed a

18   motion.  It is an excellent motion--

19             THE DEFENDANT:  He is just making broad accusations

20   without giving me an opportunity to defend myself against

21   them.  He has already tainted everyone's minds, your mind with

22   all these broad accusations and statements that he just put

23   together with him, Mr. Burnham and Ms. Castro orchestrating

24   this whole case from the jail.

25             THE COURT:  Okay.  And that will--

17

1            THE DEFENDANT:  And all this stuff, I haven't

2   threatened anyone.  I haven't harmed anyone.  No has been

3   physically harmed, no one has even received a physical threat

4   from me in any shape, way, form or fashion.  All I have been

5   trying to do is defend myself.

6            THE COURT:  I understand that.

7            THE DEFENDANT:  And the only limited--  My mother

8   doesn't even know how to make a three-way call.

9            THE COURT:  Okay, we're done.

10           THE DEFENDANT:  That's all I am saying.  I don't

11  understand, there is no proof behind 80 percent of this

12  stuff--

13           THE COURT:  They represent that they have the--

14           THE DEFENDANT:  He has got one jailhouse

15  conversation--

16           THE COURT:  All right, you're done, we're done for

17  today.  I have made my ruling and we are done for today.

18           THE DEFENDANT:  I apologize if I am being rude.

19           THE COURT:  No, I understand.

20           THE DEFENDANT:  I am just disturbed about this

21  whole--

22           THE COURT:  Your freedom is at stake and I

23  understand why you are emotional about it.

24           THE DEFENDANT:  I just want you to understand, if I

25  had actually done something--

18

```
1              THE COURT:  I understand.

2              THE DEFENDANT:  It is just a little outrageous.

3              MR. BREHM:  Thank you, Your Honor.

4              THE COURT:  Yes, Mr. Brehm, thank you.

5      -----------------------------------------------
                           HEARING CONCLUDED
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20              I certify that the foregoing is a true and

21      accurate transcription of my stenographic notes.

22

23
                        _____
24                          /s/
                        Norman B. Linnell, RPR, CM, VCE, FCRR
25
```