1

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF VIRGINIA
                   Alexandria Division




------------------------------:
                              :
UNITED STATES OF AMERICA       :
                              :
                              :
    -vs-                       :        Case No. 1:09-cr-179
                              :
                              :
MIRWAIS MOHAMADI,              :
              Defendant.       :
                              :
------------------------------:
```

```
                    HEARING ON MOTIONS


                    January 5, 2010


             Before:  Liam O'Grady, Judge
```

<u>APPEARANCES:</u>

Ronald L. Walutes, Jr., Counsel for the United States

Frank Salvato, Counsel for the Defendant

The Defendant, M. Mohamadi, in person

2

1          THE CLERK:  Criminal case number 1:09-cr-179, the

2   United States of America versus Mirwais Mohamadi.

3          Counsel please identify themselves.

4          MR. WALUTES:  Good afternoon, Your Honor.  Ronald

5   Walutes for the United States.

6          THE COURT:  All right.  Good afternoon.

7          MR. SALVATO:  Good afternoon, Your Honor.  Frank

8   Salvato for Mr. Mohamadi.

9          Your Honor, I appreciate the Court's indulgence to

10  delay the start of the hearing for a few minutes.  I can tell

11  the Court that Mr. Mohamadi is having some concerns about me

12  continuing to represent him.

13         His family is here, his sister is here, his uncles

14  are on their way up, they were just finding parking, they had

15  to leave work.  They have been consistent in their support of

16  Mr. Mohamadi.  They have retained counsel.  And I have worked

17  with them in terms of the monetary payments and schedule of

18  payments and what not.

19         At this point, however, I believe, and Mr. Mohamadi

20  can speak for himself, but I believe he no longer wishes

21  myself to represent him in this matter.  We have been, we have

22  talked about this extensively today.  And I believe he wants

23  to address that with the Court.  And I think it would be

24  appropriate to address that issue prior to his position with

25  regard to the bond conditions.

3

1          I can tell the Court, I have given great effort to

2     try to resolve this particular situation over the past couple

3     weeks.

4          THE COURT:  All right.  Thank you, Mr. Salvato.

5          Mr. Mohamadi, come up to the lectern, sir, if you

6     would like to address the Court.

7          I have received your December 14 letter and reviewed

8     it.  And I will make it part of the record.

9          So, I understand some of your frustrations, but I

10    don't understand why they are directed towards Mr. Salvato

11    because he is, one, a very respected member of our Bar.

12         Number two, he has worked, as I have heard him--

13    Please have a seat, Mr. Salvato -- in hearings to make sure

14    that your rights were protected and in filing the many motions

15    that have been filed on your behalf and arguing them.  He has

16    gotten discovery from the Government, and I am sure looked at

17    that closely.

18         And it appears to me that you are sitting in almost

19    solitary confinement, and you are, as reasonably anyone would,

20    thinking nonstop about the case.  And as a result, you are

21    tremendously frustrated.  That's not Mr. Salvato's problem,

22    it's your problem up to today's date because your conditions

23    of confinement are a result of the allegations.  And probable

24    cause has been established and you have been indicted on

25    attempting to harm potential witnesses and/or obstruct

4

1    witnesses' testimony.  And as a result of those charges, the

2    conditions are what the conditions are.  We will address that

3    further in a moment.

4            So, what's your position now on counsel?

5            THE DEFENDANT:  First of all, good morning, Your

6    Honor.  Happy New Year.

7            My issue is not--  I don't know, am I speaking too

8    loud?

9            THE COURT:  No, that's fine.

10           MR. SALVATO:  My issue is not personally with Mr.

11   Salvato.  I think he is a great attorney, 20-year veteran in

12   the federal courts.  I am not questioning his ability as an

13   attorney.

14           My issue basically stems from the conditions.  And

15   it's not the mere fact that I'm frustrated, it's just the fact

16   that I am very hindered in my communication with Mr. Salvato.

17   When we speak, there is a security officer in the room while I

18   am talking to Mr. Salvato, and those calls are very limited.

19   They pull me out once on Monday, Friday--  Monday, Wednesday

20   and Friday.  And those are, those aren't guaranteed either.

21           And when those calls happen, I just get one chance.

22   If I get through or I don't get through, that's it for the

23   day.  And I have gone maybe two weeks, three weeks at a time

24   without getting an opportunity to call Mr. Salvato.

25           And I have kept all that highlighted in grievances

5

1    that I filed continuously.  And I have even got grievances

2    where the Major has responded and stated that Mr. Salvato does

3    not want to speak to me, which I don't believe is the case.

