**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No. 1:09-CR-179** |
| **v.** | ) | |
| | ) | **The Hon. Liam O'Grady** |
| **MIRWAIS MOHAMADI** | ) | |
| | ) | **Hearing Date: February 26, 2010 (9:00** |
| **Defendant.** | ) | **a.m.)** |
| | ) | |

### DEFENDANT MOHAMADI'S SUPPLEMENTAL MOTION TO SUPPRESS, MOTION TO SEVER, AND MOTION TO EXCLUDE ON SIXTH AMENDMENT GROUNDS

Defendant Mirwais Mohamadi, through counsel, and pursuant to the Sixth Amendment to the United States Constitution and *Massiah v. United States*, 377 U.S. 201 (1964), hereby states as follows:

1. Mr. Mohamadi requests that the Court sever Count 8, which alleges Mr. Mohamadi committed the offense of murder for hire in violation of 18 U.S.C. § 1958. This charge is based on statements Mr. Mohamadi made to a fellow inmate, Mr. Richard Bryan, while Mr. Mohamadi was imprisoned, represented by counsel, and awaiting trial on the robbery offenses set forth in Counts 2 and 4. The government used Mr. Bryan as an agent to solicit information from Mr. Mohamadi regarding the offense alleged in Count 8, and it is anticipated that the government will offer at trial the statements Mr. Mohamadi made to Mr. Bryan as evidence of this offense. Significantly, the government has informed defense counsel that it will also seek to use Mr. Mohamadi's statements to Mr. Bryan as evidence of Mr. Mohamadi's consciousness of guilt with respect to the robbery offenses set forth in Counts 2 and 4. However, and as explained herein, the Sixth Amendment precludes the government from using Mr. Mohamadi's statements at any

trial involving the pre-existing robbery charges.  *See Maine v. Moulton*, 474 U.S. 159, 178-80 (1985); *United States v. Lentz*, 419 F. Supp. 2d 794, 818-19 (E.D. Va. 2005).  When "a government agent deliberately elicits statements regarding an unindicted charge, those statements, while admissible at the trial for the unindicted charge, are not admissible at a trial for a charge that was pending at the time the statements were solicited."  *Lentz*, 419 F. Supp. 2d at 818.  To the extent Mr. Mohamadi's statements to Mr. Bryan are admissible at all, they may only be admitted in a trial on Count 8.  *Id.*  Thus, this Court must sever Count 8 and preclude the government from introducing Mr. Mohamadi's statements to Mr. Bryan at the trial on Counts 2 and 4.

2.  Mr. Mohamadi also requests that the Court sever Counts 6 and 7 for the same reasons it should sever Count 8.  As with Count 8, Counts 6 and 7 (which allege Mr. Mohamadi committed on two occasions the offense of solicitation to commit murder for hire in violation of 18 U.S.C. § 373) are based on statements Mr. Mohamadi allegedly made to fellow inmates, referred to in the Indictment as "Inmates 1 and 2."  Unlike Mr. Bryan, however, it is unclear whether Inmates 1 and 2 were acting as agents for the government at the time of the alleged statements and whether the government specifically instructed the inmates to gather information.  An evidentiary hearing is necessary to determine the circumstances surrounding Mr. Mohamadi's statements to Inmates 1 and 2.  Evidence developed at the hearing may show the inmates elicited information from Mr. Mohamadi while he was represented by counsel on the robbery charges.  If so, these statements are not admissible to show Mr. Mohamadi's consciousness of guilt as to the robbery charges and Counts 6 and 7 must also be severed.  *See Moulton*, 474 U.S. at 180; *Lentz*, 419 F Supp. 2d at 818-19.

3.  In addition to holding an evidentiary hearing to determine if Counts 6 and 7 must be severed, this Court should also hold an evidentiary hearing to determine what, if any, of the statements Mr. Mohamadi made to Mr. Bryan and Inmates 1 and 2 must be suppressed on Sixth Amendment grounds.  This motion supplements Mr. Mohamadi's May 20, 2009 suppression motion (Docket No. 21), which the Court considered at a September 25, 2010 hearing.  At that hearing, the Court reserved ruling on the motion to allow defense counsel time to review audio recordings disclosed by the government.[1]  Having reviewed those recordings, Mr. Mohamadi renews his motion to suppress and respectfully requests an evidentiary hearing because the recordings are inconclusive as to whether his Sixth Amendment rights were violated.  The government has only provided recordings of conversations with Mr. Bryan.[2]  The recordings of Mr. Bryan and Mr. Mohamadi do not include all conversations between the two of them.  The recordings reflect that Mr. Bryan and Mr. Mohamadi had other (presumably non-recorded) conversations.  An evidentiary hearing is needed to determine whether, during these other conversations, Mr. Bryan was acting as the government's agent and solicited information from Mr. Mohamadi in violation of his Sixth Amendment right to counsel.  An evidentiary hearing is also needed to determine the nature of the communication with Inmate Nos. 1 and 2, and whether these inmates violated Mr. Mohamadi's Sixth Amendment right to counsel.  Moreover, absent an

