IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  1:09CR179 |
| | ) | |
| MIRWAIS MOHAMADI, | ) | Trial Date: March 10, 2010 |
| a/k/a "Omar," "O" | ) | |
| Defendant. | ) | The Honorable Liam O'Grady |
| _____ | ) | |

**GOVERNMENT'S REPEATED OBJECTION TO DEFENDANT'S
EFFORT TO EXCLUDE ON SIXTH AMENDMENT GROUNDS**

COMES NOW the United States of America by its United States Attorney for the Eastern District of Virginia, Neil H. MacBride, and Ronald L. Walutes, Jr. and Michael P. Ben'Ary, Assistant United States Attorneys, and respectfully files this response to defendant's supplemental motion to exclude on Sixth Amendment grounds:

1.  The defendant, Mirwais Mohamadi, was arraigned on April 20, 2009.  He is charged in a ten-count indictment with two Hobbs Act armed robberies, two brandishing a firearm in a crime of violence, a felon in possession, three attempts to hire former inmates in both the Fairfax Adult Detention Center and the Alexandria Adult Detention Center to murder a witness against him (two are charged as solicitations and the third as a murder for hire) and two counts of witness tampering. The defendant was provided with copies of all recorded jail telephone calls in the position of the prosecution to include all of the calls referenced in the indictment.  He also received the recordings of his conversations with the third inmate where he details how to kill the taxi cab witness.  This discovery was all provided to the Office of the Federal Public Defender in the first days of May 2009, almost one year ago.

2. The defendant's trial date was originally scheduled for June 29, 2009. On May 20, 2009, the Office of the Federal Public Defender sought a continuance noting that they were first appointed on April 13, 2009, the government's objection to any continuance and the large amount of discovery provided to their office. The Court granted the defendant's request for a continuance and the trial was scheduled for October 13, 2009. On October 5, 2009, this Court ordered a competency hearing after holding a hearing in open court where new defense counsel reported that the defendant claimed to be hearing voices. A medical examination was ordered and Dr. Raymond Patterson concluded that the defendant was competent and also found evidence of the defendant's malingering. A new trial date was set for February 16, 2010. On February 5, 2010, the defendant again sought and received a further continuance of his trial date, currently set for March 10, 2010.

3. The defendant now files essentially the same motion he filed on May 20, 2009. It is now styled as a supplemental motion. In the government's opposition last summer we attached the law enforcement report that explicitly instructed the witness, inmate number three, not only to have no further conversation with the defendant about the underlying offense, **but also that if the defendant volunteered any information about the underlying robbery not to repeat it to law enforcement**. Government Attachment 5 to the June 3, 2009 Government Opposition. (Attached again for the convenience of this Court, now marked as Attachment 1). In addition to this clear documented instruction, law enforcement thereafter recorded the vast majority of this inmate's subsequent cooperation. These recorded conversations include recorded discussions between the defendant and inmate number three inside the Alexandria Detention Center itself on November 12 and 17, 2008, on the telephone after inmate number three's release (November 19, 2008) and his visitation contacts with the defendant (November 22 and 29, 2008) after his release. In addition, the state called inmate

number three where he testified as to what he was told prior to cooperating with the government at the state armed robbery trial on December 8, 2008.

 4. At the motions hearing last year, the government noted that the defendant had all of the recorded conversations and sworn testimony identified above, and had possessed all of this material for almost half a year. The government asked that the defendant identify what state testimony was received in violation of the Sixth Amendment or what recorded conversation regarding the murder for hire investigation occurred in violation of the Sixth Amendment. The Court agreed and instructed the defendant to amend his motion to identify with specificity the alleged violation of the Sixth Amendment.

 5. Now, on the eve of trial and only after obtaining an additional continuance, the defendant files the same motion without identifying a single incidence where the defendant's Sixth Amendment was violated. He simply asks this Court to conduct an evidentiary hearing to conduct a fishing expedition and perhaps a dress rehearsal of his cross examination of the inmates this defendant recruited to murder a witness. The defendant is not entitled to such a hearing and has shown no basis for such a hearing. His repeated effort to sever counts and preclude reasonable and proper inferences are without merit.

