UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:09-CR-179 |
| | ) | |
| MIRWAIS MOHAMADI | ) | The Hon. Liam O'Grady |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT MOHAMADI'S POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Defendant Mirwais Mohamadi, through counsel,[1] and pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, hereby respectfully moves this Court for (a) a judgment of acquittal on Counts 1, 3, and 5 pursuant to Rule 29 and a new trial on Counts 2, 4, and 9 pursuant to Rule 33 or, in the alternative, (b) a new trial on Counts 1 through 5 and 9 pursuant to Rule 33. A judgment of acquittal as to certain counts or, in the alternative, a new trial as to certain counts is warranted for the reasons set forth below.

---

[1] Pursuant to this Court's February 5, 2010, Order, Mr. Mohamadi has advised the undersigned defense counsel that he has prepared several *pro se* motions for submission to the Court. On April 2, 2010, Mr. Mohamadi provided these *pro se* motions to officials at the Northern Neck Regional Jail in an envelope addressed to the Court, so that they could arrive at the Court by the April 7, 2010, filing deadline. Undersigned defense counsel has made inquiries regarding the mailing of this package but, at the time of the filing of this motion, it is unclear whether the *pro se* motions have been sent directly to the Court or held at the jail at the direction of the U.S. Marshals Service. Defense counsel has offered to submit these *pro se* motions on Mr. Mohamadi's behalf consistent with the past practice approved by the Court, but we have not received copies of the *pro se* motions as of the date of this filing. We will submit copies of the *pro se* motions to the Court if and when we receive them, provided they have not already been filed with the Court at that time. Given that Mr. Mohamadi has advised defense counsel he made a good faith effort to mail his *pro se* motions to the Court several days before the filing deadline, we ask that the Court consider these *pro se* motions timely filed when it receives them.

I. **A JUDGEMENT OF ACQUITTAL AS TO COUNTS 1 AND 3 IS WARRANTED BECAUSE THERE WAS NO VENUE AS TO THESE COUNTS IN THE EASTERN DISTRICT OF VIRGINIA.**

Count 1 alleged that "in the Eastern District of Virginia, and elsewhere," Mr. Mohamadi unlawfully obstructed commerce, in violation of 18 U.S.C. § 1951, by robbing Ms. Kimberly Riley in Washington, D.C. The evidence presented at trial, even when viewed in the light most favorable to the government, showed that there was no venue over Count 1 in the Eastern District of Virginia. Proper venue in a criminal prosecution is a constitutional right, and when the government alleges multiple counts it must prove venue with respect to each and every count by a preponderance of the evidence. *See United States v. Villarini*, 238 F.3d 530, 533 (4th Cir. 2001); *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). Significantly, venue is proper only in a district in which an "essential conduct element" of the charged offense took place. *Villarini*, 238 F.3d at 533; *Bowens*, 224 F.3d at 308.

The evidence presented at trial showed that the robbery alleged in Count 1 occurred entirely in the District of Columbia and no "essential conduct element" of the robbery took place in the Eastern District of Virginia. Ms. Riley testified that she was robbed in the early morning hours of May 27, 2007, in an alley in the Dupont Circle area of the District of Columbia after spending several hours at nearby clubs with the robber. Even if Ms. Riley's testimony that Mr. Mohamadi was the man who robbed her is to be believed, there is nothing to connect this robbery to the Eastern District of Virginia. For example, there was no evidence at trial to show that Mr. Mohamadi intended to rob Ms. Riley when they left Alexandria, Virginia, to go to Washington, D.C. The government's argument that Mr. Mohamadi was armed when he left the Eastern District of Virginia is an insufficient basis to establish venue. There was no testimony or other

2

evidence that established Mr. Mohamadi, in fact, was carrying a weapon when he left the Eastern District of Virginia with Ms. Riley. Rather, Ms. Riley's testimony was that she first saw the gun during the robbery in the Dupont Circle alley. The government did not present "substantial evidence" to show the gun was transported from the Eastern District of Virginia or to otherwise substantiate its claim that Mr. Mohamadi had the intent to rob Ms. Riley when they left the Eastern District of Virginia. Instead, the evidence, even when viewed in the light most favorable to the government, showed only that Mr. Mohamadi intended for Ms. Riley to accompany him to clubs in the District of Columbia. Ms. Riley testified that she did not feel threatened or concerned that she might be robbed while she was in Virginia or at any point prior to the time of the actual robbery. She was not forced to travel from Virginia to the District of Columbia as part of the robbery. In fact, the evidence showed she willingly made the trip to the District of Columbia as part of her escort services.

