**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:09 CR 179** |
| | ) | **The Hon. Liam O'Grady** |
| **MIRWAIS MOHAMADI,** | ) | **Sentencing Date: June 18, 2010** |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S POSITION WITH REGARD TO SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a), Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("the Guidelines" or "U.S.S.G."), and this Court's Policy Regarding Procedures to be Followed in Sentencing, the defendant, Mr. Mirwais Mohamadi, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case and submits the following corrections, objections, and argument.[1]

## PRELIMINARY STATEMENT

Mr. Mohamadi maintains that he is innocent. He is not guilty of the charges for which he has been convicted. Mr. Mohamadi also recognizes, however, that at this phase of the case the Court must impose a sentence. Pursuant to 18 U.S.C. § 3553(a), this Court is required to impose a sentence that is "sufficient, *but not greater than necessary*," to promote the purposes of sentencing set forth in § 3553(a)(2) (emphasis added).

---

[1] By making this submission to the Court, we do not concede the Post-Trial Motion For Judgment of Acquittal Or, In The Alternative, For A New Trial, which we filed on Mr. Mohamadi's behalf on April 7, 2010 (docket no. 163). In addition, several post-trial *pro se* motions filed by Mr. Mohamadi remain pending. Prior to the sentencing hearing, we will file a statement summarizing the motions that remain pending.

In this case, the advisory Guidelines and relevant statutory mandatory minimums would result in a sentence that substantially exceeds what is necessary to promote the purposes of sentencing and would be grossly disproportionate to any harm Mr. Mohamadi caused. The mandatory minimum sentences alone, depending on how the Court interprets the relevant statutes, could result in a minimum sentence of 25 or 32 years. If the Court imposes any significant sentence *consecutive to* a 25 or 32 year mandatory minimum sentence, Mr. Mohamadi could spend the rest of his life in jail, as he is now 28 years old. A sentence that would place Mr. Mohamadi in prison for most, if not all, of the rest of his life is unwarranted given the facts of this case. No victim was physically harmed.[2] The money stolen during the two robberies was relatively small, consisting of approximately two thousand dollars. The robberies were also limited in duration. The offenses that the jury determined Mr. Mohamadi committed while in prison did not result in physical or monetary harm to any person. Given the limited nature of the total harm, a sentence of 25 years, 32 years, or significantly more than 32 years would far exceed what is deserved in this case.

For the reasons discussed below, the Court is not required to impose a 25 or 32 year mandatory minimum sentence. The mandatory minimum sentences referenced in the PSR are not controlling for several reasons. With respect to Count 3, for example, the plain language of the relevant statute (18 U.S.C. § 924(c)(1)(A)) does not require a 7 year mandatory minimum *consecutive* sentence. Instead, the plain language of § 924(c)(1)(A) allows the Court to impose a sentence on Count 3 that runs *concurrently* with any greater mandatory minimum sentence the

---

[2] We reiterate that Mr. Mohamadi maintains his innocence and rejects the facts as set forth in the PSR. Solely for the sake of the argument below, however, we will make reference to the allegations of the government and discuss those allegations as if they were fact.

Court imposes, such as the 25 year mandatory minimum sentence the Court may impose on

Count 4 pursuant to § 924(c)(1)(C)(i).  Even that 25 year mandatory minimum sentence,

however, is not binding on the Court.  As detailed herein, the 25 year mandatory minimum

sentence set forth at § 924(c)(1)(C)(i) and all other mandatory minimum sentences at issue in this

case should not be applied because they are unconstitutional under the Sixth and Eighth

Amendments.

Instead of imposing an unconstitutional mandatory minimum sentence of 25 or 32 years,

the Court should impose a sentence that is proportionate to the actual harm caused and is

consistent with the purposes of sentencing set forth in § 3553(a)(2).  If the Court were to impose

such a sentence, Mr. Mohamadi respectfully submits the sentence should be no greater than 120

months.  In total, and for the reasons detailed herein, Mr. Mohamadi respectfully submits that the

following analysis should govern the Court's sentencing decision:

1.      The Court should impose a sentence that is no greater than 120 months, as such a

        sentence is "sufficient but not greater than necessary" to satisfy the statutory purposes of

        sentencing.  *See* 18 U.S.C. § 3553(a)(2).  A 120 month sentence would also be

        proportional to the harm that was caused by the alleged conduct.  The Court may impose

        such a sentence because it is not bound by the statutory mandatory minimum sentences,

        as those mandatory minimum sentences are unconstitutional for the reasons detailed

        herein.

2.      Alternatively, if the Court determines it is bound to impose mandatory minimum

        sentences, the total sentence imposed should not be greater than 25 years and 1 day.

        Under this analysis, the Court should impose a 25 year mandatory minimum sentence

based on the "second" 924(c) offense (Count 4).  *See* 18 U.S.C. § 924(c)(1)(C).  The Court would not have to apply a *consecutive* 7 year sentence for the "first" 924(c) offense (Count 3).  Instead, under the plain language of § 924(c)(1)(A), the Court could impose a sentence on Count 3 to run concurrently with the 25 year mandatory minimum sentence imposed on Count 4.  Also, the mandatory minimum 15 year sentence required to be imposed on Count 5 pursuant to 18 U.S.C. § 924(e) should be imposed to run concurrently with the 25 year mandatory minimum sentence imposed on Count 4.[3]  For the other offenses, the Court should impose no more than 1 day because 25 years would be more than sufficient to account for the offense conduct and satisfy the statutory purposes of sentencing.  If such a sentence was imposed, Mr. Mohamadi would spend the majority of the rest of his life in prison.  Assuming he outlived the 25 year and 1 day term of imprisonment, he would be well into middle age by the time of his release.  He would thus be incapacitated for much of his adult life and would be less likely to recidivate, given his age at the time he would be released.  Any longer term of imprisonment would likely amount to a life sentence for conduct that resulted in no permanent harm other than the theft of approximately two thousand dollars.

