IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:09CR179 |
| v. | ) | |
| | ) | The Honorable Liam O'Grady |
| MIRWAIS MOHAMADI, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S POSITION ON SENTENCING

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney for the Eastern District of Virginia, and Michael P. Ben'Ary and Ronald L. Walutes, Jr., Assistant United States Attorneys, respectfully submits this response to Defendant's Position on Sentencing.

1. The defendant, Mirwais Mohamadi, advances a number of arguments to minimize his crimes of violence and seeks a ten-year sentence. These arguments lack merit and should be rejected. Although Mohamadi asks this Court to base his sentence on the monetary loss to his victims, the monetary loss substantially understates the effects of his crimes of violence on his victims and the community. The guideline sentencing range as computed by the Presentence Report (PSR) is 324 to 405 months. This range is only one step below the 360-to-life range. Once the statutorily mandated consecutive time is added, the guidelines effectively recommend a life sentence. The government respectfully submits this sentence is appropriate given Mohamadi's character and history combined with the need to protect the public and the criminal justice system from Mohamadi's attempts to silence victims, frame the innocent and subvert justice.

2. Mohamadi chambered a round and held a loaded weapon to another human being's temple as he bragged of murdering others. Mohamadi brandished the same loaded firearm at a taxi cab driver whom he threatened to murder as he took the man's money and cell phone. Two weeks, later Mohamadi shattered the window of a taxi cab after threatening to kill a Camelot dancer.[1] Mohamadi supplied Gebru Haile's identity and home address, information he garnered from his defense investigator, to an inmate he recruited to kill Mr. Haile. Mohamadi used his sister and his girlfriend to frame an innocent man. Mohamadi gave explicit instructions to his girlfriend to frame this same man hours before her federal grand jury appearance. Mohamadi dispatched a trusted friend to the federal grand jury (where he was barred access by the United States Marshals) and later to locate and confront the grand jury witness to determine the content of her testimony. When the grand jury witness claimed to have asserted her Fifth Amendment rights as instructed, Mohamadi used the Jencks Act and ultimate disclosure of her testimony to threaten the witness as he sought to violate the secrecy of grand jury proceedings. The extensive degree of planning present in this case (all before Mohamadi was in federal custody) is astonishing.

**IMPOSITION OF THE MANDATORY MINIMUM 15 YEAR SENTENCE**

3. Mohamadi argues that this Court cannot "find facts that were not presented to, or determined by, the jury" necessary to trigger the mandatory 15-year sentence for Mohamadi's three prior armed robberies. This argument lacks merit. Mohamadi does not claim that his three prior armed robberies are not violent felonies triggering the application of 18 U.S.C. §924 (e).

---

[1]This Court heard the testimony of a club security employee who witnessed the shattered window, although he was precluded from mentioning the surrounding facts before the jury. After successfully avoiding arrest for the instant crimes of violence two weeks earlier, Mohamadi repeated similar acts of violence in the community within days.

Rather, he argues solely that this Court may not reach that determination. The flaw with his argument is that Mohamadi elected to waive the jury as to this count. This Court found the defendant guilty of this offense. The PSR prepared in this case details Mohamadi's three prior crimes. Each crime of violence occurred on different occasions, at different locations, and involved a weapon. Mohamadi waived his Sixth Amendment right to a jury as to this count and his technical argument is now foreclosed.

      4. This Court should impose the statutory 15-year mandatory minimum sentence and run it consecutive to the guideline sentence imposed in this case. The unpublished opinion cited by Mohamadi in *United States v. Crawford*, 175 Fed. Appx. 594, 595 (4th Cir. 2006), rejects many of the arguments now advanced by Mohamadi. Defendant's Sentencing Position at 4, note 3. The government does not dispute that this Court could impose a concurrent sentence. But unlike *Crawford*, this is not a simple marijuana possession. Mohamadi stands convicted of a series of crimes of violence where he sought to murder a witness and defeat the criminal justice system. Count Five, distinct from every other count of conviction, is the only status offense. This defendant has already received considerable leniency for his youth, personal history and hope for future rehabilitation. That effort has utterly failed, not because of the system, but because of Mohamadi. He should receive no leniency given his substantial criminal history of violence. Congress has elected to severely punish those who commit more crimes after previously committing crimes of violence. Mohamadi appropriately deserves this enhanced punishment and the government asks that this time be imposed to run consecutively.

