1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




-----------------------------:
                             :
UNITED STATES OF AMERICA      :
                             :
                             :
     -vs-                     :        Case No. 1:09-cr-179
                             :
                             :
MIRWAIS MOHAMADI,             :
                Defendant.    :
                             :
-----------------------------:




                         MOTIONS HEARING


                       February 26, 2010


                  Before:  Liam O'Grady, Judge
```

APPEARANCES:

Ronald L. Walutes, Jr. and Michael P. Ben'Ary,
Counsel for the United States

Whitney E.C. Minter and Jeffrey C. Corey,
Counsel for the Defendant

The Defendant, M. Mohamadi, in person

2

1          THE CLERK:  Criminal case number 1:09-cr-179, the

2   United States of America versus Mirwais Mohamadi.

3          MR. WALUTES:  Good morning, Your Honor.  Ronald

4   Walutes and Mr. Ben'Ary, Michael Ben'Ary has joined the

5   Government to try this case.

6          THE COURT:  All right, good morning to you both.

7          MR. MINTER:  Good morning, Your Honor.  Whitney

8   Minter from the Public Defender's Office and Jeffrey Corey,

9   pro bono counsel, on behalf of Mr. Mohamadi, who is present in

10  custody.

11         THE COURT:  All right.  Good morning to you all.

12         Good morning, Mr. Mohamadi.  Have a seat, sir.

13         THE DEFENDANT:  Good morning, Your Honor.

14         THE COURT:  All right, this comes on Mr. Mohamadi's

15  motions to suppress, sever and exclude certain counts.

16         I have read the pleadings of the parties.  I have

17  read the cases.  I will hear anything you would like to say in

18  addition.

19         MR. MINTER:  As a practical matter, Your Honor, at

20  least for us and perhaps for the Government, I think which

21  matter the Court wishes to take up first will dictate who the

22  Court hears from first.

23         THE COURT:  Well, do you want to do Count 5 first?

24         MR. MINTER:  That's fine, Your Honor.

25         THE COURT:  All right.

3

1              MR. MINTER:  Your Honor, in large part we would rest

2    on our pleading in that matter.  However, there are a couple

3    of points in the Government's response that I would like to

4    address.  The first of which is the alternatives that the

5    Government poses to severance.

6              It is certainly true as a practical matter that a

7    bench trial could be held on this, and it is certainly true

8    that a stipulation could be entered into, but both of those

9    come at a cost to Mr. Mohamadi.  To enter a bench trial gives

10   up his right to a jury, which he has quite clearly indicated

11   that he wishes to exercise.

12             To enter into a stipulation is a double-edged sword.

13   It limits the jury's knowledge to the fact that he has a

14   conviction, but it then leaves the jury free to speculate as

15   to what that prior conviction could be.

16             In addition, it still tells them that he is a

17   convicted felon, which is, of course, the primary source of

18   the prejudice.

19             And I think to some degree that is the sole issue

20   that this motion boils down to, is prejudice.  There is quite

21   clearly, unquestionably prejudice associated with a prior

22   conviction, and certainly a prior felony conviction.

23             We have an entire Rule of Federal Evidence which is

24   directed toward prohibiting, except in certain circumstances,

25   a jury's knowledge or a trier of fact's knowledge of prior bad

4

1    acts, including prior conviction.

2          And as an aside, as I mentioned in my motion, the

3    Commonwealth of Virginia quite clearly agrees that there is

4    prejudice involved and quite routinely endorses severance for

5    purposes of this.

6          Now, that is not to say that we are in Virginia or

7    that this Court is controlled by Virginia law, but it

8    certainly is relevant when we look to the issue of whether

9    there is prejudice in allowing this evidence to come in at

10   trial.

11         The Government's arguments are certainly correct

12   with respect to the Hawkins case.  The Hawkins case is a Rule

13   8 case.  Hawkins essentially said that these cases never

14   should have been joined in the first place.  And in

15   determining that, they discussed a number of the issues that

16   the Government raises in their response.  And they certainly

17   talk about prejudice.

