**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT



No. 10-4704

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

MIRWAIS MOHAMADI, a/k/a O, a/k/a Omar,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Liam O'Grady, District Judge.   (1:09-cr-00179-LO-1)

Argued:  October 25, 2011                Decided:  January 13, 2012

Before MOTZ, KING, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Matthew McGavock Robinson, ROBINSON & BRANDT, PSC, Covington, Kentucky, for Appellant.   Ronald Leonard Walutes, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.   **ON BRIEF:** Neil H. MacBride, United States Attorney, Michael P. Ben'Ary, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Mirwais Mohamadi was convicted in early 2010 by a jury in the Eastern District of Virginia of eight crimes, including Hobbs Act robberies (18 U.S.C. § 1951), using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)), solicitation to commit murder for hire (18 U.S.C. § 373), murder for hire (18 U.S.C. § 1958), and witness tampering (18 U.S.C. §§ 1512(b)(1) and (b)(3)).   The district court, in a bench trial conducted contemporaneously with the jury proceedings, found Mohamadi guilty of a ninth offense, being a felon in possession of a firearm (18 U.S.C. § 922(g)).   On appeal, Mohamadi seeks reversal of his convictions on the basis of several alleged errors, including improper joinder of offenses, the prosecution's use of inadmissible evidence, a lack of venue for certain charges, and insufficient proof of the Hobbs Act robberies.   As explained below, we reject Mohamadi's contentions and affirm.

I.

A.

On Saturday, May 26, 2007, Mohamadi responded to the on-line advertisement for prostitution services in the District of Columbia metropolitan area.   Mohamadi asked the prostitute, a Ms. Riley, to travel to the apartment he shared with his

2

girlfriend in Alexandria, Virginia. Riley agreed to perform an hour-and-a-half of prostitution services for Mohamadi for $500 to $600 in cash. Mohamadi identified himself to Riley as "Omar," and their arrangements were agreed to by cell phone. As a result, Riley left a Rockville, Maryland hotel and travelled in her rented Infiniti to Mohamadi's Alexandria apartment, where she was paid up front in large bills to engage in sexual activity with Mohamadi. Because Mohamadi wanted to extend their sexual arrangement, he paid an additional $500 to $600 in cash to Riley and they drove together in the Infiniti to a bar in the District of Columbia. Around 2:00 a.m. on May 27, 2007, Mohamadi asked Riley to drive him from the bar to an ATM near DuPont Circle so that he could obtain additional cash and prolong their arrangement. Riley agreed to do so, but Mohamadi instead forced her to drive to a deserted alley in the District, held her at gunpoint with a dark pistol, and robbed her of the day's cash earnings — totalling about $1600.

Around 2:30 that morning, after his robbery of Ms. Riley, Mohamadi left her Infiniti and hailed a taxicab near DuPont Circle. When Mohamadi entered the cab, he requested the driver, Gabru Haile, to drive him to the Landmark Mall in Alexandria, Virginia. Mohamadi changed his destination several times during the trip, however, asking to go first to Georgetown, then to Alexandria, then back to the District, then back to Alexandria.

3

While riding in the cab, Mohamadi used Haile's cell phone and made seven calls to his girlfriend. During the drive, Mohamadi stated that his family was from Afghanistan and asked Haile if he wanted to hire a prostitute. The trip ended at an apartment complex in Alexandria, where Mohamadi robbed Haile at gunpoint with a dark pistol.

After Mohamadi departed from the taxicab, Haile called the police and reported having been robbed. Meanwhile, Ms. Riley had also contacted the authorities and reported that she had been robbed. Both victims described the perpetrator of their respective robberies as a man who fit Mohamadi's description.

B.

On August 10, 2007, Mohamadi was arrested and charged in Fairfax County, Virginia, with the armed robbery of Haile. While in custody awaiting his state court trial, Mohamadi sought to hire at least two inmates to murder Haile, who was expected to be the key witness in Mohamadi's trial. Unfortunately for Mohamadi, the inmates alerted the federal authorities that Mohamadi had solicited Haile's murder. Inmate Richard Bryan was the first to do so. At the behest of the authorities, Bryan wore a device that videotaped his subsequent conversations with Mohamadi, and these videos reveal Mohamadi advising Bryan how

4

Haile was to be killed.[1]  After Bryan was released from custody, Mohamadi (who was still in jail) sent Bryan a money order for $250 and supplied him with Haile's home address.