4    And I have all that in writing.

5            And I just don't feel like I am given the

6    opportunity.  I am facing a ten-count indictment which, you

7    know, which can result in a life sentence.  And I just feel

8    like I should be given the ability to defend myself.

9            And without me being able to converse with Mr.

10   Salvato properly--  I mean, he has to make a five-hour drive

11   just to come see me.

12           And Mr. Walutes does have a legitimate argument

13   claiming that I, you know, accusing me of trying to harm

14   witnesses, but these are unfounded allegations that I should

15   have an opportunity to defend against.  If I am being punished

16   before I even get an opportunity, I don't understand how that

17   is due process.

18           THE COURT:  Well, it's not just charges alleged by

19   the Government, but a grand jury heard testimony from one or

20   more witnesses who were under oath, and they determined there

21   was probable cause to believe that you had committed those

22   offenses.  And that's why you were indicted.  And I understand

23   that.

24           THE DEFENDANT:  But I--  I am sorry.

25           THE COURT:  And you have a right to defend yourself,

6

1    but that's going to be at trial, which is coming up, what,

2    February 16?

3              THE DEFENDANT:  But I also have the right to prepare

4    and, you know--

5              THE COURT:  I understand.  But your attorney can

6    prepare without consulting with you on a regular basis.  He is

7    getting the Government's evidence and--

8              THE DEFENDANT:  Without consulting me, I don't

9    understand how he can get the view of the circumstances if he

10   just views what the Government's saying.

11             THE COURT:  Why don't we do this.  You were sent

12   back to the Northern Neck because of population issues--

13             THE DEFENDANT:  I feel like those issues that they

14   claim are not valid because just prior to me being there, they

15   held a terrorist that was accused of killing thousands of

16   people, and they had appropriate accommodations for him.  And

17   I don't understand how I am such a severe case where I can't

18   be held in that facility.

19             And I am very aware of other facilities in that area

20   that are very secure and have very competent staff that they

21   would be able to house me.  I feel like all of this is just a

22   measure from the prosecution, I am not accusing the

23   prosecution of anything because I respect the fact that he is

24   doing his job, but I am just saying that all these stuff are

25   actually, in my eyes are viewed as a way of hindering me from

7

1    preparing a defense.

2            I am moved away from my attorney, I am not able to

3    communicate with my family who are a source of my resources.

4    How am I supposed to obtain experts--

5            THE COURT:  Why isn't that resolved by, at least in

6    part by moving you back to Alexandria or one of the other

7    jails in Northern Virginia by towards the end of January?  So,

8    you have three or more weeks to prepare.

9            And I am willing to do that, to bring you back and

10   order the Marshals Service to bring you back sometime towards

11   the end of January to make sure that you have an opportunity

12   to meet individually with, face-to-face with your counsel.

13           So, I think we can cure part of the problem by doing

14   that.  And I am willing to do that.  I do not want you so

15   anxious by lack of preparation that you are not able to listen

16   to what's going on in a trial.  And I think that is the

17   solution for that.

18           And I think that's, really the ability to

19   communicate has been the issue.

20           THE DEFENDANT:  But due to that inability to

21   communicate, I have a lot of pretrial motions that I want to

22   address that haven't been addressed.  And the fact that a lot

23   of the motions that I wanted to, you know, preserve in case I

24   do have to appeal, which is very likely with the amount of

25   cases that I am facing, I would like to preserve a lot of

8

1   situations, which I haven't been given the opportunity to do

2   because of my lack of communication.

3            THE COURT:  Well, you can't write that down and put

4   it in a letter to Mr. Salvato?

5            THE DEFENDANT:  I have wrote--  My letters aren't

6   getting to him.  There is a log of letters that went out.  I

7   haven't received any notification or any responses from Mr.

8   Salvato claiming that he has received these letters.  And I

9   have proof that I have sent these letters out.

10           THE COURT:  Okay.  Have you been getting

11  correspondence?

12           MR. SALVATO:  I have, Your Honor.

13           THE COURT:  Okay.

14           MR. SALVATO:  There are, obviously, some motions

15  that I think have already been preserved, and there are some

16  motions that could still be preserved or filed.  I think

17  that's a matter within my discretion as to how many and what

18  types of motions should be filed, but I certainly have

19  listened very carefully and read everything from Mr. Mohamadi.