---

[1] At the time of the September 25, 2010 hearing, Mr. Mohamadi was represented by Frank Salvato, Esq.  On January 13, 2010, the Court granted Mr. Salvato's motion to withdraw and appointed undersigned counsel to serve as Mr. Mohamadi's attorneys.

[2] Mr. Bryan was held at the Alexandria Detention Center and allegedly met Mr. Mohamadi there.  The government has disclosed taped recordings of conversations between Mr. Bryan and Mr. Mohamadi on November 12, 17, and 29, 2008.  Some of the disclosed recordings include video in addition to audio of the conversations.  The government has not disclosed any recordings pertaining to the other two informants and has advised that none exist.

evidentiary hearing with all three informants, it will not be possible to determine whether the government instructed the informants to solicit information from Mr. Mohamadi and when the informants began working as agents for the government.[3]

4.   Finally, this Court should preclude the government from introducing evidence of Mr. Bryan's state court testimony regarding Mr. Mohamadi's alleged admission that he robbed a cab driver, as this admission occurred while Mr. Mohamadi was represented by counsel on those charges.

### FACTUAL AND PROCEDURAL BACKGROUND

The government's 10 Count Indictment is based on two separate factual scenarios.  First, the government alleges that on May 27, 2007 Mr. Mohamadi robbed two individuals, referred to in the Indictment as "G.H. and K.R."  These charges are set forth at Counts 1 through 4 of the Indictment (hereinafter, the "robbery charges").[4]  Second, the government asserts that, while he was imprisoned and awaiting trial for the alleged robberies, Mr. Mohamadi engaged in conduct to avoid a conviction for those robberies.  Specifically, the government alleges that Mr. Mohamadi solicited others to commit murder for hire, in violation of 18 U.S.C. § 373 (Counts 6

---

[3] The government disclosed a Report of Investigation (attachment 5 to Government's Opposition), which reflects that Mr. Bryan met with Special Agent Victor Castro on or about November 7, 2008.  The first recorded communication between Mr. Bryan and Mr. Mohamadi is on November 12, 2008.

[4] Count 5 alleges that Mr. Mohamadi possessed a firearm after having been convicted for a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

and 7), committed the offense of murder for hire, in violation of 18 U.S.C. § 1958 (Count 8), and

engaged in witness tampering, in violation of 18 U.S.C. § 1512 (Counts 9 and 10).[5]

On June 1, 2007, Alexandria Police Department Detective Robert Hickman obtained a

warrant charging Mr. Mohamadi with the May 27, 2007 robbery of G.H. This warrant was

served on Mr. Mohamadi on August 10, 2007. At the time, Mr. Mohamadi was imprisoned in

the Fairfax County Adult Detention Center as a result of a probation violation. Based on the best

information available to undersigned defense counsel, Mr. Mohamadi retained attorney Larry C.

Brown to represent him on the robbery charge soon after being served with the warrant. On

September 12, 2007, and November 1, 2007, while Mr. Mohamadi was still incarcerated in the

Fairfax County Adult Detention Center and represented by Mr. Brown, he allegedly had

conversations with Inmates 1 and 2. The government alleges that Mr. Mohamadi solicited these

inmates to murder one of the alleged May 27, 2007 robbery victims. The government has not yet

produced any discovery regarding these informants to defense counsel and the recordings

disclosed by the government do not include conversations with these informants.[6]

In November, 2008, approximately one year after his alleged conversations with Inmate

Nos. 1 and 2, Mr. Mohamadi had conversations with a third inmate-agent, Richard Bryan. At

---

[5] Counts 9 and 10 are based on statements Mr. Mohamadi allegedly made during calls he made from the Alexandria Detention Center. As it appears the government did not use informants to solicit information supporting these charges, they do not raise Sixth Amendment concerns.

[6] The government has represented to defense counsel that the two informants had conversations with Mr. Mohamadi while they were imprisoned in the Fairfax County Adult Detention Center and that they would testify that Mohamadi approached them, prior to the time they became government agents. None of the recordings or other discovery produced by the government confirms these representations or otherwise addresses these inmates.

that time, Mr. Mohamadi was imprisoned in the Alexandria Detention Center.  The government

documented some of Mr. Bryan's conversations with Mr. Mohamadi by having him wear audio

and video recording devices.[7]  Significantly, however, the recordings do not document all of Mr.