 6. To be clear, no inmate possesses extensive knowledge of the underlying robbery of the taxi cab driver. The defendant was not seeking to recount his crime inside the jail, but was instead seeking to recruit inmates to kill the witness keeping the defendant in jail. While it is true that the defendant makes a simple admission in some limited fashion to each inmate, he does so only insomuch as to explain his need to have this witness killed. Today, the defendant fails to and cannot identify any Sixth Amendment violation. Although he apparently does not want to use the record,

the government hereby provides to this Court the sworn testimony of inmate number three, including his cross examination, from this defendant's robbery trial in the Commonwealth on December 8, 2008. Attachment 2. This sworn testimony clearly demonstrates that the admissions occurred in September 2008, two months before this witness contacted law enforcement. See transcript at 140.[1]

7. In the fall of 2007, two inmates separately approached the Fairfax County Police Department to alert them to this defendant's efforts to kill a taxi cab driver. The Fairfax County Police Department sought to introduce an undercover police officer to corroborate this report, but were ultimately unsuccessful because the defendant would not work with anyone who was unknown to him or his associates in the jail. The Fairfax County Police Department notified the Alexandria Police Department concerning the possible threats to the taxi cab driver and met with the victim on October 11, 2007, to ensure he was aware of the threats and was careful as to his personal safety. Nowhere in the detective's notes is there anything concerning the armed robbery beyond the fact that the defendant had a pending armed robbery case. Most instructive, when the Alexandria Commonwealth's Office tried the state armed robbery of the taxi cab driver they did not call either inmate one or two or any member of the Fairfax County Police Department. Because no undercover officer was successfully introduced, neither defendant received any benefit from the state. Similarly, inmate number three confirmed he received no benefit from the state in his sworn testimony. Transcript at 144.

---

[1] Similarly, the two inmate from the Fairfax County Detention Center have only a superficial understanding of the underlying offense from the defendant. Inmate number one recalls the defendant admitting to the robbery, but not much else. Inmate number two recalls the defendant told him that the taxi cab driver witnessed him beating on a prostitute who had tried to rob him to explain why he needed the taxi cab driver murdered.

8. On November 7, 2008, inmate number three first meets with law enforcement to report the threat against the taxi cab driver. See Attachment 1. He is immediately, correctly and unequivically instructed not to inquire about the robbery case. He is further instructed not to disclose any such information if it is simply volunteered by the defendant. This case is not even close factually to Lentz. United States v. Lentz, 419 F.Supp.2d 794, 814 (EDVA 2005) (Judge Ellis quoting Thomas v. Cox, 708 F.2d 132 (4th Cir. 1983) ("The Fourth Circuit found no agency created by a 'simple admonition' to 'keep your ears open' or to 'listen but don't ask' questions, unless an express or implicit *quid pro quo* undergirds them. To conclude otherwise, the Fourth Circuit reasoned, 'would be in practical effect to establish the principle that any voluntary proffer of inmate informer assistance not met with silence or actual repudiated by state officials would make inadmissible any inculpatory disclosures arguably induced by the circumstances of confinement that are subsequently made by an accused in conversations with the inmate'").

9. Inmate number three had contact with the defendant on November 7, 8 and 9 before the federal agents were able to wire him inside the jail. These conversations, on November 7, 8 and 9, were limited to the investigation of the murder for hire plot, consistent with the explicit instructions provided to inmate number three. Attachment 3. Similarly, this witness' sworn testimony establishes that no discussion occurred about the robbery, which was discussed months earlier in September 2008. This witness was cross examined by the defendant's counsel, Larry Brown, Esquire, and no assertion of any violation was even made. In fact, the defendant suggested that the passage of time from the conversation, two months, made inmate number three's memory subject to question. Transcript at 150. No recorded jail conversation was admitted at the state trial since no recorded jail conversation has any discussion of the robbery. Most telling, with all of the

recorded material generated in the course of this witness' assistance, nowhere is there any evidence of any Sixth Amendment violation. The defendant is not entitled to a hearing or dress rehearsal of his examination of inmate number three. The law certainly does not require the defendant receive a benefit from his efforts to kill a witness.

    10. The defendant's admissions to inmate number three made before he spoke with law enforcement are properly admissible and in fact were admitted at the state trial. The defendant's effort to kill the taxi cab driver is properly admissible to prove the defendant's guilt on the charged solicitation to commit murder and murder for hire offenses. The inference of the defendant's consciousness of guilt when he undertook steps to murder the taxi cab driver, just like the inference of his guilt when he undertook to witness tamper, is also properly admissible at trial. The law does not shield the defendant from the reasonable inferences drawn from his efforts to defeat the criminal justice system. He is not entitled to a dry run of the trial; he is not entitled to severed trials artificially shielding him from his own actions to tamper with and murder witnesses nor is he entitled to the sanitization of recorded evidence of those efforts at trial.

    11. The fact that the defendant attempted to kill the victim of his armed robbery is properly admitted both to convict him of the charged offenses and to demonstrate his consciousness of guilt. United States v. Young, 248 F.3d 260, 271-72 (4th Cir. 2001) ("evidence of witness intimidation is admissible to prove consciousness of guilt...because [the threats against a witness] establish a defendant's 'consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.") (citations omitted); United States v. Hayden 85 F.3d 153, 159 (4th Cir 1996) (telephone call properly admitted even though the caller never said his name because the witness was able to identify the caller's voice as that of the

defendant; no handwriting analysis was conducted on the letter, no fingerprints on the letter, and the letter was not signed, the letter was still reliable because its content "pointed" to the defendant as the author and the recipient of the letter was able to "establish the identity of the writer of the letter to a fairly reliable degree" and probative value of the letter and the telephone threats were great due to the fact that "the threats went directly to establish criminal intent and guilty conscience"); United States v. Van Metre, 150 F.3d 339, 352 (4th Cir. 1998)("a defendant's attempt to threaten an adverse witness indicates 'his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit'").