Accordingly, venue over Count 1 is lacking and the Court should enter a judgment of acquittal on Count 1 pursuant to Rule 29. *See* Fed. R. Crim. P. 29 (providing that the Court must enter judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction). Given the lack of venue with respect to Count 1, a judgment of acquittal should also be entered on Count 3. Count 3 alleged that Mr. Mohamadi used, carried, and brandished a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). Count 1 is the crime of violence on which Count 3 is based. Count 1 alleged an offense that occurred entirely in the District of Columbia. The robber's possession of a firearm during the commission of this offense also occurred entirely in the District of Columbia. Venue is therefore also lacking over Count 3 and a judgment of acquittal is warranted on this Count as well.

## II. A NEW TRIAL IS WARRANTED ON COUNTS 1 THROUGH 4 BECAUSE THE EVIDENCE WAS INSUFFICIENT SHOW THE ROBBERIES "OBSTRUCTED, DELAYED, OR AFFECTED" INTERSTATE COMMERCE.

The government failed to present sufficient evidence that the robberies alleged in Counts 1 and 2 had an impact on interstate commerce so as to satisfy the Hobbs Act's jurisdictional requirement.  The relevant inquiry for this Court in reviewing a claim of insufficiency of the evidence is whether there is substantial evidence, considered in the light most favorable to the government, to support the jury's verdict.  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *United States v. Wills*, 346 F.3d 476, 495 (4th Cir. 2003), *cert. denied* 542 U.S. 939 (2004); *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).  Substantial evidence is defined as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'"  *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)).

Here, a new trial on Counts 1 through 4 is warranted in the interest of justice because the evidence presented at trial failed to establish federal jurisdiction over either robbery alleged in the indictment.  Count 1 alleged that Mr. Mohamadi "obstructed, delayed, or affected" interstate commerce by robbing Ms. Riley, in violation of the Hobbs Act, 18 U.S.C. § 1951.  Similarly, Count 2 alleged that Mr. Mohamadi "obstructed, delayed, or affected" interstate commerce in violation of the Hobbs Act by robbing a cab driver, Mr. Gebru Haile.

To carry its burden of proof as to Counts 1 and 2, the government had to show that each robbery had an impact on interstate commerce.  The statutory definition of "commerce" covered by the Act is "commerce within the District of Columbia, . . . [and] all commerce between any

4

point in a State . . . and any point outside thereof; . . . and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3).  Case law interpreting the Hobbs Act makes clear that, in cases involving substantive Hobbs Act robberies (as opposed to conspiracy or extortion Hobbs Act offenses), the government must present evidence showing there was an *actual* impact on interstate commerce.[2]  For example, the Sixth Circuit has held that the robbery of a few thousand dollars from the home of a business owner does not satisfy the Hobbs Act's jurisdictional requirement, even when some of the money stolen constituted business proceeds. *See United States v. Wang*, 222 F.3d 234, 240 (6th Cir. 2000).  In *Wang*, the defendant targeted the home of a restaurant owner and stole $4,200 from the victim's home, including $1,200 in restaurant proceeds.  *Id.* at 236. The Sixth Circuit overturned the defendant's conviction for robbery under the Hobbs Act, holding that the government had failed to establish the robbery had more than a speculative impact on interstate commerce.  *Id.* at 239-40.  The Sixth Circuit stated that "upholding federal jurisdiction over Wang's offense would, in essence, acknowledge a general federal police power with respect to the crimes of robbery and extortion." *Id.* at 240.