3.      Alternatively, if the Court determines that under § 924(c)(1)(A) it must impose a 7 year sentence on Count 3 to run *consecutively* to the 25 year sentence imposed on Count 4, the

---

[3] Assuming the Court determines a 15 year mandatory minimum sentence is required under 18 U.S.C. § 924(e), the plain language of that statute allows that sentence to run concurrently with any other sentence imposed.  *Cf. United States v. Crawford*, 175 Fed. Appx. 594, 595 (4th Cir. 2006) (affirming sentence in which 15 year mandatory minimum sentence under 924(e) was imposed concurrently with other sentence).

total sentence imposed should not be greater than 32 years and 1 day. As with the previously-discussed sentencing alternative, under this approach the mandatory minimum 15 year sentence required to be imposed on Count 5 could run concurrently with the 25 year sentence imposed on Count 4. Even if Mr. Mohamadi earned good time credit while incarcerated, a 32 year and 1 day sentence would mean that, at the earliest, he would be approximately 56 years old when he is released. Also as with the previously-discussed alternative, a 32 year and 1 day sentence would be more than sufficient to satisfy the statutory purposes of sentencing.

4.  Alternatively, if the Court determines that a sentence of *more than* 32 years and 1 day is required, any such sentence should not be significantly greater than 32 years and 1 day. A sentence significantly greater than 32 years and 1 day would not be warranted, given Mr. Mohamadi's current age, the limited impact of the alleged offenses, and the need for the total sentence imposed to be proportionate to the offenses. A sentence significantly greater than 32 years and 1 day would be grossly inconsistent with the harm caused in this case. Moreover, of all the options before the Court, a sentence that is significantly greater than 32 years is the most likely to result in a life sentence – a result that would be grossly disproportionate to the harm caused by the offense conduct.

## **FACTUAL CORRECTIONS**

Mr. Mohamadi objects to many of the factual assertions in the PSR relating to the offense conduct, his criminal history and his conduct while imprisoned in various detention facilities. Each objection category is addressed in turn.

First, Mr. Mohamadi denies all facts in the PSR related to the offense conduct.  *See* PSR

¶¶ 21-51.  The facts describing the offense conduct do not accurately represent that Mr.

Mohamadi is innocent of the offenses at issue, as asserted by the defendant throughout his case.

Second, Mr. Mohamadi disputes all statements contained in the description of his pretrial

detention behavior.  *See* PSR ¶¶ 7-18.  The statements in these paragraphs are based on reports

from the Alexandria Adult Detention Center ("ADC") which have not been subject to any

verification or due process.  They do not accurately reflect the factual circumstances of incidents

that occurred while Mr. Mohamadi was detained pending trial.  Mr. Mohamadi incorporates by

reference his specific disputes regarding these paragraphs, which are noted in the PSR.

Third, Mr. Mohamadi disputes the characterization of his criminal record.  Mr.

Mohamadi does not dispute that he has been convicted of the offenses identified in the PSR.

However, he disputes that many of the statements contained in the PSR concerning specific

charges (including many charges that were ultimately nolle prossed).  Specifically, Mr.

Mohamadi disputes statements made in paragraphs 60, 63, 83, 84, 85, 86, and 87.  As with the

descriptions of his conduct while in detention facilities, these paragraphs contain untested

allegations based solely on government sources and do not accurately reflect the events they

purport to describe.  Mr. Mohamadi incorporates by reference his specific disputes regarding

these paragraphs, which are also noted in the PSR.

## <u>OBJECTIONS TO THE SENTENCING GUIDELINES COMPUTATIONS</u>

Mr. Mohamadi has several objections to the Guideline computations.  Each specific

objection is addressed in turn.

I.      **THERE IS NO BASIS FOR AN OBSTRUCTION OF JUSTICE ENHANCEMENT BECAUSE MR. MOHAMADI DID NOT PROVIDE FALSE TESTIMONY AND EXERCISED HIS RIGHT TO GO TO TRIAL.**

Mr. Mohamadi objects to the imposition of the obstruction of justice adjustment under U.S.S.G. § 3C1.1. The PSR asserts that Mr. Mohamadi provided false testimony and cites this testimony as a basis for applying the obstruction of justice enhancement. Specifically, the PSR claims Mr. Mohamadi did not testify truthfully regarding whether he was employed at Eastern Automotive ("Eastern") on the night of the robberies. *See* PSR ¶ 57. Defense counsel, however, did not ask Mr. Mohamadi any questions regarding his employment at Eastern. The government, over defense counsel's objection, asked Mr. Mohamadi about his testimony during his *state trial* regarding his employment at Eastern. The government, again over defense counsel objection, then called an Eastern corporate representative who produced records regarding Mr. Mohamadi's dates of employment. These records showed that Mr. Mohamadi had been terminated prior to the robberies, which contradicted Mr. Mohamadi's *state trial* testimony. The Eastern representative, however, did not and could not contradict Mr. Mohamadi's testimony in this case because Mr. Mohamadi did not offer any testimony regarding his employment at Eastern. Given that he did not provide any such testimony *in this case*, there is no basis to conclude that his testimony *in this case* constituted obstruction for purposes of U.S.S.G. § 3C1.1.