      **OBSTRUCTION OF JUSTICE ENHANCEMENT**

5. Mohamadi asserts that this enhancement should only apply as to his sworn testimony elicited on direct. Mohamadi's artificial distinction between his testimony at trial between direct and cross is without force or authority. Every defendant has a right to take the stand in his defense. No defendant has a right to lie. The lie before this Court is not Mohamadi's claim of innocence. The lies are Mohamadi's sworn testimony during cross examination when he denied involvement with prostitution or access to funds derived from prostitution to finance a hit on the witness and his claim of employment and lack of need for money. The test is not whether the lies occur on direct or cross examination, but whether the defendant was untruthful with a material matter at trial. *United States v. Dunnigan*, 507 U.S. 87, 94-96 (1993).

6. Mohamadi testified under oath before a state jury – a year after the taxi cab robbery – that he was employed making a lot of money at Eastern Automotive and had no need for a taxi or motive to rob. This sworn testimony, adopted in front of this Court, is a material matter before this Court and is not outside the obstruction of justice enhancement. His false testimony is not somehow shielded because it was carefully avoided on direct. Mohamadi's sworn testimony that he was employed at the time of the instant offenses, with ready access to cars and money legally earned, is central to the issue before the jury. It was entirely appropriate for the government to explore this sworn testimony at trial and in no way confusing to the defendant. The defendant adopted his entire state testimony and despite being afforded the explicit opportunity, refused to back away from his claimed employment at the time of the robberies. He was given a copy of his testimony and repeatedly afforded the opportunity to review it before answering. Mohamadi's testimony was false as to both his prior employment and his familiarity with and control over a prostitute who deposited large sums into his jail account at the time of these

offenses. The enhancement is entirely appropriate. The government asks the Court to make the "independent findings necessary to establish a willful impediment to or obstruction of justice, or attempt to do so" to the perjury definition discussed in *Dunnigan. Id.* at 94-95.

### A TWO-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2J1.2(b)(3)( C) IS APPROPIRATE WHERE THE WITNESS TAMPERING WAS EXTENSIVE IN SCOPE, PLANNING, AND PREPARATION

7. The applicable guidelines for Witness Tampering includes an enhancement for those cases with significant planning and scope. U.S.S.G. § 2J1.2(b)(3)(C) states that "[i]f the offense . . . was otherwise extensive in scope, planning, or preparation, increase by two levels." While there is no precise definition of "otherwise extensive," several circuits have noted that "there are a number of factors relevant to the extensiveness determination, including the length and scope of the criminal activity as well as the number of persons involved." *United States v. Holland*, 22 F.3d 1040, 1046 (11th Cir. 1994) (defendant's "perjurious activity continued over a period of three years and involved the assistance of several individuals"). *See also United States v. Jensen*, 248 Fed. Appx. 849, 851, 2007 WL 2733721 **3 (10th Cir. 2007) (noting that corrections official's "offense was far from an isolated occurrence" in helping inmates falsify drug testing records).

8. Mohamadi instructed a witness to refuse to testify before a federal grand jury; he further instructed the witness to testify falsely if she was immunized and compelled to testify. Mohamadi instructed a friend to ensure these instructions were followed. This offense must be analyzed in the context of Count 9; Mohamadi arranged for his sister to have the witness memorize Ahmad's appearance and to testify falsely that it was Ahmad, rather than Mohamadi, who participated in the robberies. The context is important because it is the details of this lie

that Mohamadi seeks to have the witness repeat before the federal grand jury.

9. Like *Holland*, Mohamadi's instructions were given to several individuals over a time span, factors relevant to the "extensiveness determination," making the two-point enhancement under U.S.S.G. § 2J1.2(b)(3)(C) applicable. Mohamadi's motion confuses the applicable guidelines. Mohamadi cites U.S.S.G. § 2J1.2(b)(2), which states that "[i]f the offense resulted in substantial interference with the administration of justice, increase by **3** levels." Both the 3-level enhancement under U.S.S.G. § 2J1.2(b)(2) and the 2-level enhancement under U.S.S.G. §2J1.2(b)(3)( C) apply. It is important, however, to distinguish between the two enhancements.