18         But it is a different scenario than we have here.

19   That is, the appellate court looking back to the misjoinder

20   and determining whether that was a mistake.  They certainly

21   analyzed the prejudice, but they analyze the prejudice in a

22   different manner, whether it resulted in an unfair trial.

23         That is different than the issue posed under Rule

24   14.  The language of Rule 14 says, if joinder appears to

25   prejudice a defendant.

5

1          So, while Hawkins is certainly relevant and the

2     entire reason that we cited it is because they reiterate, they

3     point out, they address the prejudice that's involved in that

4     prior conviction--

5          THE COURT:  Yeah, you had a carjacking where it was

6     just one guy against somebody else saying who did it, and then

7     all of a sudden you have got this separate firearm count from

8     a different period in time not related at all.

9          And so, they weighed it in several ways, in looking

10    at it for misjoinder and looking at it for prejudice.

11         MR. MINTER:  That's correct, Your Honor.  But I

12    would submit that their evaluation of prejudice is different

13    than our evaluation of prejudice at this stage because they

14    were looking to whether it caused an unfair trial.

15         So, of course, they look to all of the elements that

16    the Government cited as additional prejudice because they had

17    to take an overall look about whether an unfair verdict

18    resulted as a result of that misjoinder.

19         Certainly, Your Honor, we would rely on the

20    pleadings filed earlier in this case that the Court has

21    already ruled on that joinder is not appropriate in this case.

22    But as the Court has ruled, and we have moved past that, the

23    issue we address today is specifically whether Rule 14

24    addresses this issue, and it does.

25         And again, we rely on the Hawkins case quite simply

6

1  for one point, which is that the <u>Hawkins</u> case again addresses

2  the issue of the prejudice of a prior conviction.

3       If these cases were to be severed, we would admit

4  that there would be some overlap in the testimony that was

5  required to prove the 922(g) count versus the other counts

6  involved in this case.  However, the interesting thing is the

7  evidence that needs to be repeated is only necessary to the

8  extent to prove possession.

9       And the Government quotes the <u>Silva</u> case as saying,

10  if we were to sever them, we would have this one large trial

11  and then this one very teeny trial that only addressed one

12  minor, minor issue.  And that--

13       THE COURT:  I don't think they said that at all.

14  They said, we are going to have to retry the case.  He used

15  the weapon in the course of committing of the two robberies

16  and that they are totally intertwined, the evidence would be

17  the same, it would be a replay necessary if we sever it.

18       MR. MINTER:  I apologize, Your Honor, I didn't

19  intend to quote the Government.  Rather, to quote the <u>Silva</u>

20  case which the Government quoted in its position.

21       And essentially that is what the <u>Silva</u> Court

22  implied, that it would be a very small trial simply to prove,

23  if I can give the Court the language, one requiring two

24  trials, one for a charge which requires little more than proof

25  of possession and the existence of a prior record.

7

1          And the Court does go on, admittedly, to say that

2    that would be redundant, but the point is that's a

3    double-edged sword for the Government as well.  While it

4    would, of course, necessitate two trials if they were severed,

5    the second trial would by definition be a very short, concise

6    trial.  It would not require repetition of every bit of

7    evidence that would go into the trial of the other nine

8    counts.

9          THE COURT:  Well, the Government has to make that

10   decision and how much evidence to put in in order to sustain

11   its burden, which is a heavy one, beyond a reasonable doubt.

12   And while you may think it might be a simple process, the

13   reality as I look at this case is that it would be extensive

14   testimony, repetitive testimony necessary, especially given

15   the nature of the witnesses that are going to be coming

16   forward.  And I would expect significant overlap between the

17   two trials.

18          So, I understand you think it's--  This isn't the

19   <u>Silva</u> case.