Another inmate, Randy Pressley, reported to the authorities that Mohamadi had solicited the murder of a cab driver who was going to testify against Mohamadi.  A third inmate, Stephen Grant, advised federal officials that, in the fall of 2007, Mohamadi (who Grant knew as "Omar") had offered $10,000 cash and a BMW for the murder of a cab driver.

### C.

Mohamadi paid his girlfriend, Amanda Inge, to testify falsely in his state court trial in December 2008.  As a result, Inge testified that the phone calls she received from Haile's cell phone the night of the robberies of Ms. Riley and Haile were from a person other than Mohamadi.  A hung jury resulted, and a mistrial was thus declared in the state court proceedings.

Four months later, on April 9, 2009, Mohamadi was indicted in the Eastern District of Virginia on the ten counts involved in this case:  Hobbs Act robbery (Counts 1 and 2), using and

---

[1] Bryan testified at trial that the instructions given by Mohamadi were to "disguise myself as a pizza deliveryman or UPS man or even a detective.  And to be able to penetrate and get to the apartment and get them to open the door so that I can shoot [Haile]."  J.A. 61.  (Citations herein to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

carrying a firearm during and in relation to a crime of violence (Counts 3 and 4), being a felon in possession of a firearm (Count 5), solicitation to commit murder for hire (Counts 6 and 7), murder for hire (Count 8), and witness tampering (Counts 9 and 10). Mohamadi thereafter made several motions seeking, inter alia, dismissal of certain charges for lack of venue, severance of certain counts, dismissal of the Hobbs Act charges for lack of jurisdiction, dismissal of the indictment for speedy trial violations, and suppression of evidentiary identifications. After a hearing conducted on September 25, 2009, the district court denied each of these motions. In a separate motion in limine, Mohamadi sought to bar the prosecution from using the video and audio recordings of his jailhouse meetings with fellow inmate Bryan, where Mohamadi had discussed other murders and his prior involvement in drug dealing and prostitution. In ruling, the court partially granted the in limine request and barred certain portions of the recordings from evidence.

Mohamadi's federal trial was initially scheduled for October 2009, but was continued when the district court ordered a competency evaluation. Following receipt of the results thereof, the court found Mohamadi to be competent and the trial was conducted in Alexandria in March 2010. Among the prosecution's witnesses, Inge testified that Mohamadi

6

communicated with her from jail and instructed her to testify falsely in his state court trial and also before the federal grand jury.   Both Ms. Riley and Haile had, during the investigation, identified Mohamadi from a photo line-up as the person that robbed them.   They also identified Mohamadi at trial as the culprit in those robberies.   The three inmates testified regarding their interactions with Mohamadi, and portions of their videotaped meetings with Mohamadi were presented to the jury.   Mohamadi testified in his own defense and confirmed, inter alia, that he was a convicted felon and that he had spoken to inmates Bryan and Pressley while in custody.   On March 18, 2010, the jury returned a guilty verdict on eight of the offenses charged in the indictment.[2]

Following his convictions by the jury and the court, Mohamadi sought post-trial relief in the form of judgments of acquittal and a new trial, essentially realleging the contentions he had made earlier.   By its memorandum opinion of June 17, 2010, the district court denied Mohamadi's post-trial requests for relief.   The court then sentenced Mohamadi to

---

[2] The two counts of the indictment on which Mohamadi was not convicted by the jury were Counts 5 and 6.   Mohamadi had waived his right to a jury trial on Count 5 — being a felon in possession of a firearm — and the trial court found him guilty of that offense.   The jury acquitted Mohamadi on Count 6, a charge of solicitation of "former Inmate 1" to commit murder for hire.   Former Inmate 1 appears to refer to Pressley.

fifty-seven years in prison. See United States v. Mohamadi, No. 1:09-cr-00179 (E.D. Va. June 17, 2010).[3] Mohamadi filed his notice of appeal on June 25, 2010, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In pursuing this appeal, Mohamadi presents multiple contentions of error. Among them, he challenges the joinder of charges made by the grand jury in the indictment. Next, Mohamadi maintains that his incriminating statements to Bryan while they were in jail were improperly admitted into evidence. He also asserts that the court lacked venue for the offenses charged in Counts 1 and 3, relating to his robbery of Ms. Riley. Finally, Mohamadi contends that the Riley robbery failed to sufficiently affect interstate commerce under the Hobbs Act. We assess these contentions in turn.[4]

---

[3] The court's memorandum opinion of June 17, 2010, is found at J.A. 647-53.