20           THE COURT:  Okay.  All right.  Well then, leave will

21  be granted to file motions if you want to file separately--

22  If Mr. Salvato tells you that he doesn't think there is any

23  legal justification for filing a certain motion, and you want

24  to file it--

25           THE DEFENDANT:  I understand some of his concerns

9

1    are strategywise, and I understand that 100 percent.  My only

2    concern are notices that are time barred.  Those are my only

3    concerns.  And that's where we have had a little bit of

4    communication problem.  And I haven't had the opportunity to

5    really speak with him about it.

6                    THE COURT:  Okay.  Well--

7                    THE DEFENDANT:  And outside of that issue, and this

8    issue with the grand jury also, I feel like there has been

9    perjured testimony presented in front of the grand jury.

10   There is a lot of issues that I would like to address, and I

11   feel like I haven't been given the opportunity to address.

12                   THE COURT:  You are not going to get--

13                   THE DEFENDANT:  I have proof that there has been

14   perjurious testimony presented in front of the grand jury.

15                   THE COURT:  What was presented to the grand jury

16   isn't going to convict you of anything.

17                   THE DEFENDANT:  I understand that, but they started

18   this whole thing.  And I am facing ten different incidents in

19   one trial.

20                   THE COURT:  I understand.  I understand you have a

21   right to cross-examine each of the witnesses the Government

22   puts on the stand under oath.  And if they have perjured

23   themselves, that is going to come out.

24                   To the extent the Government doesn't rely on

25   witnesses because they are not, for whatever reason, the jury

10

1    isn't going to hear any testimony that you think is perjured

2    testimony.  The jury is going to get only the part of the case

3    that comes into evidence in this courtroom.  And you have got

4    the right to cross-examine every one of those witnesses.

5         THE DEFENDANT:  And I am very appreciative of your

6    decision to move me, and that's very gracious of you.  I am

7    very appreciative of that.

8         I just, my main concern is this.  And there is other

9    issues too, I am kind of nervous, this is something new for me

10   and I am under a lot of stress and pressure, but another main

11   concern is I have a ton of evidence that I need to recover to

12   present in my defense.  And I don't feel like I have had the

13   opportunity to really discuss these issues with Mr. Salvato

14   because of my fear of exposing this stuff through the phone

15   calls, through the mail.

16        And when he comes to visit me, I am in a room where

17   there is an intercom.  And I have had already issues with

18   staff in the intercom room which I have written up where staff

19   have addressed me as an informant, a snitch.  And I wrote

20   these issues up.  And the Captain have dealt with this where

21   they have went inside of my case and obtained certain

22   information that I have discussed with Mr. Salvato.

23        So, I just don't feel comfortable under those

24   conditions.  I mean, there is a speaker that's on inside of

25   the room when I talk to Mr. Salvato.

11

1        My mail is not going out.  I can show you the log

2   where I haven't received any responses to those mails.  And

3   some of the stuff that I have asked Mr. Salvato if he has

4   read, he hasn't.  I have sent a lot of letters, I am sure some

5   have gotten to him.  But there is a lot that haven't got to

6   him because when I addressed those issues, he just didn't have

7   it.

8        So, there is a lot of evidence that I need to

9   recover, and I feel like, I don't understand how I am going to

10  be able to do that in three weeks.

11       THE COURT:  Okay.  What's your schedule like the

12  rest of this week?  Are you going, if I order that he remain

13  in Alexandria until the weekend, until Sunday or next Monday,

14  will you have an opportunity to meet with him?

15       MR. SALVATO:  Sure.  I can see him tomorrow, which

16  is Wednesday.  Thursday afternoon.  I am relatively free this

17  week, Your Honor.

18       THE COURT:  All right.  And what kind of conditions

19  are there, are you meeting with him?  Are you able to have a

20  confidential conversation?

21       MR. SALVATO:  We do speak at Northern Neck.  Sorry,

22  Mr. Linnell.

23       I have been down to Northern Neck either eight or

24  nine times to see him.  It is a two-and-a-half our trip down

25  there, plus our time there, and plus our return trip.  But

12

1    during the time that I am there, he and I are alone in an

2    interview room.  There is an intercom that is available if one

3    were to listen to the conversation.

4              THE DEFENDANT:  Other attorneys don't have it.  They

5    have their own room without an intercom when they speak.

6              MR. SALVATO:  He is in a high security designation.

7    So, therefore, I have to meet with him in a special area.  The

8    facility has to be closed down for me to walk through the

9    hallway.  It has to be closed down for him to walk through the

10   hallway.  And then we are in this back room where there is an

11   intercom.