Bryan's discussions with Mr. Mohamadi.  The earliest recordings disclosed to defense counsel

demonstrate that Mr. Mohamadi and the inmate had communication at some earlier time, as the

first recording shows the inmate already had knowledge of Mr. Mohamadi's robbery charges.

The nature and extent of those pre-recording conversations is impossible to determine based

solely on the recordings and other discovery disclosed by the government.  For example, it is

impossible to determine whether, during a non-recorded conversation, Mr. Bryan affirmatively

sought out Mr. Mohamadi and questioned him regarding the robbery charges.

It is also impossible to determine, based solely on the discovery provided by the

government to date, at what point Mr. Bryan began acting as a government agent and whether the

government's instructions were consistent with the requirements of *Massiah* and its progeny.

There is no dispute that, as of November 7, 2008, Mr. Bryan was a government agent.  The

government's November 12, 2008 recording shows that Mr. Bryan was effectively acting as a

government interrogator by questioning Mr. Mohamadi regarding certain aspects of the alleged

murder-for-hire plot.[8]  None of the recordings (or any of the other discovery) reveal whether Mr.

Bryan was acting as an agent before this point.  The recordings and other discovery also do not

---

[7] While working as an agent for the government, Mr. Bryan was released from prison.
Some of the recordings disclosed by the government were made after his release, during visits he
later made to the jail to speak with Mr. Mohamadi.

[8] For example, Mr. Bryan asked Mr. Mohamadi how to pronounce the name of the
witness that Mr. Mohamadi allegedly wanted Mr. Bryan to murder.  *See* November 12, 2008
Recording Tr. at 15-16.

show whether, even after he became an agent, he questioned Mr. Mohamadi regarding the robbery offenses.

On December 8 and 9, 2008, Mr. Mohamadi was tried in state court for the alleged robbery. The trial resulted in a hung jury. Mr. Bryan testified at the trial that, at some point while they were both incarcerated at the Alexandria Detention Center, Mr. Mohamadi admitted he robbed a cab driver. It is unclear from Mr. Bryan's testimony whether this alleged admission occurred before or after Mr. Bryan had become a government agent. The extent to which Mr. Bryan questioned Mr. Mohamadi regarding the alleged robberies is also unclear from Mr. Bryan's state court testimony. In total, Mr. Bryan's state court testimony leaves unanswered whether Mr. Mohamadi's alleged incriminating statements were made at a time and in a manner that violated his Sixth Amendment right to counsel.

## ARGUMENT

**I.    THE COURT SHOULD SEVER COUNTS 6 THROUGH 8 BECAUSE THE SIXTH AMENDMENT PRECLUDES EVIDENCE REGARDING THOSE COUNTS FROM ADMISSION AT ANY TRIAL THAT INCLUDES THE ROBBERY COUNTS.**

At the time he was incarcerated and questioned by the government's three inmate-agents, Mr. Mohamadi was protected by the Sixth Amendment right to counsel. "The Sixth Amendment prohibits the government from deliberately eliciting incriminating statements from the accused 'after he has been indicted and in the absence of counsel.'" *United States v. Mir*, 525 F.3d 351, 355 (4th Cir. 2008) (quoting *Massiah*, 377 U.S. at 206).

In this case, the Sixth Amendment renders inadmissible at least two, and possibly three, categories of statements. First, any statements Mr. Mohamadi made to government inmate-

agents regarding the then-pending robbery charges are inadmissible, as he was represented by counsel at that time. *See Massiah*, 377 U.S. at 206. Second, statements Mr. Mohamadi made to Mr. Bryan are not admissible at any trial that includes the then-pending robbery charges. *See Moulton*, 474 U.S. at 178-80; *Lentz*, 419 F. Supp. 2d at 818-19. Third, statements Mr. Mohamadi made to Inmates 1 and 2 are also not admissible at any trial that includes the then-pending robbery charges if, like Mr. Bryan, those inmates were working as government agents and questioned Mr. Mohamadi. *Id.*

The second category of statements, and potentially the third category of statements, are inadmissible because, if admitted, they would show a consciousness of guilt on Mr. Mohamadi's part – *i.e.*, they would be used as evidence against him on the charges for which he was represented at the time the statements were made. In *Moulton*, the government sought to introduce statements the defendant made to wired inmates regarding then-pending charges. 474 U.S. at 178-79. At the time the statements were made, the government was investigating the defendant for uncharged criminal acts, namely, the defendant's alleged involvement in a plan to kill prosecution witnesses. *Id.* The United States Supreme Court held the statements were inadmissible, notwithstanding the fact that they were made in the context of an investigation into uncharged offenses. 474 U.S. at 180 ("To allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance . . . risks the evisceration of the Sixth Amendment right recognized in *Massiah*.")