12. Here, all three inmates were not cooperating with the government in any capacity until approached by the defendant, who sought out each inmate believing them to be trustworthy and about to be released from custody. Each inmate only then reached out to law enforcement to alert them to the defendant's intent to harm a witness. After speaking with law enforcement, no inmate discusses the armed robbery with the defendant further. The Fourth Circuit in Lentz confronted a much different situation where cooperators with an preexisting relationship with the government, were unknowingly brought into the jail with the defendant. Even under that situation, "[o]bviously, the government was not precluded from investigating the new criminal activity or otherwise acting to protect its intended victims, but because Agent Garrett instructed [informant] to learn as much as he could, statements made by Lentz to [informant] about the plot **thereafter** were not admissible in his kidnapping retrial. United States v. Lentz, 524 F.3d 501, 522 (4th Cir. 2008)(emphasis added). In the instant case the government only investigated the murder for hire after learning of the defendant's effort to kill a witness. Statements made about the underlying robbery made by the defendant before speaking with the government are properly admitted. There are no statements

made about the robbery after the relationship began with the government. The reports and tapes prove it as to inmate three and the fact that inmates one and two were not even called at the state trial proves the same point. The robbery detectives in the underlying case had nothing to do with the case beyond confirming that their was a pending charge and assisting in the warning of the taxi cab driver. Lentz addresses a listening post case and the limited circumstances where a preexisting cooperator can assist the government in the underlying case after becoming an agent of the government. In the instant case, the Fairfax detectives and then federal agents were only interested in the murder for hire and carefully limited their investigation accordingly.[2]

13. "[W]here testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible. Evidence of uncharged conduct is not considered evidence of other crimes where it is necessary to complete the story of the crime on trial." United States v. Higgs, 353 F.3d 281, 311 (4th Cir. 2003), quoting United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996) and United States v. Stitt, 250 F.3d 878, 888 (4th Cir. 2001). "Evidence is intrinsic if it is necessary to 'provide context relevant to the criminal charges." United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009), quoting United States v. Cooper, 482 F.3d 658, 663 (4th Cir. 2007). Here is the defendant's effort to murder the taxi cab driver, his initial robbery of the taxi cab driver and later effort to repeatedly tamper with a witness are all charged, related and intrinsic

---

[2] It is worth noting that the defendant in this case did not assert his Miranda rights when interviewed by the Alexandria robbery detective on August 8, 2007, where he waived his rights and agreed to speak without a lawyer about the underlying offense. Attachment 3. Similarly, he wrote asking to speak with the agents investigating his efforts to murder a witness and then again waived his rights in a recorded interview with them on January 14, 2009, again speaking without a lawyer. In virtually every courtroom appearance by this defendant in federal court, he has ignored his respective counsel and spoken for himself. It is ironic indeed, that his current counsel asserts a violation of the Sixth Amendment.

to the complete the story of this crime. There is no violation of the Sixth Amendment. The defendant has failed to point to any evidence of such a violation in the year he has had to review the recorded tapes and trial testimony from 2008. He is entitled to no evidentiary hearing on the basis of this record. His effort days before trial to suppress, sever and exclude are not supported by the record, evidence or law.

## **Conclusion**

WHEREFORE, the government respectfully submits that the defendant's effort to conduct an evidentiary hearing be denied on the clear, uncontested and documented record of this case. The defendant has had an abundant opportunity to identify the alleged Sixth Amendment violation in the recordings and testimony. This defendant is not entitled to any relief.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By      /s/
Ronald L. Walutes, Jr.
Virginia Bar number 26312
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314-5794
Phone: 703-299-3700
Fax: 703-739-9556
Email Address: Ron.Walutes@usdoj.gov

     /s/
Michael P. Ben'Ary
Assistant United States Attorney

CERTIFICATE OF SERVICE

      I certify that I electronically filed the foregoing government's notice of evidence using the CM/ECF system, which will send a notification of such filing (NEF) on February 24, 2010, to the following:

Michael S. Nachmanoff, Esquire
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

Whitney Minter, Esquire
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

                                                            /s/
                                        Ronald L. Walutes, Jr.
                                        Virginia Bar number 26312
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Justin W. Williams U.S. Attorney's Building
                                        2100 Jamieson Avenue
                                        Alexandria, VA 22314-5794
                                        Phone:  703-299-3700
                                        Fax: 703-739-9556
                                        Email Address: Ron.Walutes@usdoj.gov