The Riley and Haile robberies were even more attenuated from commerce than was the robbery in *Wang*.  With respect to the robbery of Ms. Riley, there was no evidence that her

---

[2] Hobbs Act cases involving conspiracy and extortion offenses apply a lower standard, as these cases hold that the interstate commerce requirement may be satisfied if there was a "probable" or "potential" impact on commerce.  Even under this lower standard, however, there are limits to the reach of federal jurisdiction.  For example, the Fourth Circuit cautioned in a Hobbs Act extortion case that, "broadly as the extension of the interstate commerce requirement has spread, we are still a federal and not a unitary, government and, to satisfy the Act, the government still must show that an effect on interstate commerce is reasonably probable." *United States v. Buffey*, 899 F.2d 1402, 1404 (4th Cir. 1990) (holding that government had failed to present evidence sufficient to show the appellant's extortion attempt had an effect on interstate commerce).

prostitution business was harmed in any way. There was no evidence that she had to scale back her services to other clients or that she stopped working as a result of the robbery. Moreover, the evidence presented at trial showed that her business has very little connection to interstate commerce. She is, effectively, an independent contractor. She does not work for a corporation or business that had its assets depleted as a result of the robbery. *Cf. United States v. Spagnolo*, 546 F.2d 1117 (4th Cir. 1976) (jurisdictional requirement satisfied under depletion of assets theory when owner of large construction company was forced at gunpoint to sign over his interest in the company).

And the evidence presented at trial showed that Ms. Riley's illegal commercial enterprise is much different – and far more attenuated from commerce – than the drug trafficking activities at issue in *United States v. Williams*, 342 F.3d 350, 354-55 (4th Cir. 2003). In *Williams*, the Fourth Circuit held the Act's jurisdictional requirement was satisfied in a case involving a robbery of $1,000 from a drug dealer. *Id.* The Fourth Circuit reasoned that the requirement was satisfied because the victim "regularly trafficked in cocaine" and, because the victim had suppliers, the robbery depleted the assets of a business engaged in commerce. *Id.* In contrast, the evidence showed Ms. Riley did not have a chain of suppliers and was not selling a discrete product. Unlike the drug dealer in *Williams*, Ms. Riley was not selling a product that was passed along a supply chain from a grower or manufacturer to mid-level distributors to individual salesmen on the street. Accordingly, the evidence was insufficient to satisfy the Hobbs Act's

jurisdictional nexus with respect to Count 1 and a new trial is warranted on this Count in the interest of justice.[3]

The evidence presented regarding the robbery of Mr. Haile also was insufficient to satisfy the Act's jurisdictional requirement. Mr. Haile, like Ms. Riley, testified that he was an independent contractor. His cab business was a sole proprietorship. Except for a loose affiliation with a third party that provided him with insurance, Mr. Haile's cab business was entirely self-contained. He testified that he does not have employees or an office. The evidence also showed that his business was not significantly impacted by the robbery. He continued to operate the cab and, except for the small amount of money that was stolen, his business was not harmed in anyway. Thus, the evidence was insufficient to satisfy the Act's jurisdictional requirement with respect to Count 2 and a new trial is warranted on this Count in the interest of justice.

If the Court determines that a new trial is warranted on Counts 1 and 2 due to the lack of evidence concerning the Hobbs Act jurisdictional requirement, it should also grant a new trial on, respectively, Counts 3 and 4. Counts 3 and 4 alleged Mr. Mohamadi used a firearm during the

---

[3] The Court's jury instruction as to the interstate commerce requirement created an additional problem as to these Counts. The Court instructed the jury that it was not necessary for the government to prove that the defendant actually obstructed, delayed, or affected commerce, so long as he performed an act which could have had such an impact on interstate commerce. Mr. Mohamadi objected to this instruction, as it is based on case law interpreting inchoate Hobbs Act offenses (*i.e.*, conspiracy, extortion). Case law addressing substantive Hobbs Act robberies confirms that a different standard is appropriate in such cases, namely, the conduct must have had an actual impact on interstate commerce. *See, e.g.*, *Williams*, 342 F.3d at 354; *United States v. Jamison*, 299 F.3d 114, 118 (2d Cir. 2002); *see also* Def.'s Proposed Instruction No. 37. Because the jury received an instruction based on the inapplicable Hobbs Act conspiracy and extortion offenses, it might have believed it could overlook the lack of evidence showing an actual impact on interstate commerce.

Hobbs Act robberies described in Counts 1 and 2. If federal jurisdiction is lacking over Counts 1 and 2, then federal jurisdiction is also lacking over Counts 3 and 4, as these Counts cannot be established unless all the elements of the Hobbs Act robberies are established.