Alternatively, even if the Court believes there was a discrepancy between Mr. Mohamadi's testimony regarding the dates of his employment and any other evidence provided at trial, it should take into account that this discrepancy could have easily been the result of confusion, which would not be a basis for applying the obstruction enhancement. *See* U.S.S.G. § 3C1.1, cmt. n. 2 (noting that, in applying the obstruction of justice adjustment, the Court

should consider "that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice").

The PSR also cites the fact that Mr. Mohamadi denied having committed the offenses as a basis for applying the obstruction of justice adjustment. It appears that the PSR is applying the obstruction enhancement simply because the jury returned a verdict that was inconsistent with Mr. Mohamadi's denial of guilt. This is also not a valid basis for applying the adjustment. The application notes to this section make clear that the adjustment is not to be applied because Mr. Mohamadi exercised his constitutional right to go to trial and further exercised his right to testify. *See* U.S.S.G. § 3C1.1, note 2 ("This provision is not intended to punish a defendant for the exercise of a constitutional right."); *see also* U.S. Const. amend. VI (providing right to jury trial). In sum, the Court should not impose an obstruction enhancement in this case.

## II. COUNT 10 IS NOT SUBJECT TO AN ENHANCEMENT UNDER U.S.S.G. § 2J1.2(b)(3)(C) BECAUSE THE CONDUCT ALLEGED IN COUNT 10 DID NOT "RESULT IN" "SUBSTANTIAL" INTERFERENCE WITH THE ADMINISTRATION OF JUSTICE.

The PSR proposes that the Court apply an enhancement on Count 10 under U.S.S.G. § 2J1.2(b)(3)(C), which would raise the offense level on this Count by 2 points. *See* PSR, Worksheet A. An offense level increase is appropriate under U.S.S.G.§ 2J1.2(b)(3)(C) only if the defendant's conduct "resulted in" substantial interference with the administration of justice. There was no such result with respect to the conduct at issue in Count 10. Count 10 alleged that Mr. Mohamadi instructed Ms. Inge to refuse to testify before the grand jury and, if she was immunized and compelled to testify, to testify falsely. Assuming, solely for the purposes of

sentencing that Mr. Mohamadi provided such instructions to Ms. Inge, there is no basis for applying the § 2J1.2(b)(2) offense level increase.  Section 2J1.2(b)(2) applies only in cases where the defendants's conduct "*resulted* in *substantial* interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2) (emphasis added).

Here, Mr. Mohamadi's conduct did not "result in" substantial interference with the administration of justice because Ms. Inge did not follow his instructions.  *See United States v. McSherry*, 226 F.3d 153, 157-59 (2d Cir. 2000).  In *McSherry*, the defendant was convicted for obstruction of justice based on evidence that he provided false grand jury testimony regarding his role as a commissioner on a state parole board.  *Id.* at 154.  At sentencing, the District Court imposed a three-level enhancement under § 2J1.2(b)(2).  *Id.* at 157.  The District Court reasoned that, for purposes of § 2J1.2(b)(2), the false testimony "resulted in" substantial impairment of the administration of justice because the false testimony diminished the integrity of the parole release proceedings and generally undermined the confidence that inmates and crime victims had in the proceedings.  *Id.*  The Second Circuit reversed, holding that § 2J1.2(b)(2) required a causal nexus between the defendant's conduct and the impact on the administration of justice.  *Id.* at 157-59.  According to the Second Circuit, § 2J1.2(b)(2)'s "result in" requirement meant that general, societal harm was an insufficient basis on which to apply the enhancement.  *Id.*

As in *McSherry*, there is no evidence that Mr. Mohamadi's conversations with Ms. Inge directly "resulted in" her engaging in conduct that substantially impaired the administration of justice.  Indeed, the evidence presented at trial showed that Mr. Mohamadi's conduct had no specific, causal impact on the administration of justice. According to her testimony, Ms. Inge completely ignored those instructions.  She provided what she believed was truthful testimony at

the grand jury, her testimony was not influenced by Mr. Mohamadi, she did not demand immunization, and she disclosed Mr. Mohamadi's instructions to the government.  Thus, Mr. Mohamadi's alleged efforts failed and there was no "resulting" interference with the administration of justice of any kind.  Application of an enhancement under § 2J1.2(b)(2) is therefore inappropriate.

Alternatively, even if the Court believes that Mr. Mohamadi's conduct had *some* impact on the administration of justice, that impact was not "substantial."  The application notes to § 2J1.2(b)(2) provide examples of what kind of result is considered "substantial."  A result is "substantial" if, for example, "an indictment, verdict, or any judicial determination" is made based on "false testimony."  *See* U.S.S.G. § 2J1.2(b)(2), cmt. n. 1.  Here, there was no such "substantial" result because Ms. Inge testified truthfully at the grand jury and the resulting indictment was not influenced in any way by the prior communication she had with Mr. Mohamadi.  In basic terms, Ms. Inge's decision to ignore Mr. Mohamadi's instructions prevented them from "resulting in substantial interference with administration of justice."  The Court should therefore not apply the § 2J1.2(b)(2) enhancement to Count 10.

## PROCEDURAL AND LEGAL BACKGROUND

### I.     THE MAXIMUM AND MINIMUM SENTENCES.

On March 18, 2010, the jury returned a guilty verdict on Counts 1, 2, 3, 4, 7, 8, 9, and 10. On March 25, 2010, the Court convicted Mr. Mohamadi on Count 5.