10. The commentary for U.S.S.G. § 2J1.2(b)(2) notes that substantial interference with the administration of justice includes the unnecessary expenditure of substantial governmental or court resources. The enhancement in this case is appropriate given the "unnecessary expenditure of substantial governmental or court resources" as noted in the commentary. The government expended considerable resources locating and serving a grand jury subpoena upon Mohamadi's girlfriend to determine the source and truthfulness of her state testimony. The government had to pay for this witness to travel from Florida to the federal grand jury sitting in Alexandria, Virginia. Law enforcement had to pull and monitor Mohamadi's recorded jail calls in an effort to track his efforts to tamper with this witness and potentially harm her. The government expended considerable efforts monitoring the defendant, who was not in federal custody, and determine to whom he was seeking to pass messages as he sought to blame an innocent man. These are resources the government would not have otherwise expended. There is a great difference in monitoring an inmate daily as opposed to pulling his calls in one batch. As the defendant himself has noted, he made thousands of hours of calls with individuals unknown to

the government.  Law enforcement had to expend considerable resources tracking his effort to tamper with a grand jury witness and to intimidate her into revealing what if anything she revealed to the grand jury.

11.  When imposing a three-level enhancement for causing substantial interference with the administration of justice for the 'unnecessary expenditure of substantial governmental or court resources,' the Court must:  (1) identify a particular expenditure of governmental resources, (2) which but for the defendant's conduct would not have been expended, and (3) that the expenditure was substantial in amount.  *See United States v. Tackett*, 193 F.3d 880, 885 (6th Cir. 1999); *United States v. Sinclair*,109 F.3d 1527, 1539-40 (10th Cir. 1997).  "The government need not particularize a specific number of hours expended by government employees to sustain the application of section 2J1.3(b)(2)'s enhancement." *United States v. Johnson*, 485 F.3d 1264, 1271 n. 8 (11th Cir. 2007).  While the Application Notes do not define the term "substantial," courts have ascribed to the term its ordinary and natural meaning.  *See United States v. Zheng*, 306 F.3d 1080, 1085 (11th Cir. 2002) (quoting *Nat'l Coal Ass'n v. Chater*, 81 F.3d 1077, 1081 (11th Cir. 1996) (per curiam)).  Black's Law Dictionary defines "substantial" as something of "real importance; of considerable value; valuable.  Something worthwhile as distinguished from something without value or merely nominal." *Black's Law Dictionary* 1428 (6th ed. 1990).

12.  Courts have found that the cost of interviewing and re-interviewing witnesses to ascertain the truth about a particular crime is substantial.  *See, e.g. United States v. Sinclair*, 109 F.3d 1527, 1540 (10th Cir. 1997); *United States v. Atkin*, 29 F.3d 267, 268 (7th Cir. 1994).  The FBI spending two weeks trying to sort out the truth has also been deemed substantial. *United States v, Luedeeke*, 908 F.2d 230, 234 (7th Cir. 1990).

13. Mohamadi substantially interfered with justice; (1) he gave explicit instructions to a witness to write down and give false testimony before a federal grand jury blaming an innocent man, (2) he directed a friend to go to the federal jury to monitor witness and (3) he directed the same friend to visit the grand jury witness at work after her appearance and "keep it gangster" as he determined the nature of her testimony. Count 10 is not assessed in a vacuum. Mohamadi subverted justice in his first criminal trial by orchestrating false testimony seeking to blame an innocent man. This Court heard the testimony. The witness was shown a photograph of a man unknown to her and told to memorize the innocent man's tattoos. The witness was told to minimize the relationship with the defendant and told to claim to have a poor memory when interviewed by law enforcement. While it is true that the witness did not testify falsely before the grand jury, the government expended considerable resources monitoring the defendant's telephone calls and seeking to ensure the witness was not harmed after leaving the federal grand jury. These are resources that would not have been expended but for the defendant's effort to tamper with this witness.

## MANDATORY MINIMUM FIREARM SENTENCES

14. Mohamadi has been convicted of two § 924( c) offenses, which impose a mandatory minimum term of imprisonment of 7 years for the first and 25 years for the second offense. This results in 32 years of mandatory minimum time, which must be consecutive to the appropriate guideline sentence. This mandatory minimum time may not be concurrent to any other sentence imposed in this case. 18 U.S.C. § 924( c)(1)(D)(ii).