20          MR. MINTER:  And certainly, Your Honor, the

21   Government would be entitled to call additional evidence and

22   additional witnesses, but we would submit that that would not

23   be necessary.  And that to any extent they duplicated efforts

24   beyond proving possession and a prior conviction, that would

25   be their decision.

8

1          Your Honor, the Government also argues that there is

2    no or minimal prejudice to Mr. Mohamadi because the jury will

3    already be hearing evidence of the acts that he is alleged to

4    have committed.  And in light of all of these arguably bad

5    facts, a prior conviction can't possibly look that bad.

6          Well, Your Honor, that's true in any case.  Any time

7    we stand here and the Government prosecutes someone, they are

8    putting on evidence which alleges that they have committed a

9    crime.  By that standard, any time we accuse a defendant of

10   committing a crime, we can just pile on and add additional bad

11   acts, including prior convictions.

12         That clearly can't be the case.  Again, we have an

13   entire federal rule dedicated to limiting that additional

14   evidence.

15         I would submit, Your Honor, that that argument

16   doesn't hold weight simply because the Government has accused

17   Mr. Mohamadi of doing things that are arguably bad things.

18         Again, Your Honor, I would reiterate the difference

19   between the appellate standard that appears in all of these

20   cases that we see which requires that the prejudice involved

21   denies the defendant a fair trial and point out, again, that

22   we are at the point of Rule 14, if joinder appears to

23   prejudice a defendant.

24         There can be no question and no one can dispute that

25   a prior felony conviction is a prejudice.  I would ask the

9

1    Court to sever Count 5 from the remaining counts.

2             THE COURT:  Thank you.  Yes, sir.

3             MR. BEN'ARY:  Thank you, Your Honor.  Just to

4    briefly address some of the points raised here.

5             And I think the Court to some extent hit the nail on

6    the head with respect to what a severed trial for just Count 5

7    would look like here.

8             And I certainly appreciate the suggestion that we

9    should put only on a little bit of evidence to prove Mr.

10   Mohamadi's possession of the firearm, but in this case I can

11   submit to the Court and tell the Court that we would call all

12   of the Government's witnesses that support Counts 1 through 4.

13   That is the woman that the defendant robbed in the District of

14   Columbia, the cab driver that the defendant robbed in

15   Alexandria, and all of the witnesses that support the

16   Government's overwhelming case that this defendant committed

17   armed robbery.

18             Plus on top of that, we would have the one

19   additional piece of evidence that the defendant is a convicted

20   felon.

21             So, as the Fourth Circuit in <u>Silva</u> alluded to, it

22   would involve all of this duplication of efforts, duplication

23   of resources.  And the Fourth Circuit has said quite clearly

24   that that is not necessary.

25             With respect to the alternatives to severance that I

10

1    mentioned in my brief, Your Honor, we recognize that the

2    defendant is not bound to agree to those measures.  We simply

3    mention them to point out that there are ways to ameliorate

4    this risk of prejudice.

5          Certainly it is the defendant's choice if he doesn't

6    want to agree to a bench trial, he has got every right to have

7    a jury hear it.  If he doesn't want to agree to a stipulation

8    and put the Government to its proof, we are ready go on that

9    as well, Your Honor.

10          They are just measures that are available to the

11   defendant.  We raise them to the Court to suggest that when

12   the Court balances the risk of unfair prejudice here with

13   duplication of resources, that the Court should come down in

14   favor of the Government on this argument.

15          Just like the Silva Court talks about the use of

16   jury instructions being ameliorative, Your Honor.  Those are

17   just ways that the Government would suggest that are available

18   to curtail this risk of unfair prejudice.

19          With respect to the Government's point in its brief

20   that the risk of prejudice in this case is slight if the jury

21   learns that the defendant is a convicted felon.  That isn't to

22   say, Your Honor, that the Government is somehow arguing in

23   this case that we should be able to prove that he is a

24   convicted felon and use that proof with no limiting

25   instructions and get up and argue to the jury, look, he is a

1    bad guy and, therefore, he should be convicted, you should

2    find that he is the type of person that would commit these

3    types of offenses.