[4] Mohamadi makes several other appellate contentions which, after careful consideration, we are satisfied to summarily reject. First, Mohamadi contests the admission of inculpatory photographic line-up evidence, asserting that the manner in which the photographs were presented to the witnesses was overly suggestive and that he was dressed differently than the other line-up participants. The district court rejected these contentions, however, finding no notable differences in the attire reflected in the photographic images. As the court explained post-trial, the identifications were reliable given
(Continued)

A.

We first assess Mohamadi's contention that the offenses charged in the indictment were improperly joined. We review de novo a claim, interposed pursuant to Federal Rule of Criminal Procedure 8(a), of improper joinder of offenses in an indictment. United States v. Hawkins, 589 F.3d 694, 700 (4th Cir. 2009).

In pursuing the joinder issue, Mohamadi contends that the indictment actually related to seven events that should have been charged separately and thus required seven trials. More specifically, Mohamadi sought to separate the charges as follows: the robbery of Ms. Riley (the prostitute); the robbery of Haile (the taxi driver); the charge that Mohamadi was a felon in possession of a firearm; three solicitations of murder made to three different inmates; and witness tampering with respect to his girlfriend. Mohamadi asserts that he was prejudiced by the improper joinder of these offenses in that he would have exercised his Fifth Amendment right not to testify on some of

_____

the amount of time each victim spent with Mohamadi. Second, Mohamadi maintains that there was a material difference between the allegations and the jury instructions with respect to the Hobbs Act robberies. Put succinctly, however, there is no such distinction to be made. Finally, Mohamadi asserts that his speedy trial rights were contravened. This contention is also baseless.

9

the charges but would willingly have testified regarding others. He contends that the charges in the indictment are — for the most part — unrelated to each other and simply constitute seven separate events that occurred on different dates and were not part of the same transaction or plan.

Under Rule 8(a), a grand jury may charge in separate counts two or more offenses that are of the same or similar character, based on the same act or transaction, or connected with or constitute parts of a common scheme or plan.[5] Nevertheless, Rule 8 contemplates and authorizes a "very broad joinder," because separate trials of related offenses are a waste of judicial resources. Hawkins, 589 F.3d at 700.

In assessing an improper joinder issue, we are obliged to look for "a 'logical relationship' between offenses charged in the indictment." United States v. Blair, 661 F.3d 755, 769 (4th Cir. 2011) (quoting United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005)). In this case, each of the charged offenses arose from the crime spree that Mohamadi carried out in the span of several hours during the night and early morning of May 26-

---

[5] Rule 8(a), governing "Joinder of Offenses," provides, in pertinent part, that "[t]he indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

27, 2007. During that period, Mohamadi first hired and robbed Ms. Riley with a firearm, and immediately thereafter hired and robbed Haile with the same handgun. The two robberies thus occurred on the same night and were part and parcel of the same excursion from Mohamadi's apartment — constituting vastly more than a mere temporal relationship. Mohamadi then proceeded to interfere with the state and federal prosecutions of his crime spree by tampering with a witness and seeking more than once to have the key witness murdered.

The trial evidence relating to the witness tampering and solicitation of murder offenses necessarily included evidence of Mohamadi's robbery of Haile. If these charges had been severed for separate trials "a needless duplication of judicial effort" would have resulted. See United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008) (finding proper joinder in witness tampering prosecution). Moreover, the evidence of Mohamadi's various solicitations for Haile's murder would probably have been admissible in a separate Hobbs Act trial. See United States v. Hayden, 85 F.3d 153, 159 (4th Cir. 1996). As a result, there is no support for Mohamadi's contention that the grand jury's joinder of offenses in the indictment was legally flawed.[6]

_____

[6] With respect to Mohamadi's related severance contention, one which requires our application of the more deferential abuse of discretion standard, see Blair, 661 F.3d at 768, the record (Continued)

11

B.