12             THE DEFENDANT:  They don't close the facility down,

13   they just stop movement on the hallway.

14             THE COURT:  Right.

15             THE DEFENDANT:  When I was meeting Mr. Brehm, they

16   let me meet him--

17             THE COURT:  Okay, hold on, let me finish with Mr.

18   Salvato.

19             Mr. Salvato, in Alexandria in the next several days,

20   you have met with him, I am sure, on occasions in the

21   Alexandria jail, is that suitable for having an

22   attorney/client conversation?

23             MR. SALVATO:  It is.

24             THE DEFENDANT:  I would rather not--

25             THE COURT:  Stop, Mr. Mohamadi.

13

1              THE DEFENDANT:  I am sorry.

2              MR. SALVATO:  It is, Your Honor, it is certainly

3    preferable over Northern Neck.  Alexandria is very cautious in

4    terms of any observation of attorney/client meetings.

5              THE COURT:  Okay.  All right.  Then I will keep you

6    here until next Monday.  And I will order them to return you

7    with three weeks to go before trial.

8              THE DEFENDANT:  Your Honor, I have an issue with

9    that too.

10             THE COURT:  Yes, sir.

11             THE DEFENDANT:  One of the main people in this case

12   is Mr. Bernham, who works as an investigator at the facility

13   in Alexandria.  And I have documents where I have been denied

14   access to attorney there too.

15             So, just to prevent any more, you know, complaints

16   from me, I just wanted to bring that forward.  And Mr. Salvato

17   can witness he has tried to come see me when I was trying to

18   hire him, and he was denied access.  Is that correct?  And

19   that's happened on numerous occasions I have been denied.

20             And I went through a lot of issues which I am going

21   to present in trial with what went on in Alexandria also.  So,

22   I just wanted to bring that--

23             THE COURT:  Okay.

24             THE DEFENDANT:  I just don't feel comfortable--

25             THE COURT:  If Mr. Salvato has problems gaining

14

1    access to you while you are in Alexandria, then he can pick up

2    the telephone and call chambers and we will correct that.

3             THE DEFENDANT:  All right.  Thank you, Your Honor, I

4    really appreciate it.

5             THE COURT:  Okay.  All right.  Then let's leave--

6    Are you willing to continue to work with Mr. Salvato at this

7    time then?

8             THE DEFENDANT:  I am not 100 percent sure, Your

9    Honor.

10            THE COURT:  Well, let's get through this weekend.

11   This trial date, we are going to have a trial on February 16,

12   the trial is going to start.

13            THE DEFENDANT:  Okay.

14            THE COURT:  And you haven't identified any reason

15   why Mr. Salvato should not continue.  And instead, this is a

16   mechanical problem in your not having the access that you

17   would like to have to your counsel.  And as I have indicated,

18   that's because of the charges against you and the risk to

19   witnesses based on prior acts.

20            THE DEFENDANT:  Can I--

21            THE COURT:  So, let's get in a mindset where you are

22   going to in the next several days identify further

23   investigation you want done, any documents that you have in

24   support of defenses, where those documents are located.  And

25   give Mr. Salvato all the information that you believe he needs

15

1    to continue to prepare your defense.  And we are going to go

2    from there.

3              THE DEFENDANT:  Your Honor, I honestly would like to

4    proceed pro se from this point forward.  I just don't feel

5    comfortable with all the stuff that is going on.  It is going

6    to be completely difficult for me try to do this in three to

7    four weeks before trial.

8              And I have been dealing with it myself for the last

9    three years that I have incarcerated now.  And if it is

10   possible, I would like Mr. Salvato to address these conditions

11   hearings because he has prepared for it.

12             THE COURT:  I am not going to relieve Mr. Salvato at

13   this time.  And, frankly, the motion isn't before me and

14   noticed.

15             If you and Mr. Salvato after this weekend decide

16   that you are going to move to proceed pro se, then he can file

17   a motion on your behalf and we will have it heard after notice

18   has been given.

19             THE DEFENDANT:  Can I ask under what rule are these

20   sanctions being applied to me, under what criminal rule?  Like

21   isn't there some type of code section that I am falling under?