Although *Moulton* involved statements regarding then-pending charges, the logic of *Moulton* applies with equal force when the government seeks to admit evidence of statements

uncovered during an investigation of then-unindicted offenses as evidence of the defendant's guilt on pre-existing charges. *See Lentz*, 419 F. Supp. 2d at 818 (applying *Moulton* in such a case). As this Court held in *Lentz*, "where, as here, a government agent deliberately elicits statements regarding an unindicted charge, those statements, while admissible at the trial for the unindicted charge, are not admissible at a trial for a charge that was pending at the time the statements were solicited." *Id.*

Mr. Mohamadi does not dispute that, if the statements are otherwise admissible, they could be used as evidence in a trial involving only the murder-for-hire and solicitation allegations set forth in Counts 6 through 8. *See Moulton*, 474 U.S. at 180 n. 16 ("Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of *those offenses*." (emphasis added)). However, to admit these statements in a trial that includes the robbery counts, and to allow the government to use these statements as direct evidence of Mr. Mohamadi's consciousness of guilt regarding the robbery counts, would fly in the face of the Sixth Amendment's right to counsel. The government could effectively circumvent an accused's right to counsel by investigating other alleged crimes and then use the results of its investigation as evidence against a defendant on charges that were pending at the time of the investigation and while he was represented by counsel.

Indeed, that is precisely what we anticipate the government will attempt to do in this case, as it intends to use statements Mr. Mohamadi made to Mr. Bryan as evidence of his guilt of the then-pending robbery charges. *Moulton* and *Lentz* establish that the government cannot use Mr. Mohamadi's statements to Mr. Bryan in this manner. *See Moulton*, 474 U.S. at 180; *Lentz*, 419 F. Supp. 2d at 818. The same problem may exist with respect to statements Mr. Mohamadi made

to Inmates 1 and 2 if, like Mr. Bryan, they were acting as government agents and the government intents to use statements made to these inmates as evidence of Mr. Mohamadi's consciousness of guilt with respect to the robbery counts.  Accordingly, the Court should, at a minimum, sever Count 8 and possibly Counts 6 and 7.

## II.     THE COURT SHOULD HOLD AN EVIDENTIARY HEARING TO DETERMINE WHETHER THE INMATE-AGENTS VIOLATED MR. MOHAMADI'S SIXTH AMENDMENT RIGHT TO COUNSEL.

*Massiah* and its progeny provide clear rules limiting how the government – including inmates acting on the government's behalf – can interact with a defendant while he is represented by counsel.  The government and its inmate-agents cannot actively engage a defendant in a conversation that is likely to elicit incriminating statements about the defendant's upcoming trial. *See Moulton*, 474 U.S. at 170-72.  As this Court has explained, if the government's agent acts as more than a "mere 'listening post'" and "'participates in active conversation and prompts particular replies,'" the conversation becomes the functional equivalent of police interrogation. *Lentz*, 419 F. Supp. at 800 (quoting *Kuhlmann*, 477 U.S. at 459).

Here, the recordings and other information disclosed by the government are unclear as to whether its three inmate-agents went beyond the limits of *Massiah* and deliberately elicited incriminating information from Mr. Mohamadi in violation of his Sixth Amendment right to counsel.  At a minimum, the recordings suggest that Mr. Bryan and Mr. Mohamadi had many conversations that were not captured on the recordings – including conversations regarding his then-pending robbery charges.  If, during these unrecorded conversations, Mr. Bryan was acting as more than a "mere listening post," any incriminating statements he elicited from Mr. Mohamadi – including statements made regarding the alleged solicitation and murder-for-hire

offenses – must be suppressed.  *See Kuhlmann*, 477 U.S. at 459; *United States v. Mitcheltree*, 940 F.2d 1329, 1341 (10th Cir. 1991).