### III. THE COURT SHOULD ENTER A JUDGMENT OF ACQUITTAL ON COUNT 5 BECAUSE, UNDER THE FACTS OF THIS CASE, A CONVICTION ON THIS COUNT IMPERMISSIBLY INFRINGES ON MR. MOHAMADI'S SECOND AMENDMENT RIGHT TO POSSESS A FIREARM.

The Court should also enter a judgment of acquittal on Count 5. The Second Amendment protects Mr. Mohamadi's right to possess a firearm for self-defense purposes. Under the facts of this case, and in light of the Supreme Court's decision in *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008), the prohibition on gun possession contained in 18 U.S.C. § 922(g)(1) impermissibly infringes on that right.

Count 5 alleged Mr. Mohamadi possessed a firearm after having been convicted of felonies punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Mr. Mohamadi waived his right to a jury trial on Count 5. During the jury trial on the other Counts, several witnesses testified that they had observed Mr. Mohamadi possessing a firearm. On March 23, 2010, the government filed a certified copy of Mr. Mohamadi's felony convictions and requested that the Court find him guilty of violating 18 U.S.C. § 922(g)(1) based on the witness testimony and the certified convictions. On March 25, 2010, the Court issued an Order adjudicating him guilty of violating 18 U.S.C. § 922(g)(1), as alleged in Count 5.[4]

---

[4] As discussed in more detail below in Part III, *infra*, the Court entered its Order before Mr. Mohamadi could respond to the government's motion and without providing Mr. Mohamadi an opportunity to present evidence or argument in defense of the allegations contained in Count 5. As also discussed below, Mr. Mohamadi requests that the Court give the same weight to all arguments presented herein pertaining to Count 5 as it would have before entering its Order adjudicating Mr. Mohamadi guilty as to that Count.

This conviction should not stand because the felon-in-possession statute impermissibly infringes on Mr. Mohamadi's Second Amendment rights. The Second Amendment states that "the right of the people to keep and bear arms, shall not be infringed." The Court held in *Heller* that the Second Amendment protects an individual's right to possess a handgun and that District of Columbia laws banning handgun possession violated this right. *Heller*, 128 S. Ct. at 2821-22. In reaching this decision, the Court underscored that the history and text of the Second Amendment "guarantee the individual the right to possess and carry weapons in case of confrontation." *Id.* at 2797; *see also id.* at 2799 ("[t]here seems no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms").

*Heller* was a watershed decision and all laws restricting an individual's right to possess a firearm must be re-examined in light of the Court's interpretation of the Second Amendment. It is true that the *Heller* Court stated in *dicta* that its decision "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 128 S. Ct. at 2816-17. However, the issue of whether felons may be prohibited from possessing firearms consistent with the Second Amendment was not before the Court and, therefore, *Heller* does not resolve whether 18 U.S.C. § 922(g)(1) impermissibly restricts an individual's constitutional right to possess a handgun.[5] The Fourth Circuit has also not definitively resolved this issue. The Fourth Circuit has not issued a published decision addressing whether, in light of *Heller*, section 922(g)(1)

---

[5] The *Heller* Court suggested that its treatment of the Second Amendment was limited to the constitutionality of the District of Columbia's gun ban. *See Heller*, 128 S. Ct. at 2816 (stating "we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment").

violates an individual's Second Amendment right to possess a handgun. The few unpublished Fourth Circuit decisions that have addressed the issue have not analyzed the impact of *Heller* in detail and have been somewhat unclear regarding the extent to which *Heller* impacts convictions under 922(g)(1). *Compare United States v. Nichols*, 2010 WL 23162 at *2 (4th Cir. Jan. 4, 2010) (stating that "*Heller* is inapposite because it does not deal with violations of § 922(g)(1)" and rejecting appellant's argument that sentence imposed on a 922(g)(1) conviction was unreasonable in light of *Heller*), *with United States v. Brunson*, 292 Fed. Appx. 259, 261 (4th Cir. Sept. 11, 2008) (characterizing *Heller*'s *dicta* as "upholding" laws prohibiting felons from possessing handguns).