The maximum term of imprisonment that may be imposed for each Hobbs Act robbery alleged in Counts 1 and 2 is 20 years.  *See* 18 U.S.C. § 1951(a).

Counts 3 and 4 alleged Mr. Mohamadi used a firearm during a crime of violence, violations of 18 U.S.C. § 924(c)(1)(A)(ii).  The PSR interprets 18 U.S.C. § 924(c) as requiring that the Court impose a mandatory minimum sentence of 7 years on Count 3 and 25 years on Count 4 and that those sentences run consecutively to any other sentence imposed.  For the reasons set forth below, Mr. Mohamadi submits that the plain language of section 924(c) does *not* require that the Court impose a mandatory minimum consecutive sentence of 7 years on Count 3.  As also set forth below, Mr. Mohamadi submits that any mandatory minimum sentence under section 924(c) is unconstitutional and should not be applied.

Count 5 alleged Mr. Mohamadi possessed a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  The maximum term of imprisonment that the Court may impose on Count 5 is 10 years, *see* 18 U.S.C. § 922(g)(1), unless this Court determines that Mr. Mohamadi is subject to a mandatory minimum sentence of 15 years under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  For the reasons set forth below, Mr. Mohamadi submits that this minimum sentence is unconstitutional and should not be applied.

Count 7 alleges Mr. Mohamadi committed the offense of solicitation to commit murder for hire, in violation of 18 U.S.C. § 373.  The maximum term of imprisonment the Court may impose on Count 7 is 5 years.  *See* 18 U.S.C. § 373; *see also* 18 U.S.C. § 1958.  Count 8 alleged Mr. Mohamadi committed murder for hire, in violation of 18 U.S.C. § 1958.  The maximum term of imprisonment the Court may impose on Count 8 is 10 years.  *See* 18 U.S.C. § 1958.  Counts 9 and 10 alleged Mr. Mohamadi committed, on separate occasions, the offense of witness tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(b)(3).  The maximum term of

imprisonment the Court may impose for each of these offenses is 20 years.  *See* 18 U.S.C. § 1512(b).

## II.     THE GUIDELINES ARE ADVISORY.

After *Gall v. United States*, 128 S. Ct. 586 (2007), the Guidelines are truly advisory. Rejecting the government's argument that sentences significantly outside the advisory Guidelines range should be subject to exacting scrutiny on appeal, the Supreme Court in *Gall* stressed that "the Guidelines are only one of the factors to be considered when imposing sentence . . . ." *Id*. at 602.  As the Court explained, the advisory Guidelines sentencing range is only "the starting point and the initial benchmark" from which sentencing courts should begin to make their sentencing determinations.  *Id*. at 596. In addition to the advisory Guidelines range, courts must consider the six other (co-equal) sentencing factors enumerated in 18 U.S.C. § 3553(a) in determining the appropriate sentence in each case.  *See United States v. Booker*, 543 U.S. 220, 259-60 (2005).

The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth therein.  Upon consideration of the § 3553(a) factors, and the "sufficient but not greater than necessary" requirement, a sentencing court may find that a case falls outside the "heartland" contemplated by the Guidelines, or that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007).  While the district court must begin its analysis by correctly calculating the advisory Guidelines range, the district court is then free, in light of the other statutory sentencing factors, to impose an entirely different sentence.  Under *Rita*, a

sentencing court is free simply to disagree, based on the Section 3553(a) factors, with the Guidelines' "rough approximation" of the appropriate sentence for any given case. *Id*. at 350.

There is no presumption that the advisory Guidelines range is the minimally-sufficient sentence needed to satisfy Section 3553(a). *See Gall*, 128 S. Ct. at 596-97 (stating that the sentencing court "may not presume that the Guidelines range is reasonable [but must] make an individualized assessment based on the facts presented") (internal citation omitted); *see also Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007) (stating that the Guidelines are simply an advisory tool to be considered alongside other statutory considerations spelled out in 18 U.S.C. § 3553(a)). Indeed, whatever sentence a district court imposes after appropriately considering the statutory sentencing factors, "whether inside, just outside, or significantly outside the Guidelines range," must be reviewed by the Court of Appeals under a "deferential abuse-of-discretion standard." *Gall*, 128 S. Ct. at 591 (reversing Court of Appeals and reinstating probationary sentence where advisory Guidelines range was 30-37 months).

Finally, in two summary reversals last year, the Supreme Court expressed in no uncertain terms that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of an appropriate sentence based upon consideration of the Section 3553(a) factors. *See Nelson v. United States*, 129 S. Ct. 890 (2009) (per curiam); *Spears v. United States*, 129 S. Ct. 840 (2009) (per curiam). As the Court stated in Nelson, "[o]ur cases do not allow a sentencing court to presume that a sentence within the Guidelines is reasonable." 129 S. Ct. at 892. "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Id*. (emphasis in original).