15. Sequential § 924( c) convictions, even if charged in a single indictment, are sentenced consecutively. *United States v. Deal*, 508 U.S. 129, 135-36 (1993); *United States v.*

*Raynor*, 939 F.2d 191, 193-94 (4th Cir. 1991). This is settled law. When Congress subsequently amended the statute, it did not alter the force of *Deal*. Indeed, Congress enhanced the sentence for brandishing a weapon used in an act of violence. Although the defendant argues the statutory language does not compel a mandatory minimum consecutive sentence of 32 years, he acknowledges that the Fourth Circuit has foreclosed his argument. *United States v. Studifin*, 240 F.3d 415 (4th Cir. 2001). *See also United States v. Mitchell*, 2010 WL 768943 (EDVA, Judge Ellis, Feb. 24, 2010)("*Studifin* is not just controlling; it also correctly interprets §924( c)(1)(A)").

16. Mohamadi's Eighth Amendment arguments have also been rejected by the Fourth Circuit. *United States v. Khan*, 461 F.3d 477, 495 (4th Cir. 2006). *See also United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) (remanded for imposition of sentence of at least 182 years). Each of the three mandatory minimum offenses is punishable by a maximum sentence of life imprisonment. *United States v. Blue*, 957 F.2d 106, 107 (4th Cir. 1992).

17. While § 924( c) punishes the use of a weapon in the crime, § 924(e) punishes the status of the defendant when he committed the crime. Because Mohamadi committed three separate crimes of violence before the instant offenses, his felon in possession conviction in violation of § 922(g) is punished pursuant to § 924(e). § 924(e) is distinct from 924( c), which addresses the instant use of a firearm. § 924(e) is a status offense, which punishes a defendant who has repeatedly committed crimes of violence. It imposes a mandatory minimum sentence of 15 years where a defendant was previously convicted of three separate crimes of violence. Congress does not want to see defendants repeatedly return before a Court after committing repetitive crimes of violence.

18. Mohamadi argues that the Court is "not required" to impose these mandatory

minimum sentences consecutive to one another. As to the § 924(c) offenses, the government disagrees. Regardless of whether the mandatory minimums must be run consecutively, the three mandatory minimum sentences should be run consecutively. Mohamadi has had an abundant opportunity to correct his predatory behavior. After so many crimes of violence – crimes that have escalated in their degree of violence (contrast pulling up his shirt displaying his firearm during robberies of commercial establishments with chambering a round and holding his firearm to temple of Ms. Riley) – there comes a point where the Court's duty to protect the public is paramount. Mohamadi is not afraid of the state or federal authorities. He brags about his ability to serve any long federal sentence like a soldier. The offenses before this Court detail the specific criminal intent to murder a witness without mercy. Mohamadi should not be given another opportunity to victimize working people. Mohamadi should not be permitted to challenge the criminal justice system by murdering a witness and orchestrating false testimony.

WHEREFORE, the government respectfully submits that the defendant should receive

the maximum guideline sentence with the 47 years of mandatory minimum imprisonment imposed to run consecutively.

        Respectfully submitted,
        Neil H. MacBride
        United States Attorney

By            /s/
        Ronald L. Walutes, Jr.
        Virginia Bar number 26312
        Assistant United States Attorney
        United States Attorney's Office
        Justin W. Williams U.S. Attorney's Building
        2100 Jamieson Avenue
        Alexandria, VA 22314-5794
        Phone:  703-299-3700
        Fax: 703-739-9556
        Email Address: Ron.Walutes@usdoj.gov

        /s/
        Michael P. Ben'Ary
        Assistant United States Attorney

CERTIFICATE OF SERVICE

      I certify that I electronically filed the foregoing government's sentencing position using the CM/ECF system, which will send a notification of such filing (NEF) on June 16, 2010, to the following:

Michael S. Nachmanoff, Esquire
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

Whitney Minter, Esquire
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

                                              /s/
                                      Ronald L. Walutes, Jr.
                                      Virginia Bar number 26312
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      Justin W. Williams U.S. Attorney's Building
                                      2100 Jamieson Avenue
                                      Alexandria, VA 22314-5794
                                      Phone:  703-299-3700
                                      Fax: 703-739-9556
                                      Email Address: Ron.Walutes@usdoj.gov