4              That's not the Government's point.  Of course it is

5    going to be limited and the jury will have an instruction that

6    they are only to consider it with respect to Count 5.

7              The Government's point in that argument, Your Honor,

8    is just that the rest of the case is so strong and the

9    defendant's actions are going to be proven some with video,

10   and they are of such a nature that the risk that the jury is

11   going to be shocked and use evidence of his prior conviction

12   for an improper purpose in this case is slight, Your Honor.

13             And for those reasons, we would ask the Court to

14   deny the defendant's renewed motion to sever Count 5.

15             THE COURT:  All right.  Well, this is very much

16   unlike the Hawkins case, as the defendant concedes.  And

17   instead it is on point with Silva and the many other cases out

18   of the Fourth Circuit where if duplication is necessary, then

19   the Court looks differently at the case and really looks more

20   closely at the prejudice that will flow from the admission of

21   a prior felony conviction.

22             Here I agree with the Government that the

23   duplication would be extensive, they would have to put the

24   trial back on a second time with all of the witnesses.  I

25   mean, especially because they have seen the case tried in the

12

1   state court, a portion of the case tried in the state court

2   where a hung jury resulted.  Which clearly would present the

3   Government with information which would argue that they were

4   required, not just chose to put on a more extensive case.

5          So, you have a complete repetition of the trial for

6   the one count, for the possession of the firearm.  Considering

7   the charges and the seriousness of the charges against Mr.

8   Mohamadi, threatening to kill one of the witnesses who is a

9   victim of the earlier robbery, and the knowledge by the jury

10  that he is a convicted felon, is not going to unfairly

11  prejudice him.  There will be a limiting instruction given to

12  the jury that they can only consider it as to Count 5.

13         We have excellent, educated jurors who follow the

14  instructions of the Court, and I don't find unfair prejudice

15  here.

16         So, I will deny again the motion to sever Count 5

17  and note your exception.

18         All right.

19         MS. MINTER:  If I may just briefly, Your Honor.  I

20  understand that the Court is ruling today on the motion that

21  was filed on Mr. Mohamadi's behalf by our office.  I would

22  just advise the Court pursuant to your Court's ruling, Mr.

23  Mohamadi also has a motion that he would like to file on his

24  own and will do so at a later time regarding severance as

25  well.  I would just advise the Court of that at this time.

1          THE COURT:  All right, I will wait and receive that

2     and consider it at that time.

3          MS. MINTER:  Yes, Your Honor.

4          THE COURT:  All right.  There is also the motion to

5     suppress certain testimony and sever counts on Sixth Amendment

6     grounds.

7          MR. COREY:  Yes.  Good morning, Your Honor.  I will

8     be addressing that motion.  Mr. Jeff Corey for the defendant.

9          Just to start off, Your Honor, this is not the same

10    motion that was filed earlier.

11         THE COURT:  I understand, but we are in a new

12    position.  You have read the Government's motion, I am sure.

13    They have attached the evidence of the testimony in the prior

14    trial.  You have been given all these telephone conversations,

15    recordings of them.  You understand the timeline.

16         And where is the problem given the fact that every

17    one of these witnesses was not a Government agent, there is no

18    evidence that they were Government agents or had any

19    instructions from the Government at the time the conversations

20    about the robbery took place?

21         MR. COREY:  Yes, Your Honor.  I think there is two

22    very important responses to that.  First of all, I think your

23    question goes to what is on the recordings.  And the

24    recordings are by no means the universe of conversations that

25    the informants had with Mr. Mohamadi.  In fact, the recordings

14

1    only encompass conversations with one of three informants.  We

2    have no idea what the context is of the conversations with the

3    other two informants.

4            Now, we also know that with the third informant that

5    is on the recordings, that was only a subset of the

6    recordings.

7            Now, I know the Government has represented that

8    that's a lot of the conversations.  I don't know that to be

9    the case.  I do know from the recordings, which we have spent

10   hours and hours and hours reviewing, is that at the very first

11   conversation on those recordings it's clear that they have

12   already had other conversations.