Next, we turn to the trial court's admission into evidence of the inculpatory statements Mohamadi made to fellow inmate Bryan during their common incarceration.  Mohamadi asserts that Bryan's testimony regarding their conversations, which occurred after Mohamadi had been indicted on a state armed robbery charge — but prior to the federal indictment — contravened the Sixth Amendment because the incriminating statements he made about the robbery were obtained in the absence of his lawyer.  In assessing such an issue, we view the evidence in the light most favorable to the government, assess the trial court's factual findings for clear error, and consider the court's legal conclusions de novo.  United States v. Lentz, 524 F.3d 501, 522 (4th Cir. 2008).

The Supreme Court has recognized that a defendant's Sixth Amendment right to counsel is contravened if the government

--------

amply supports the district court's denial of the request to sever various counts of the indictment.  Put simply, however, there was overwhelming evidence of Mohamadi's guilt on each offense on which he was convicted.  He also ultimately failed to make any particularized showing that the testimony he might have given with respect to certain of the charges was a proper basis for a severance of counts, even though he may well have preferred to remain silent on other counts.  United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984) (requiring such showing for severance of offenses).  In these circumstances, the court's denial of the severance of offenses was not an abuse of its discretion.

12

"deliberately elicit[s]" incriminating evidence from an accused "after he ha[s] been indicted and in the absence of his counsel," and then uses the incriminating statements against him at trial.  <u>Massiah v. United States</u>, 377 U.S. 201, 206 (1964). The district court found, however, that when Mohamadi first solicited the other inmates to murder Haile, none of them were in contact with law enforcement officers and none were acting as agents of the government.  To the contrary, the court found that the government could not deliberately have elicited incriminating evidence about Mohamadi's robbery of Haile, because, after the inmates made contact with the federal officials, none of them discussed with Mohamadi his state charge.  In denying Mohamadi's motion to exclude such statements on Sixth Amendment grounds, the court found and concluded that:

> In the case before the Court, the Government has clearly demonstrated that at the time the inmates discussed the underlying robbery with Defendant, they were not cooperating with the Government in any capacity.  It was not until after these discussions occurred that the inmates approached the Government to alert them to Defendant's intent to harm a witness. After speaking with law enforcement, no inmate discussed the armed robbery with Defendant further. . . . The Government has turned over to Defendant the tapes of the conversations between Defendant and Inmate 3 [Bryan], and Defendant has been unable to point to any discussion in those tapes where there is a Sixth Amendment violation.

<u>United States v. Mohamadi</u>, No. 1:09-cr-00179 (E.D. Va. March 2, 2010) (J.A. 570).

13

Notably, Mohamadi does not contend on appeal that the district court clearly erred in making these findings. He simply asserts that Bryan's testimony was improperly used to prove that Mohamadi was guilty of robbing Haile, rather than as evidence of Mohamadi's solicitations to commit murder for hire. Although Bryan testified at trial about discussions he had with Mohamadi concerning the Haile robbery, these discussions had occurred before Bryan alerted the government to the plot against the witness. Moreover, Bryan's testimony with respect to his conversations with Mohamadi after Bryan was in contact with federal officials was limited to details of Mohamadi's solicitation for Haile's murder.

Furthermore, none of the inmates solicited by Mohamadi had any preexisting relationship with the government. And, after informing the authorities that Mohamadi was seeking to have Haile killed, none of the inmates discussed Mohamadi's underlying robbery offense with him. In light of this factual predicate, the district court's admission of Bryan's evidence regarding Mohamadi's criminal activities was not improper.

C.

Turning to the venue issue, Mohamadi contends that venue was improper in the Eastern District of Virginia on Counts 1 and 3, both of which relate to his robbery of Ms. Riley. Because the robbery of Riley occurred in the District of Columbia, there

14

was, according to Mohamadi, no basis for venue on these charges in the Eastern District of Virginia. We assess de novo a district court's venue ruling. United States v. Stewart, 256 F.3d 231, 238 (4th Cir. 2001).