22             THE COURT:  These are conditions of confinement

23   based on your threat to, potential threat to witnesses in the

24   case.  And those are administrative matters which the

25   correctional facility is in charge of.  I can modify them--

16

1          THE DEFENDANT:  The impression that I was under from

2     Mr. Nelson before he left, he told me that he was told by Mr.

3     Walutes to apply these sanctions on me.  But in the

4     Government's motion, he stated that these sanctions were

5     applied to me under, because of the safety and security of the

6     institution.  He didn't say that it was because of these

7     allegations.  He basically said that it was because of

8     something I have done in the institution, but I haven't done

9     anything.

10          And in comment to the stuff, the cases that he

11     cited, which were cases where inmates tried to escape,

12     assaulted staff, took the uniform--

13          THE COURT:  You are charged with recruiting fellow

14     inmates to kill--

15          THE DEFENDANT:  But I am pleading not guilty.

16          THE COURT:  I know you have pled not guilty.

17          THE DEFENDANT:  That's the allegation though.

18          THE COURT:  But that's--

19          THE DEFENDANT:  No one, I don't have a history of

20     harming anyone.  I have never harmed anyone.  No witness has

21     been harmed in this case.  I mean, if that's the case, any

22     inmate has that thought.  I mean, if you put a microphone

23     inside the jail, I am sure you would pick up about 100 federal

24     cases that Mr. Walutes could prosecute.

25          THE COURT:  Well, you are not--

17

1            THE DEFENDANT:  I mean, I just don't how understand

2       that is the basis for these type of extreme conditions.

3            THE COURT:  That is not before me, I am not going to

4       discuss it any more.  I have told you, I have tried to

5       explain, you are not listening, you are just giving me a

6       speech now.  You have been convicted of robbery, you have been

7       convicted--

8            THE DEFENDANT:  I was 16 years old, Your Honor.

9            THE COURT:  Those are crimes of violence, okay,

10      whether you are 16 or 18 or 21.

11           THE DEFENDANT:  With a BB gun.  So, I am basically

12      getting prosecuted again for what I did when I was 16.  That

13      is all that is really happening.

14           THE COURT:  But an institution has a right to

15      consider the potential danger that you face.  They don't know

16      you.  All they know is your prior record and the charges

17      against you.  And that's enough for them to make decisions

18      based on the conditions of your confinement while you are

19      there for the safety of the correctional facility and its

20      guards, and also considering potential witnesses who may be

21      threatened.

22           THE DEFENDANT:  So, I am not afforded the First

23      Amendment right of communication with my family or those

24      rights that everyone else is afforded--

25           THE COURT:  Not when--  Well, you allegedly abused

18

1   that.

2          THE DEFENDANT:  That's what I am saying, allegedly.

3   Mr. Walutes has thrown everything at me except the kitchen

4   sink.  What has my family done?  My family doesn't even have

5   traffic tickets.

6          THE COURT:  Okay.  Now, it's not what--

7          THE DEFENDANT:  To blame them for--  That's just

8   ridiculous.  I would like to put him to his proof.  He is just

9   basically saying anything.  There is stuff that I would like

10  to accuse him of without any proof.  So--

11         THE COURT:  Listen, listen.  Okay.  You have made

12  your--

13         THE DEFENDANT:  He doesn't have to prove what he is

14  saying?  All he has to do is say it and everyone one is going

15  to believe it?

16         THE COURT:  That's not what is happening here and

17  you know it.  So--

18         THE DEFENDANT:  Sir, that's exactly--  My family

19  hasn't done anything illegal, Your Honor.

20         THE COURT:  We are done with this conversation.  We

21  are done with this conversation.  Okay.

22         All right.  Mr. Salvato is going to remain your

23  counsel, you are going to work with him this weekend, during

24  this week, and give him the information that you say--

25         THE DEFENDANT:  There is other conflicts of

19

1    interests --

2           THE COURT:  Stop, stop.

3           THE DEFENDANT:  -- I don't want to get into without

4    waiving my attorney/client privilege, Your Honor.  That's the

5    main thing.  I don't want--

6           THE COURT:  And you can file it in a motion and put

7    it under seal if Mr. Salvato believes that it ought to be

8    under seal.

9           THE DEFENDANT:  No--

10          THE COURT:  Stop, stop.  Listen to me.  Listen to

11   me.  You listen to me for a minute.

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  I have listened to you for awhile.

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  All right.  This is how we are going to

16   proceed.  And I am going to give Mr. Salvato an opportunity to

17   speak further on other modifications.

18          But at the very least, we are going to keep you here

19   in Alexandria or in Fairfax if necessary --

20          THE DEFENDANT:  Please, Fairfax, I would really

21   appreciate Fairfax.