The recordings and other discovery provided by the government also do not reveal when the government enlisted the inmates to question Mr. Mohamadi or what instructions it gave the inmates.  Even if the government initially gave proper instructions to the inmates, this does not mean that, as a matter of law, the inmate-agents complied with the Sixth Amendment.  Without an evidentiary hearing there is also no way of knowing whether, even if its initial instructions were improper, the government subsequently gave improper instructions to the inmates.  *See, e.g.*, *Lentz*, 419 F. Supp. 2d at 809-10, 819 (after initially giving informant proper instructions, government erred in subsequently instructing informant to go back to the defendant and get "as much detail as you can get").  The three inmates may have ignored these instructions during non-recorded conversations by engaging in questioning "designed deliberately to elicit incriminating remarks."  *Kuhlmann*, 477 U.S. at 459.  However, without an evidentiary hearing, it is impossible to conclude that the government properly instructed the three inmates or that, in fact, the three inmates adhered to these discussions.  Given the level of knowledge Mr. Bryan displayed regarding the robbery offenses during the first recording and the lack of information regarding the number and timing of meetings between the jailhouse informants and Mr. Mohamadi, it is possible that one or more of these informant acted as more than "a mere listening post" during these earlier, non-recorded conversations.  *Lentz*, 419 F. Supp. at 800.  The same is true for Inmate Nos. 1 and 2.[9]  An evidentiary hearing is therefore needed to determine whether and the

_____

[9] The government has represented that Inmates 1 and 2 did not question Mr. Mohamadi regarding the robbery offenses but, rather, Mr. Mohamadi admitted the offenses and that his admission was not provoked by any questioning.  The government's representations, of course,

extent to which these inmate-agents violated Mr. Mohamadi's Sixth Amendment right to counsel.

III.     **MR. BRYAN'S STATE COURT TESTIMONY IS INADMISSIBLE, UNLESS AN EVIDENTIARY HEARING REVEALS THE TESTIMONY WAS NOT ELICITED IN VIOLATION OF THE SIXTH AMENDMENT.**

Mr. Bryan testified at Mr. Mohamadi's state trial that, while they were both imprisoned in the Alexandria Detention Center, Mr. Mohamadi admitted he robbed a cab driver.  Mr. Bryan did not state the specific date when this alleged admission occurred.  Mr. Bryan also did not provide any testimony regarding his role as a government informant, which began at least a month before his testimony at the state trial.  In total, it is unclear from Mr. Bryan's testimony whether Mr. Mohamadi's alleged admission occurred while Mr. Bryan was working as a government agent.  It is also unclear whether Mr. Bryan elicited testimony in a manner that violated Mr. Mohamadi's Sixth Amendment right to counsel.  Given that Mr. Mohamadi was represented by counsel for the alleged robbery at the time he was incarcerated with Mr. Bryan, the Court should suppress Mr. Bryan's state court testimony and preclude Mr. Bryan from testifying regarding any statements Mr. Mohamadi made about the robbery offenses.  Mr. Bryan's testimony concerning the robbery offenses should only be admitted if, after an evidentiary hearing, the Court determines the robbery-related statements were made at a time and in a manner that was consistent with Mr. Mohamadi's Sixth Amendment right to counsel.

---

do not constitute evidence and an evidentiary hearing is needed to more fully understand the context surrounding the alleged admissions.

**CONCLUSION**

For the reasons stated herein, Mr. Mohamadi respectfully requests that the Court (a) sever

Counts 6 through 8, (b) hold an evidentiary hearing regarding the statements he made to Mr.

Bryan and Inmate Nos. 1 and 2 and suppress any statements made to these inmates in violation of

his Sixth Amendment right to counsel, and (c) preclude admission of Mr. Bryan's state court

testimony regarding Mr. Mohamadi's alleged admission.


Respectfully submitted,
MIRWAIS MOHAMADI

By Counsel,
Michael S. Nachmanoff,
Federal Public Defender


_____/s/_____
Michael S. Nachmanoff
Virginia Bar Number 39180
Attorney for the defendant
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600- 0860 (telephone)
(703) 600-0880 (fax)
Michael_Nachmanoff@fd.org (e-mail)

Whitney E.C. Minter
Virginia Bar Number 47193
Attorney for the defendant
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600- 0855 (telephone)
(703) 600-0880 (fax)
Whitney_Minter@fd.org (e-mail)

-13-

Jeffrey C. Corey, Esq.
D.C. Bar No. 980384
Admitted *Pro Hac Vice*
Pro Bono Co-Counsel for the defendant
Hunton & Williams, LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 955-1500 (telephone)
jcorey@hunton.com (e-mail)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2010, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald L. Walutes, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria , Virginia 22314
(703) 299-3700
Ron.Walutes@usdoj.gov

Michael Ben'ary, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria , Virginia 22314
(703) 299-3700
michael.ben'ary2@usdoj.gov

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____
Michael S. Nachmanoff, Esq.
Attorney for the defendant
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0860 (telephone)
(703) 600-0880 (fax)
Michael_Nachmanoff@fd.org (e-mail)