  Mr. Mohamadi submits that, at the very least, *Heller* calls into question any law that restricts an individual's Second Amendment right to possess a firearm. Indeed, notwithstanding the Court's *dicta*, the logic of *Heller* applies with equal force to laws banning an entire class of citizens from possessing firearms. As the Court recognized in *Heller*, the drafters of the Bill of Rights intended for the Second Amendment to protect an individual's right to self-defense. 128 S. Ct. at 2799 ("it is a natural right which people have reserved to themselves, confirmed by the Bill of Rights, to keep arms for their own defense" (internal quotations omitted)). The need to defend one's self is not diminished simply because of a prior felony conviction. Evidence presented at trial suggested that Mr. Mohamadi carried a weapon for self defense. Specifically, Ms. Inge testified on direct examination that Mr. Mohamadi carried a gun for protection.

  Moreover, Mr. Mohamadi's felony convictions were relatively old; they occurred eight years prior to his possession of a firearm and related to conduct that took place when he was a minor. Even if, as the *Heller* Court implied in *dicta*, some felon-in-possession laws are

constitutionally permissible, these restrictions should be time-limited, especially for conduct that occurred when the individual at issue was a minor.  At some point an individual's Second Amendment right to possess a firearm for self defense must override the statutory purposes for section 922(g)(1)'s prohibition on felons possessing firearms. Mr. Mohamadi respectfully submits that, after *Heller*, any restriction on an individual's right to possess a firm must be narrowly circumscribed and that, under the facts of this case (especially the fact that Mr. Mohamadi's felonious conduct occurred when he was a minor and Ms. Inge's testimony that he carried a handgun for self-defense), section 922(g)(1) extends beyond the limits of what is constitutionally permissible.  The Court should therefore enter a judgment of acquittal as to Count 5.

**IV.     ALTERNATIVELY, THE COURT SHOULD GRANT A NEW TRIAL ON COUNT 5 BECAUSE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THE ELEMENTS OF THE OFFENSE.**

Even if the Court determines that Mr. Mohamadi's Second Amendment rights have not been infringed so as to require a new trial, Mr. Mohamadi submits in the alternative that a new trial is warranted on Count 5 because the evidence was insufficient to establish the requisite elements of the offense.  To carry its burden of proof as to the felon-in-possession offense described in Count 5, the government had to show that Mr. Mohamadi (1) had been convicted of a crime punishable for a term exceeding one year and (2) had shipped or transported in interstate or foreign commerce, or possessed in or affected commerce, any firearm or ammunition.  *See* 18 U.S.C. § 922(g)(1).

As an initial matter, Mr. Mohamadi notes that the Court adjudicated him guilty of this offense without providing him the opportunity to present argument or evidence to rebut the

11

government's evidence.[6]   In lieu of requesting that the Court vacate its order to allow him to present argument, Mr. Mohamdi asks the Court to consider the arguments in this motion as it would have considered them prior to the entry of its March 25, 2010, Order adjudicating him guilty as to Count 5.

The government's evidence was insufficient because the testimony did not establish beyond a reasonable doubt that Mr. Mohamadi possessed a firearm on May 26 and 27, 2007, as alleged in Count 5. Mr. Haile and Ms. Riley both testified that the man who robbed them possessed what appeared to be a firearm. Neither Mr. Haile, Ms. Riley, nor any other government witness, however, testified that the firearm they saw was a real firearm or that it was operable. In fact, the government never even showed Ms. Riley the firearm that it alleged belonged to Mr. Mohamadi (exhibit 58). Thus, the evidence was lacking as to whether the robber possessed a firearm that was, in fact, a real and operable firearm.

The evidence was also lacking as to *who* possessed the alleged firearm. The evidence at trial demonstrated that Mr. Haile had provided numerous conflicting descriptions of his robber which raised considerable doubt as to his subsequent identification of Mr. Mohamadi. Ms. Riley's identification was also suspect because Detective Hickman erred in administering a photo line-up to Ms. Riley. Thus there was also considerable doubt as to her subsequent identification of Mr. Mohamadi as the man who robbed her.