## SENTENCING ARGUMENT

I.   **A SENTENCE OF NO MORE THAN 120 MONTHS IS SUFFICIENT TO SATISFY THE STATUTORY PURPOSES OF SENTENCING UNDER 18 U.S.C. § 3553(a).**

Mr. Mohamadi respectfully submits that no more than a 120 month sentence is sufficient to promote the purposes of sentencing set forth in 18 U.S.C. § 3553.  Section 3553(a) requires that the Court consider a range of factors, including (a) the nature and circumstances of the offenses, (b) the history and characteristics of the defendant, and (c) the four purposes of sentencing set forth in section 3553(a)(2).  These factors are discussed in turn

A.   **The Nature And Circumstances Of The Offenses.**

Mr. Mohamadi does not dispute that the indictment alleged serious offenses. Mr. Mohamadi respectfully submits, however, that the impact of these offenses was relatively limited.  For example, even assuming, solely for purposes of this argument, that Mr. Mohamadi committed the robberies alleged in the indictment, they were relatively minor in duration and in the amount of money stolen.  Mr. Gebru Haile and Ms. Kimberly Riley testified that the robber took a relatively small amount of money.  Indeed, the combined amount of money stolen during both robberies was no more than approximately two thousand dollars.  Moreover, there was no permanent harm to either victim's business.  Both Mr. Haile and Ms. Riley testified that they continued to operate their businesses.  Thus, the ultimate impact of the robberies was relatively small.

The prison-related offenses (Counts 7 - 10) likewise had a limited impact.  With respect to Counts 7 and 8, the inmates that Mr. Mohamadi allegedly spoke with reported their conversations directly to the authorities.  Mr. Mohamadi disputes the jury's determination that he

intended to hire these inmates to commit murder.  However, even if the alleged conversations were intended to induce these individuals to murder Mr. Haile, it is significant that no murder actually occurred.  The only outcome of the conversations was the inmates reported the jailhouse talk to authorities.  Similarly, it is also significant that, with respect to the offense conduct alleged in Count 10, the communication at issue did not result in any actual harm.  Ms. Inge reported to authorities that Mr. Mohamadi contacted her prior to her testimony before the grand jury.  The evidence at trial showed that Ms. Inge did not follow Mr. Mohamadi's alleged instructions regarding her grand jury testimony.  Thus, like the jailhouse informant statements involved in Counts 7 and 8, ultimately the conduct alleged in Count 10 had no impact.

**B.     The History And Characteristics Of The Defendant.**

There is more to Mr. Mohamadi than what the Court witnessed at trial.  He is a caring and loyal member of his family.   Mr. Mohamadi has played a positive and supportive role in his family.  For example, Mr. Mohamadi encouraged his sister, Ms. Madena Mohamadi, to read as a young child and, later in life, helped her with her college applications.  Mr. Mohamadi's youngest sister, Z.M. was encouraged to participate in sports and complete her school work by her older brother. Even while he has been incarcerated and isolated rom his family, Mr. Mohamadi has had a positive impact on her life: she is an honors student and attributes her success to Mr. Mohamadi's mentoring and his encouragement that she work hard in school.

The Court should also take into account the circumstances of Mr. Mohamadi's entire life, not simply the alleged conduct that brings him before the Court.  As noted in the PSR, Mr. Mohamadi came to this country under difficult circumstances.  He was born in 1981 in Kabul, Afghanistan.  PSR ¶ 93.  He and his family fled communist-controlled Afghanistan in 1985,

temporarily resided in Pakistan, and arrived in the United States in 1987 when Mr. Mohamadi was 6 years old.  Mr. Mohamadi thus grew up in an immigrant family and had to adjust to life in a new country.  Significantly, during his adolescence Mr. Mohamadi was beaten by family members on a regular basis, often as punishment for bad grades or getting into trouble at school.  PSR ¶ 94.  These beatings are detailed in the PSR and confirmed by Mr. Mohamadi's cousin, Saylia Mohamadi.  Ms. Saylia Mohamadi asserts that Mr. Mohamadi was beaten frequently as a child and that Mr. Mohamadi's uncle may have broken one of Mr. Mohamadi's arms or legs during one of the beatings.  She further believes these beatings impacted Mr. Mohamadi mentally and led him to make some terrible choices in life.

### C.    The Purposes Of Sentencing Would Be Satisfied By A Sentence Of 120 Months.

The basic mandate of § 3553(a) requires that district courts impose a sentence that is "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2): retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment"); deterrence; incapacitation ("to protect the public from further crimes"); and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment").

A 25 or 32 year mandatory minimum, or any greater sentence, would not be consistent with the purposes of sentencing set forth in § 3553(a)(2).  For example, with respect to the first 3553(a)(2) factor, Mr. Mohamadi submits that a sentence of 32 years would far exceed any notion of "just punishment."  Moreover, if the Court were to impose any significant term of imprisonment in addition to (and to run consecutive to) a 32 year mandatory minimum sentence, the Court's total sentence effectively would obliterate the fourth factor listed in § 3553(a)(2) –

rehabilitation.  A sentence of significantly more than 32 years likely would deny Mr. Mohamadi

any opportunity to reenter society, as he currently is 28 years old.  Thus, to the extent Mr.

Mohamadi receives services such as educational training or mental health treatment while in

prison, he would likely never be allowed to use this treatment in society.  In basic terms, a

lengthy sentence that exceeds the potential mandatory minimum 32 year sentence would ignore

the rehabilitative purpose of sentencing by effectively sending Mr. Mohamadi to prison for the

rest of his life.

In lieu of a 25 year, 32 year, or greater sentence, Mr. Mohamadi respectfully submits that

a sentence of 120 months would be "sufficient, but not greater than necessary," to comply with

the four purposes of sentencing set forth in § 3553(a)(2).  For several reasons, a sentence of 120

months is an appropriate sentence because it is proportional to the actual harm caused in this case

and provides sufficient but not excessive punishment.

First, the Court should consider Mr. Mohamadi's age at the time of the offense conduct,

his current age, and his age at the time he would be released if a 120 month sentence in imposed.

The robberies at issue in this case occurred in May 2007, when Mr. Mohamadi was 25 years old.