13           Now, if he was an agent--

14           THE COURT:  They have had conversations, but what

15   evidence is there that there is any kind of Government action

16   which makes any of these three people a Government agent?

17           MR. COREY:  Well, Your Honor, I think that's exactly

18   why we need to be heard on this issue and in fact need to hear

19   testimony on it, because I cannot tell you when the agents--

20           THE COURT:  What case can you cite to me that

21   requires a hearing with the witnesses testifying when there is

22   not a scintilla of evidence that the Government has sponsored

23   any of these witnesses at the critical time?

24           MR. COREY:  Well, We submit, Your Honor, this is

25   precisely like the Lentz case where there was an evidentiary

15

1    hearing.  And in fact--

2             THE COURT:  The Lentz case factually couldn't be any

3    different than this case.  Judge Ellis had a hearing and it

4    was clear that Jackson became a Government agent at some time.

5    And what else Judge Ellis did was determine by the facts when

6    that occurred and he struck anything that was said after that

7    time and allowed evidence before that time.

8             I understand the Lentz case, I think it was

9    correctly decided, but here there is no evidence that there

10   was any Government involvement when the statements were made.

11   Right?

12            MR. COREY:  Yes, Your Honor, that's exactly why we

13   are requesting the opportunity for a hearing, because, again,

14   those recordings are only a subset of the conversations.  They

15   don't speak at all to the other two inmates.

16            So, we're in a position where we cannot point to

17   evidence.  And the Government seems to be saying, well, here,

18   we gave you some of the conversations, there, end of story.

19   And, frankly, I cannot cite to evidence that--

20            THE COURT:  Well, they gave you all the

21   conversations that were recorded, right?

22            MR. COREY:  As far as I understand, yes.

23            THE COURT:  All right.  And you are going to get

24   Jencks and Giglio and all that stuff, that has already been

25   exchanged or is that coming up?

16

1              MR. WALUTES:  It comes up on Wednesday, Your Honor.

2    The agreement that the Federal Defender entered into in May of

3    '09 was three days.  The Court expanded it to a week at the

4    time of the bill of particulars.

5              THE COURT:  All right.

6              MR. COREY:  I would like to address one point that I

7    think maybe I haven't hit as hard as I think is important to

8    hit here, that this is a new issue regarding consciousness of

9    guilt.

10             Now, I am sure you have read the pleadings where our

11   point is that the Government cannot use conversations that its

12   informants had with the defendant while he was represented on

13   charges, on the robbery charges as consciousness of guilt as

14   to those charges.  And that's our reading of Lentz and

15   Moulton, it goes exactly to that point.

16             THE COURT:  But the Government is going to introduce

17   any admissions as having been made at a time prior to the

18   conversations about the subsequent counts regarding the

19   threats or attempts to kill the witness, right?

20             Do you understand--  I mean, there is a distinction

21   there.  So, the Government's argument is, I get to use the

22   admissions regarding the robbery because they were made at a

23   time when either the witness was not involved with the

24   Government, was not an agent; or, subsequently the

25   conversations I am going to admit regarding the attempts to

17

1    hire them to kill the witness, those are going to come in

2    separately as to the additional counts.  Right?

3            MR. COREY:  Well, I understand, yes, Your Honor,

4    that's what they have represented in their pleadings as to

5    what they would show.  But again, we have only their

6    representation and then a subset of recordings to go on.

7            So, we honestly do not know the universe of what

8    happened.

9            THE COURT:  Well, if the Government does something

10   other than what they have represented, then that becomes an

11   issue at trial.  There is an objection made, it becomes an

12   issue at trial.  I have to decide whether I am going to

13   declare a mistrial and sanction the Government at that stage,

14   right?

15           MR. COREY:  Certainly.

16           THE COURT:  But isn't my job now to look at what's

17   out there, what evidence I have and make a decision based on

18   cases like the Lentz case and decide preliminarily now, you

19   know, with the information that I have?