The government is obligated prove the venue of a criminal offense by a preponderance of the evidence. United States v. Burns, 990 F.2d 1426, 1436 (4th Cir. 1993).[7] The elements of a Hobbs Act violation are: (1) an underlying robbery or extortion; and (2) an effect on interstate commerce. United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003). The government contends that, in this case, "commerce was affected in the Eastern District of Virginia and the intent to rob was formed in Virginia when Mohamadi armed himself with his firearm after paying considerable money to the prostitute he had hired and brought into [the Eastern District of Virginia]." Br. of Appellee 39-40. At trial, the government established that Mohamadi had hired Ms. Riley in Alexandria, enjoyed her prostitution services there, and paid her more than a thousand dollars in cash. Indeed, the evidence was that Mohamadi paid

_____

[7] The jury was instructed that the government had to prove each element of the Hobbs Act offenses, including the venue element, beyond a reasonable doubt. This instruction was thus a more favorable one for Mohamadi than an instruction that venue had to be proven only by a preponderance. Although the record is somewhat sparse, we assume that the venue issue was properly preserved and review it de novo.

Riley nearly $1200 in cash, robbed her of those funds, and then returned to Alexandria with her money.

Venue under the Hobbs Act is proper in any district where commerce is affected.  United States v. Bowens, 224 F.3d 302, 313 (4th Cir. 2000); see also United States v. Lewis, 797 F.2d 358, 367 (7th Cir. 1986).  A minimal impact on commerce is sufficient to satisfy the venue element of the Hobbs Act. Williams, 342 F.3d at 354.  It was therefore enough for the prosecution to show, by a preponderance, that Riley's prostitution business took her into the Eastern District of Virginia, that large sums of cash changed hands there, and that the money belonging to Riley's business reentered that district. See Lewis, 797 F.2d at 367 (recognizing that "the effect need not be simultaneous with the attempted extortion").

In these circumstances, as the jury found beyond a reasonable doubt, venue for the Hobbs Act robbery charged in Count 1 was proper in the Eastern District of Virginia.  And, because venue was proper for that offense, venue in that district was also proper on Count 3 (using and carrying a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1))).  See United States v. Rodriguez-Moreno, 526 U.S. 275, 281-82 (1999) (recognizing that venue for § 924(c) offense was proper where underlying crime of violence could be prosecuted).

16

D.

Finally, we assess whether there was sufficient evidence to show that Mohamadi's robbery of Ms. Riley affected interstate commerce and conferred jurisdiction under the Hobbs Act.  When assessing the sufficiency of evidence in a criminal prosecution, we are obliged to uphold a guilty verdict if there is substantial evidence to support it.  United States v. Wilson, 198 F.3d 467, 470 (4th Cir. 1999).

We have not heretofore ruled that prostitution is an "inherently economic enterprise that affects interstate commerce." Williams, 342 F.3d at 355.  We have, however, concluded that the robbery of a drug dealer — an analogous crime for our purposes — "impacts a trade [drug dealing] that plainly is both economic and interstate in character." Id. at 354.  In this case, Ms. Riley's prostitution business was — like drug dealing — of an economic nature and interstate in character. Her business was similarly an "economic activity," and Mohamadi's armed robbery of Riley depleted her business assets and affected commerce.  See id. at 354-55 ("Commerce is sufficiently affected under the Hobbs Act where a robbery depletes the assets of a business that is engaged in interstate commerce.") (citing United States v. Buffey, 899 F.2d 1402, 1404 (4th Cir. 1990)).

17

Mohamadi nevertheless argues that Ms. Riley's business assets were not depleted by his armed robbery of her in the District of Columbia because her prostitution services were not thereby obstructed. The prosecution, however, presented sufficient evidence to show that Riley spent substantial sums of money in the conduct of her business, by way of hotel accommodations, car rentals, and other expenses. Viewing the evidence in the light most favorable to the government, there was substantial evidence supporting the jury's conclusion that Mohamadi's robbery of Riley contravened the Hobbs Act.

III.

Pursuant to the foregoing, we reject Mohamadi's various appellate contentions and affirm each of his convictions.

AFFIRMED