22          THE COURT:  -- until Monday.

23          THE DEFENDANT:  If it is possible.  I know I can't

24   make any requests, I know--

25          THE COURT:  I will ask them for Fairfax if that's

20

1   possible.

2            THE DEFENDANT:  Alexandria is actually a much better

3   facility where they give you everything, TV, cable, food.

4   Fairfax is a lot stricter, but the only thing, good thing

5   about Fairfax is they don't violate your rights when it

6   relates to attorneys and stuff like that, they follow the law

7   to the T, even though they are much stricter.

8            THE COURT:  Okay.  All right.  Fairfax if it is

9   available.  And if not, Alexandria.  And that you shouldn't be

10  returned earlier than Monday of next week.  And that I will

11  have you brought back three weeks before trial to a Northern

12  Virginia facility.

13           And if there is problems with Mr. Salvato's access

14  to you, then he can call chambers and we will try and rectify

15  that right away.

16           THE DEFENDANT:  Thank you, Your Honor.

17           THE COURT:  All right.  Have a seat for a minute.

18           Mr. Salvato, what other issues would you like to

19  address?

20           MR. SALVATO:  The only other issue, practical issue,

21  I would like his family to be able to have one visit with him.

22  I think that would be helpful.  I know they would love to

23  speak to the Court if they could today, but I can hear what

24  they are saying.  Which is, they really want an opportunity to

25  speak with him about his future decisions about counsel and

1    sort of the future direction of the case.

2           So, really, practically speaking, I appreciate

3    Fairfax or Alexandria, either one is fine.  I will go over

4    there and see him this week and review everything with him.

5    And then I think his family, if they could get one visit with

6    him to talk to him a little bit, I think that would be

7    helpful.

8           And then, obviously, Your Honor, he will make a

9    decision by Friday whether he does want to indeed proceed pro

10   se or not.  If he does decide that he wants to proceed pro se,

11   I will file something.  And then we will need to notice that

12   as quickly as possible.

13          THE COURT:  Okay.  All right.  Mr. Walutes, any

14   objection to--

15          MR. WALUTES:  Your Honor, the only request I have is

16   that I would ask that Mr. Salvato as an officer of the court

17   be present when the family meets with him.

18          I have no objection with Mr. Salvato being there and

19   the family.  I believe as an officer of the court that

20   eliminates my concerns.

21          I don't want law enforcement to have to be present

22   and figure out what they are saying in a different language.

23   And, frankly, I want to stop investigating this case.  And it

24   just keeps going.

25          And so, with the qualification that Mr. Salvato be

22

1    present when the family meets with him to talk about the

2    future direction of the defense, I have no objection, Your

3    Honor.

4              THE COURT:  All right.

5              MR. SALVATO:  That will be fine, Your Honor, I am

6    happy to do that.  Alexandria may be a little bit more

7    accommodating, but if we want to try Fairfax first and then

8    Alexandria.  But I have known the officers over at Alexandria

9    for 20-some years, and I think we could accommodate that.  And

10   I am happy to be there while his family speaks to him.

11             THE COURT:  All right.  I think that's an

12   appropriate accommodation.  Although, as we are all aware, if

13   they are speaking a foreign language, Mr. Salvato is there as

14   an officer of the court, but not able to understand everything

15   that is being spoken.

16             MR. WALUTES:  I would hope then, Your Honor, that

17   somebody in the family would translate for Mr. Salvato.

18             THE COURT:  All right.  Let's include Mr. Salvato in

19   the conversation.

20             All right.  Okay, I will get an order out.  It's

21   seven more weeks.  And your focus should be on assisting your

22   counsel in providing with you the best possible defense.

23             And we have already talked about how I feel about

24   pro se representations, it is not in your best interest to

25   represent yourself.  You won't get-- You won't be able to do

23

1   half of what you think you are going to be able to do.  And

2   you are going to be held accountable for the rules of

3   evidence.  And it's a bad idea.  But let's see where we go for

4   the rest of the week.

5           All right.  Thank you all.

6           MR. SALVATO:  Thank you, Your Honor.

7           THE DEFENDANT:  Thank you, Your Honor.

8           THE COURT:  We are in recess.

9   ------------------------------------------------
                    HEARING CONCLUDED

10

11

12

13

14

15

16

17

18

19

20           I certify that the foregoing is a true and

21      accurate transcription of my stenographic notes.

22

23
                     /s/  Norman B. Linnell
24                Norman B. Linnell, RPR, CM, VCE, FCRR

25