---

[6] The government filed certified copies of Mr. Mohamadi's felony convictions on March 23, 2010. At the time it submitted those copies, the government also filed a memorandum that identified the evidence which it believed established the elements of the offense and requested that the Court find Mr. Mohamadi guilty on Count 5. On March 25, 2010, the Court entered an Order adjudicating him guilty on Count 5 before Mr. Mohamadi had an opportunity to respond to the government's request or otherwise present evidence or argument.

In addition to Ms. Riley and Mr. Haile, Ms. Inge and Mr. Schap testified that they had seen Mr. Mohamadi in possession of a firearm. Ms. Inge's entire testimony is suspect because she has provided several different accounts of what Mr. Mohamadi allegedly did or admitted regarding the offenses at issue in this case. Moreover, given the government's offer of immunity, she had an incentive to testify in a manner favorable to the government.

Mr. Schap's testimony should not be considered by the Court for purposes of determining whether the government has carried its burden with respect to Count 5. Count 5 alleged that Mr. Mohamadi knowingly possessed a firearm "[o]n or about May 26, 2007 and continuing through May 27, 2007." Mr. Schap testified that he saw Mr. Mohamadi in possession of a firearm on June 12, 2007 – weeks after the alleged illegal conduct. Even if relevant, his testimony fails to establish beyond a reasonable doubt that Mr. Mohamadi possessed a firearm on May 26 and 26, 2007, as alleged in the indictment.

Accordingly, the evidence presented at trial was insufficient to show that Mr. Mohamadi possessed a firearm in violation of 18 U.S.C. § 922(g)(1). Given this lack of evidence, and in the interest of justice, the Court should grant a new trial on Count 5.

**V.    THE EVIDENCE WAS INSUFFICIENT AS TO COUNT 9 BECAUSE THE GOVERNMENT FAILED TO ESTABLISH THE REQUISITE FEDERAL NEXUS AND ONLY PRESENTED EVIDENCE THAT MR. MOHAMADI'S SISTER – *NOT* MR. MOHAMADI – ATTEMPTED TO INFLUENCE MS. INGE.**

The Court should also grant a new trial as to Count 9 because the evidence was insufficient to show that Mr. Mohamadi engaged in conduct in an effort to undermine communication to a federal law enforcement officer regarding a potential federal offense. Count 9 alleged that Mr. Mohamadi instructed Ms. Inge to provide false and misleading testimony

during his state trial "in an effort to shield himself from federal prosecution," in violation of 18 U.S.C. § 1512(b)(3).  However, as detailed below, the evidence presented at trial showed only that Mr. Mohamadi's sister – *not* Mr. Mohamadi – attempted to influence Ms. Inge's testimony at the state trial and that her conduct had nothing to do with a potential federal offense.

Section 1512(b)(3) states that "whoever knowingly uses intimidation, threatens, or corruptly persuades another person . . . with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense" shall be subject to criminal sanctions.  In order to establish a violation of section 1512(b)(3), the government was required to show that there was a possibility or likelihood Mr. Mohamadi's alleged misleading conduct toward Ms. Inge would be communicated to a federal law enforcement officer.  *See United States v. Perry*, 335 F.3d 316, 320-21 (4th Cir. 2003); *United States v. Harris*, 498 F.3d 278, 283 (4th Cir. 2007). In *Harris*, the appellant was convicted of violating an analogous provision of the same statute – *i.e.*, using physical force with the intent to hinder, delay, or prevent communication to a federal law enforcement officer of information relating to the commission or possible commission of a federal offense, in violation of 18 U.S.C. § 1512(a)(2)(C).  The evidence presented at trial showed that the appellant was part of a gang that had firebombed a woman's house in retaliation for her speaking to Baltimore City Police Department officials regarding drug trafficking in her neighborhood.  498 F.3d at 281-82.  Significantly, the evidence at trial also showed that, at the time of the firebombing, the Baltimore City Police were working closely with the federal Drug Enforcement Administration (DEA) regarding drug trafficking activities in the area.  *Id.* at 282. On appeal, the Fourth Circuit held that this evidence was sufficient to support a conviction under

14

section 1512(a)(2)(C) because the DEA was actively working with the Baltimore City Police in investigating similar crimes in the area and the appellant sought to suppress communication that "actually relate[d] to the commission or possible commission of a federal offense." *Id.* at 284-86.