He is now 28 years old.  If the Court imposed a 120 month sentence and assuming Mr.

Mohamadi earned the *maximum* amount of good time credit while incarcerated, he would be 37

at the time he is released.  If the Court imposes a sentence of 25 years, 32 years or more, Mr.

Mohamadi would be well into his 50s or even 60s at the time of his release from imprisonment.

As the Sentencing Commission has recognized and proven with its own data, "Recidivism rates

decline relatively consistently as age increases."  *See Measuring Recidivism: The Criminal*

*History Computation of the Federal Sentencing Guidelines*, United States Sentencing Commission, May 2004, at 12.

Second, a 120 month sentence would have a deterrent effect consistent with § 3553(a)(2)(B) because it would be far more substantial than any sentence Mr. Mohamadi has ever received. *See United States v. Mishoe*, 241 F.3d 214, 220 (2nd Cir. 2001). In *Mishoe*, the Second Circuit recognized that a large disparity between a defendant's prior sentences and potential sentence provides a deterrent effect that is not accounted for by the Guidelines. *Id.* at 220 (considering a criminal history category reduction on the basis that it overstated the seriousness of the offense and noting "if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect"). In this case, a sentence of 25 or 32 years or more would "provide[] a deterrent effect so in excess of what is required as to constitute a mitigating circumstance present to a degree not adequately considered by the [Sentencing] Commission." *Id.* (citation and internal quotation marks omitted).

Third, the Court should also take into account that Mr. Mohamadi has a relatively limited criminal record – which means that the events of this case and a 120 month sentence will have a lasting impact on him. As detailed in Worksheet C of the PSR, most of Mr. Mohamadi's criminal history relates to conduct that occurred when he was a minor. Indeed, a close review of the PSR shows that his criminal history category ("CHC") classification – *i.e.*, Category V – substantially over-represents the seriousness of his criminal history.[4] Most of his criminal history

_____

[4] Mr. Mohamadi barely meets the threshold for CHC V. *See* PSR, Worksheet C. According to the PSR, his criminal record results in a calculation of 10 criminal history points, which is the minimal amount needed to fall within CHC V. If Mr. Mohamadi had just one less

-18-

points relate to his November 20, 1998, convictions for robbery, attempted robbery, and grand larceny. *See* PSR ¶ 60 *et seq*. All of these convictions resulted from conduct during a two-week period when Mr. Mohamadi was a minor. PSR ¶¶ 68 - 70. The offenses involved robbery of $300 from a Domino's Pizza Restaurant, attempts to rob three other establishments, and the robbery of a vehicle. *Id*. Mr. Mohamadi pled guilty to these offenses and, although they occurred when he was 16, he was sentenced as an adult in Fairfax County Circuit Court. *Id*. The only other adult conviction on his record is a March 12, 2001, conviction for assault and battery, for which he was sentenced to 12 months in jail. PSR ¶ 71. The other conduct that appears on his criminal history report consists of juvenile adjudications, probation violations, and two driving-related offenses. PSR ¶ 60 *et seq*.

Thus, the circumstances of the present case and the potential sentences Mr. Mohamadi is facing are far more significant than his prior experience in the criminal justice system, most of which involved conduct that occurred when he was a minor. A 120 month sentence in this case, imposed at the age of 28, would have a far more lasting impact on Mr. Mohamadi than his prior experiences with the criminal justice system.

## II.    THE COURT IS NOT REQUIRED TO IMPOSE A 7 YEAR MINIMUM *CONSECUTIVE* SENTENCE ON COUNT 3 BECAUSE MR. MOHAMADI IS SUBJECT TO A GREATER MINIMUM SENTENCE.

---

point, he would be classified as CHC IV. On of his criminal history points is a "recency point," which was added pursuant to U.S.S.G. §§ 4A1.1(e) and 4A1.2. The United States Sentencing Commission has proposed eliminating recency points and, barring Congressional intervention, the Commission's proposal will take effect on November 1, 2010. The proposed elimination of recency points is further evidence that Mr. Mohamadi's classification as CHC V overstates the seriousness of his criminal record, as he would fall within CHC IV without this point. The Court can take this into consideration when evaluating the § 3553(a) factors.

The PSR states that on Count 3 the Court must impose a mandatory minimum seven year sentence, to run consecutive to any other sentence imposed.  We submit the PSR is incorrect because, by the plain terms of 18 U.S.C. § 924(c)(1)(A), the Court is not required to impose such a sentence.  Count 3 alleged that Mr. Mohamadi used and brandished a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Section 924(c)(1)(A) requires that the Court impose a mandatory minimum, consecutive sentence of 7 years on a defendant who brandished a firearm in violation of the statute, "*[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law.*" 18 U.S.C. § 924(c)(1)(A) (emphasis added).

Thus, under the plain language of section 924(c)(1)(A)'s "except clause", the Court is not required to impose a mandatory minimum 7 year sentence on Count 3 because Mr. Mohamadi is subject to a "greater minimum sentence" under "this subsection" (*i.e.*, 924(c)) *and* another provision of law.  Specifically, Mr. Mohamadi is subject to a mandatory minimum 25 year sentence under section 924(c)(1)(C)(i) for the conviction he received on Count 4.  Mr. Mohamadi is also subject to a mandatory minimum 15 year sentence under 924(e), as his criminal record qualifies him as an "armed career criminal" under this provision.