20           MR. COREY:  Well, certainly your point is taken,

21   Your Honor, but I think that it is not that much additional

22   burden to hold a hearing and have the Government's witnesses

23   testify and just simply ask them, okay, what was the nature of

24   the conversations, when did you become an agent for the

25   Government and, you know, what questions did you ask the

1    defendant.

2            So, in terms of what practically can be done, I

3    don't think it's that much of an additional burden upon the

4    Court to consider that issue at that time rather than waiting

5    until trial and having to declare a mistrial.

6            THE COURT:  All right, thank you, Mr. Corey.

7            Mr. Walutes.

8            MR. WALUTES:  Your Honor, there is one point I

9    wanted to make.  I am sorry, I tried to get paper in front of

10   the Court this week after I saw their motion on Monday, and I

11   omitted making it in my written pleading.  And that is the

12   Government doesn't concede that the state armed robbery

13   offense is the same as any charge in the ten-count indictment

14   before this Court.

15           As the Court is well aware, in Texas versus Cobb,

16   the Sixth Amendment is offense specific.  And the interstate

17   interference with commerce has nothing to do with an armed--

18   It does have something to do with armed robbery, it is shared

19   elements, but it is not the same charge.  And so, we don't

20   concede that.

21           Lentz, as the Court is well aware, is a federal case

22   from its inception, and it involves a federal cooperator who

23   had a pre-existing cooperation agreement with the Government

24   before he ever came into contact with Mr. Lentz.

25           And then, I think actually Moulton versus Maine

1    helps the Government, Your Honor.  In that case it is the co-

2    defendant who is encouraged by law enforcement to make phone

3    calls and is going in and saying to the defendant, now remind

4    me all the things we did.  Again, nothing to do with our case.

5         The first two Fairfax witnesses are inmates, are

6    very tangentially told about the robbery.  One of them doesn't

7    even understand there to be a robbery.  He thinks that the

8    taxicab driver is a witness to a different robbery.  The other

9    has absolutely no detail.

10        What they will testify to will be about the efforts

11   to recruit them to murder someone.

12        And then witness three is incredibly well

13   documented, Your Honor.  I think this case when we go up on

14   appeal will serve to show that the instructions to cooperators

15   can be well followed.  Because as the defendant's counsel just

16   said, there are hours and hours and hours of transcripts, and

17   there is no verbiage proffered to this Court of any violation

18   of the instructions.

19        Moulton goes through and dices those recordings,

20   Your Honor, and shows the things that caused the Court

21   concern.  And here nothing is being offered to this Court.

22        And while the defense counsel in their motion says

23   that there is no date specific on when the robbery was

24   discussed, the Court has seen the transcript now, and it says

25   under oath that it occurred in September, two months before

20

1    the testimony, and a month before a relationship with the

2    federal government.  And that there is nothing else offered

3    since September.

4           While the date is not specific, it's misleading to

5    say that it isn't nailed down in sworn testimony.  We would

6    ask the Court to deny the defense motion.

7           THE COURT:  Well--

8           MR. COREY:  Pardon me, Your Honor.

9           THE COURT:  Yes, sir.

10          MR. COREY:  One additional point.  We would ask that

11   the Court at the least withhold ruling until we get Jencks and

12   Giglio materials, until we have had a chance to review that

13   material.

14          THE COURT:  All right.  Well, I will allow you to

15   renew the motion if you believe there is support for it.  But

16   presently I don't find that there is any evidence that would

17   require a hearing.  The case law doesn't require that each of

18   these potential witnesses be vetted under oath prior to their

19   testimony, unless you get a situation like the Lentz case

20   where you have a professional cooperator.

21          And I don't see any evidence that there is any Sixth

22   Amendment violation here, any necessity to sever any of these

23   counts, and that any of these witnesses will be violating Mr.

24   Mohamadi's Sixth Amendment rights during the course of their

25   testimony.