Here, in contrast, the evidence was insufficient to show that Mr. Mohamadi was attempting to suppress communication relating to the possible commission of a federal offense. Ms. Inge testified that Mr. Mohamadi's sister – *not* Mr. Mohmadi – met her at a bar prior to the state trial and showed her a picture of a man named "Ahmad." Ms. Inge further testified that Mr. Mohamadi's sister – *not* Mr. Mohamadi – told her to lie at the state trial and say that she was with Ahmad in May, 2007. Ms. Inge also testified that she did not tell the truth at the state trial and, instead of telling the truth, she testified as to what Mr. Mohamadi's sister told her to say.

Thus, even viewing the evidence in the light most favorable to the government, this testimony established (at most) that Mr. Mohamadi's sister attempted to influence Ms. Inge's testimony. Count 9, however, charges Mr. Mohamadi, not his sister, with this conduct. Because the government's evidence was insufficient to show that Mr. Mohamadi committed the offense described in Count 9, the Court should grant a new trial as to this Count in the interest of justice.

Additionally, a new trial on Count 9 is warranted because the government also failed to present evidence that Mr. Mohamadi's sister (or Mr. Mohamadi) was attempting to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense." 18 U.S.C. § 1512(b)(3). At most, the evidence showed that Mr. Mohamadi's sister was attempting to influence Ms. Inge's testimony regarding who she was dating in May, 2007. The evidence did

15

*not* show that Mr. Mohamadi's sister (or Mr. Mohamadi) asked Ms. Inge to make any statements related to the robbery of Mr. Haile or any other activity that could have qualified as a federal offense for purposes of establishing a violation of section 1512(b)(3).

The evidence also did not show that any federal authorities were actively working with the Alexandria Police Department at the time of the state trial in a manner analogous to the DEA's activities in *Harris*. Ms. Inge testified on cross-examination that she did not speak to ATF Special Agent Castro until *after* the state trial. Agent Castro testified that he observed some of the state trial, but there was no evidence presented showing that he was investigating the robbery that was at issue in the state trial. Unlike the evidence it presented in *Harris*, the government in this case failed to show that the ATF or any other federal agency had an ongoing interest in alleged criminal conduct at issue (small-scale robberies in the City of Alexandria) or that the robbery of Mr. Haile (which was the only robbery at issue in the state trial) was the kind of activity that normally could be the focus of a federal investigation.

In total, with respect to Count 9 the government failed to present evidence showing that Mr. Mohamadi engaged in conduct in an effort to thwart communication or potential communication to a federal law enforcement officer regarding an actual or potential federal offense. At best, the government's evidence showed merely that Mr. Mohamadi's sister attempted to influence Ms. Inge's testimony about who she dated in May, 2007. This is not enough to support a conviction on Count 9 and, therefore, in the interest of justice the Court should order a new trial as to Count 9.

## **CONCLUSION**

For the reasons set forth above, Mr. Mohamadi respectfully submits that the Court enter a judgment of acquittal on Counts 1, 3, and 5 and a new trial on Counts 2, 4, and 9. Alternatively, Mr. Mohamadi requests that the Court grant a new trial on Counts 1 through 5 and 9.

Respectfully submitted,
MIRWAIS MOHAMADI

By Counsel,
Michael S. Nachmanoff,
Federal Public Defender

_____/s/_____
Michael S. Nachmanoff
Virginia Bar Number 39180
Attorney for the defendant
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600- 0860 (telephone)
(703) 600-0880 (fax)
Michael_Nachmanoff@fd.org (e-mail)

Whitney E.C. Minter
Virginia Bar Number 47193
Attorney for the defendant
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600- 0855 (telephone)
(703) 600-0880 (fax)
Whitney_Minter@fd.org (e-mail)

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2010, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald L. Walutes, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria , Virginia 22314
(703) 299-3700
Ron.Walutes@usdoj.gov

Michael Ben'ary, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria , Virginia 22314
(703) 299-3700
michael.ben'ary2@usdoj.gov

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____
Michael S. Nachmanoff, Esq.
Attorney for the defendant
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0860 (telephone)
(703) 600-0880 (fax)
Michael_Nachmanoff@fd.org (e-mail)