Assuming the Court applies either or both of these mandatory minimum sentences, 924(c)(1)(A)'s "except clause" relieves the Court from also having to impose a mandatory minimum 7 year sentence on Count 3.  *See United States v. Whitley*, 529 F.3d 150 (2nd Cir. 2008) (holding that the plain language of § 924(c)(1)(A)'s "except" clause to not require the lower mandatory minimum penalty provided in § 924(c)(1) where a greater minimum sentence is provided by any other provision of law).  *But see United States v. Studifin*, 240 F.3d 415 (4th Cir.

-20-

2001).  The exemption language relieves the sentencing court from having to apply the 7 year sentence *consecutively* to any other sentence (or, in the words of the statute, it relieves the sentencing court from having to apply the 7 year sentence "in addition to" the punishment provided for the underlying crime of violence).  The exception language, however, does not relieve the Court from having to impose a 7 year sentence.  Instead, it provides the Court with discretion to impose the 7 year sentence *concurrently* with whatever "greater minimum sentence is otherwise provided by this subsection or any other provision of law" – *i.e.*, the minimum sentences that may be required under 924(c)(1)(C)(i) and 924(e).

Mr. Mohamadi acknowledges that the Fourth Circuit has not interpreted the plain language of the "except clause" in this manner.  *See Studifin*, 240 F.3d 415; *United States v. Wheeler*, 329 Fed. Appx. 481 (4th Cir. 2009).  In *Studifin*, the Fourth Circuit interpreted the "except clause" as merely linking the prefatory language in (c)(1)(A) to the other subdivisions and as reserving the possibility that another statute or provision might impose a greater minimum consecutive sentence.  240 F.3d at 423.  In reaching this interpretation, the Fourth Circuit rejected the appellant's argument that the "except clause" *prohibited* the Court from imposing any sentence for a 924(c) violation when the defendant is subject to a greater mandatory minimum for the same offense.  *Id.* at 421.  Thus, the *Studifin* Court was not presented with the interpretation offered here – *i.e.*, that "except clause" allows a sentence to be imposed on Count 3, albeit one that runs concurrently with other, greater sentences.  Nevertheless, it appears the *Studifin* decision forecloses this interpretation, as the Fourth Circuit narrowly interpreted the exception language in its decision.

Mr. Mohamadi submits that the *Studifin* decision is inconsistent with the plain language of the statute and should be overturned.  Mr. Mohamadi also notes that there are two cases pending before the Supreme Court relating to this very issue.  *See United States v. Abbott*, 574 F.3d 203, *cert. granted*, 130 S.Ct. 1284 (Jan. 25, 2010) (No. 09-479); *United States v. Gould*, 329 Fed. Appx. 569, *cert. granted*, 130 S.Ct. 1283 (Jan. 25, 2010) (No. 09-7073).  The fact that the cases addressing the interpretation of 924(c) with regard to this issue underscores the unsettled nature of the statute and the need for this Court and, ultimately, the Fourth Circuit, to reconsider *Studifin*.

## III.    MANDATORY MINIMUM SENTENCES ARE UNCONSTITUTIONAL AND SHOULD NOT BE APPLIED IN THIS CASE.

The Court should not apply any mandatory minimum sentences in this case, as they are unconstitutional under the Sixth and Eighth Amendments.  The applicability of each Amendment to the facts of this case is discussed below.

### A.    Mr. Mohamadi's Mandatory Minimum Sentences Are Grossly Disproportionate And Therefore Cruel and Unusual In Violation Of The Eighth Amendment.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  The United States Supreme Court has long held that there is a proportionality component to the Eighth Amendment's cruel and unusual punishment provision.  *Solem v. Helm*, 463 U.S. 277, 290, 284 (1983) (the Eighth Amendment prohibits "sentences that are disproportionate to the crime committed"); *Weems v. United States*, 217 U.S. 349, 367 (1910) ("it is a precept of justice that punishment for crime should be graduated and proportioned to offense").

-22-

Here, the mandatory minimum sentences are unconstitutional because the resulting 25 or 32 year sentence is grossly disproportionate to the offenses for which Mr. Mohamadi was convicted.  In conducting a proportionality analysis, this Court should consider "the relationship between the nature and number of offenses committed and the severity of the punishment inflicted upon the offender."  *Solem v. Helm*, 463 U.S. 277, 292-294 (1983).  As discussed above, the offenses at issue here, although serious, were also limited in their impact.  There was no physical harm to any victim.  There was minimal monetary harm to the victims.  Therefore, a 25 or 32 year mandatory minimum sentence would be grossly disproportionate and cannot be imposed consistent with the Eighth Amendment.

Mr. Mohamadi acknowledges that the Fourth Circuit has held that "proportionality review is not available for any sentence less than life imprisonment without the possibility of parole."  *United States v. Ming Hong*, 242 F.3d 528, 532 & n. 3 (4th Cir. 2001); *see also United States v. Bourque*, 157 Fed. Appx. 646, 650 (4th Cir. 2005) (same).  The Fourth Circuit's *per se* rule, however, is inconsistent with Supreme Court precedent governing review of sentences under the Eighth Amendment.  *See Helm*, 463 U.S. at 290-92 (identifying factors that should be considered in evaluating constitutionality of sentence, but not creating a *per se* rule that non-life sentences are not subject to review); *Graham v. Florida*, 560 U.S. ___ (2010) (holding that life imprisonment without the possibility of parole for juveniles for non-capital crimes violates the Eighth Amendment).  Mr. Mohamadi also acknowledges that the Supreme Court has held the Eight Amendment "forbids only extreme sentences that are grossly disproportionate to the crime."  *Ewing v. California*, 538 U.S. 11 (2003).  Mr. Mohamadi's potential mandatory minimum 25 or 32 year sentence would constitute such an "extreme" and "grossly

disproportionate" sentence, given the minimal nature of the harm caused by the offense conduct and the fact that either mandatory minimum sentence could send Mr. Mohamadi to prison for most, if not all, of the rest of his life.