21

```
1              I will allow you to renew the motion if you get
2    something next Wednesday, I guess, and we will hear it in an
3    expedited manner.
4              There is a 404(b) motion that has been made as well
5    by the Government where they indicate that they believe that
6    the weapon used in these robberies was recovered shortly
7    after, within a couple of weeks of the robbery.
8              Is that on for this morning as well?
9              MS. MINTER:  It is not on for this morning, Your
10   Honor.  I think that we will need to address that issue in
11   terms of to what extent that evidence is admissible.
12             I would certainly submit that it is possible that
13   some of what has been presented to us will be admissible and
14   some would not.
15             I would ask the Court for the opportunity to review
16   that notice further and file at a later time.
17             THE COURT:  All right.  Then perhaps you can put it
18   on for next Friday and respond in writing to that.
19             MS. MINTER:  Thank you, Your Honor.
20             THE COURT:  And we will wait for the 404(b).  All
21   right, anything else this morning?
22             MS. MINTER:  Your Honor, I would just advise the
23   Court that Mr. Mohamadi would ask to address the Court with
24   regard to some of his motions.
25             THE COURT:  Come forward, Mr. Mohamadi.
```

22

1            You have got some motions you want to make?

2            THE DEFENDANT:  Yes, Your Honor, good morning.  I

3  was just wondering if it is possibly that I can orally submit

4  them and argue them if Mr. Walutes feels comfortable arguing

5  with--

6            THE COURT:  Well--

7            THE DEFENDANT:  It's brief motions.

8            THE COURT:  They are better off put in writing so

9  the record reflects that you have actually filed the motions,

10 and also so the Government has time to review them.  And why

11 don't you identify what they are and submit them in writing

12 and with copies to the Government, and we will hear them next

13 Friday.

14           What are the nature of the motions?

15           THE DEFENDANT:  Just pretrial motions.  And would

16 you like the names of the motions?

17           THE COURT:  Yes.

18           THE DEFENDANT:  I have a motion to compel all

19 evidence favorable to defendant.

20           Motion for disclosure of grand jury and jury

21 selection process, records and stuff.

22           Motion to dismiss based on Government's destruction

23 of exculpatory evidence.

24           Motion to strike surplusage from the indictment.

25           Defendant's motion to dismiss the indictment as

23

1    being defective for not including an element of the statute.

2                    THE COURT:  All right.

3                    THE DEFENDANT:  And the final one is a motion to

4    suppress wiretap evidence and fruits thereof in violation of

5    Title III of the Omnibus Crime Control and Safe Streets Act of

6    1968.

7                    THE COURT:  All right.  Well, those are all very

8    substantive motions that the Government is going to need time

9    to respond to.

10                   So, if you will file them in writing through your

11   counsel, and we will hear those next Friday.  All right.

12                   THE DEFENDANT:  Okay.  Thank you, Your Honor.

13                   THE COURT:  All right, then we are--

14                   MR. WALUTES:  Your Honor, before the Court breaks,

15   could I ask, does the Court intend to be in session on Friday,

16   on the 13th of March?  I just for scheduling purposes am being

17   pressured to ask the Court this question.

18                   THE COURT:  I think we will go--

19                   MR. WALUTES:  The 12th, I am sorry.

20                   THE COURT:  -- a half day.  I will probably hear the

21   normal Friday morning docket and then we will go in afternoon.

22                   MR. WALUTES:  Thank you, Your Honor.  I appreciate

23   that.  I have nothing else, Your Honor.

24                   I am sorry for the interruption.

25                   THE COURT:  No, that's all right.

24

1          MR. WALUTES:  Thank you.

2          THE COURT:  All right, then we are in recess, and we

3     will come back shortly for our civil docket.

4          ------------------------------------------------
                          HEARING CONCLUDED

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19          I certify that the foregoing is a true and

20     accurate transcription of my stenographic notes.

21

22

23
                    /s/  Norman B. Linnell
24          Norman B. Linnell, RPR, CM, VCE, FCRR

25