**B.     Imposition Of A Mandatory Minimum 15 Year Sentence Under The Armed Career Criminal Act Would Violate Mr. Mohamadi's Sixth Amendment Right To Trial By Jury.**

The Sixth Amendment protects a defendant's right to trial by jury.  In *Apprendi v. New Jersey*, the United States Supreme Court held that the Eighth Amendment required juries to make factual determinations that increase a prison sentence beyond the statutory maximum.  530 U.S. 466, 490 (2000).  Five years later, in *United States v. Booker*, the Supreme Court declared mandatory Guideline sentences unconstitutional under the Sixth Amendment, if based on the sentencing judge's determination of a fact that was not found by the jury or admitted by a defendant. 543 U.S. 220, 245-46 (2005).

Here, the PSR proposes imposing a mandatory minimum sentence and increasing the applicable statutory maximum on Mr. Mohamadi based on facts that were not determined by a jury, and thus would violate his Sixth Amendment rights.[5]  Specifically, the PSR proposes imposing a 15 year mandatory minimum sentence on Mr. Mohamadi under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  Imposition of ACCA in this case would require the Court to find facts that were not presented to, or determined by, the jury.  The Court would have to determine that Mr. Mohamadi has three prior offenses that factually constitute "violent felonies" for purposes of section 924(e)(2)(B).  Thus, Mr. Mohamadi would be subject to

---

[5]   *But see Almendarez-Torres v. United States*, 523 U.S. 224 (1998)(holding that fact of prior conviction in Section 1326 prosecutions need not be stated in the indictment).

punishment based on facts that were never determined by the jury, in violation of his Sixth Amendment rights.

Mr. Mohamadi acknowledges that, in *Harris v. United States*, the Court upheld a provision of 18 U.S.C. § 924(c) that increased the mandatory-minimum sentence from five years to seven years if a judge determined at sentencing that the defendant brandished a gun instead of merely carrying it. *Harris v. United States*, 536 U.S. 545, 552 (2002). *Harris*, however, is not controlling on the issue here – *i.e.*, whether a mandatory minimum sentence under ACCA violates Mr. Mohamadi's Sixth Amendment rights. *Harris* is not controlling because only four Justices joined the opinion's constitutional discussion. 536 U.S. at 556-68. The remaining five Justices – four in dissent, and one concurring in the judgment (based on disagreement with *Apprendi* itself) – concluded that the plurality's conclusion was inconsistent with *Apprendi*. *See id.* at 569-72 (Breyer, J., concurring in part and concurring in the judgment); *id.* at 572-83 (Thomas, J., dissenting). The plurality opinion thus cannot be viewed as binding.

More recently, the Supreme Court specifically declined to rule on the constitutionality of mandatory minimum sentences. *See United States v. O'Brien*, No. 08-1569, 2010 WL 2025204 (S.Ct. May 24, 2010). Thus, the constitutionally of mandatory minimum sentences based on judge-found facts remains an unsettled issue. As Justice Thomas explained in his dissenting opinion in *Harris*, such sentences deserve the safeguard of jury-found facts that the Sixth Amendment provides: "As a matter of common sense, an increased mandatory minimum heightens the loss of liberty and represents the increased stigma society attaches to the offense. Consequently, facts that trigger an increased mandatory minimum sentence warrant constitutional safeguards." *Harris*, 536 U.S. at 577-78 (Thomas, J., dissenting). In this case, Mr. Mohamadi

respectfully submits that the Court cannot, consistent with the requirements of the Sixth Amendment, impose any mandatory minimum sentence based on facts that were not presented to and found by the jury.

## **CONCLUSION**

For the reasons stated above, Mr. Mohamadi respectfully requests the following:

(1)  That the Court impose a sentence of no more than 120 months.  Alternatively, and assuming the Court determines that it is bound to apply the mandatory minimum sentences, that it impose a sentence of no more than 25 years and 1 day or 32 years and 1 day;

(2)  That the Court provide Mr. Mohamadi credit for time served for the instant offense.

(3)  That the Court recommend his placement in a suitable BOP facility close to his home of Springfield, Virginia, which would facilitate visits by his family members.

Respectfully submitted,
MIRWAIS MOHAMADI

By Counsel,
Michael S. Nachmanoff,
Federal Public Defender


_____/s/_____
Michael S. Nachmanoff
Virginia Bar Number 39180
Attorney for the defendant
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600- 0860 (telephone)
(703) 600-0880 (fax)
Michael_Nachmanoff@fd.org (e-mail)

-26-

Whitney E.C. Minter
Virginia Bar Number 47193
Attorney for the defendant
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600- 0855 (telephone)
(703) 600-0880 (fax)
Whitney_Minter@fd.org (e-mail)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2010, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald L. Walutes, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria , Virginia 22314
(703) 299-3700
Ron.Walutes@usdoj.gov

Michael Ben'ary, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria , Virginia 22314
(703) 299-3700
michael.ben'ary2@usdoj.gov


Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.


_____/s/_____
Michael S. Nachmanoff, Esq.
Attorney for the defendant
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0860 (telephone)
(703) 600-0880 (fax)
Michael_Nachmanoff@fd.org (e-mail)

-28-