IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.: 1:09-cr-179 |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| MIRWAIS MOHAMADI, | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S
MOTION UNDER 28 U.S.C. § 2255

The United States of America, by and through its undersigned attorneys, opposes the petition of Mirwais Mohamadi to Vacate, Set Aside and/or Correct His Sentence Pursuant to Title 28, U.S.C. Section 2255, and requests that the petition be denied.

STATEMENT OF FACTS

1.     On Saturday, May 26, 2007, Mohamadi hired a prostitute via Craiglist, and had her travel to an apartment in Alexandria, Virginia.  They used their respective cellular telephones to coordinate the time and location via text messages.  The prostitute was not from the Washington metropolitan region, but had come to the area to engage in interstate prostitution, and in fact was hired by Mohamadi from her hotel in Rockville, Maryland.  She traveled into the Eastern District of Virginia in her leased Infinity vehicle to meet Mohamadi.   Mohamadi had agreed to pay her between five and six hundred dollars for her services.  Mohamadi paid her the same amount to extend her time with him while they were in the Alexandria apartment.  All of Mohamadi's money was paid up front and in large denomination bills while they were in Alexandria.   They were together until the robbery at gun point.

2.     Mohamadi and the prostitute, using her leased vehicle, drove into Washington, D.C, and to a bar in Dupont Circle.  When she attempted to end their business relationship,

Mohamadi asked her to take him to an ATM nearby for more money to further extend the session.  While she drove in search of the ATM, Mohamadi directed her into a deserted alley and placed his loaded dark .380 to her temple.  He asked her if she wanted to live or die that night and then took approximately $1,600, all of the money he had paid her plus money she had earned from other customers.  Mohamadi told her to remain in the alley as he was going to catch a taxi cab, and then fled on foot.

3. A taxi cab driver picked up Mohamadi after being flagged down near Dupont Circle in Washington, D.C. that night.  He took Mohamadi to an apartment complex in Alexandria, Virginia after several course changes.  During this trip the driver loaned his cellular telephone to Mohamadi, from which he made approximately seven calls to his girlfriend.  Once the cab approached the apartment complex in Alexandria, Mohamadi displayed a dark gun, demanded the driver's money and threatened to kill him if he did not give Mohamadi the money.  Mohamadi reached in the driver's pockets and took approximately $400 (all his money) from two of the three pockets.  Immediately after Mohamadi left the area, the driver ran to the street and flagged down another taxi, placing a 911 call moments after being robbed.  On the call, the driver said he did not know the race of the man who had just robbed him, but reported that his assailant said he was an Afghani and was bald.

4. The armed robbery of taxi cab driver first led to a Virginia state trial solely on that matter.  Mohamadi's girlfriend falsely testified under oath in the state proceeding that the telephone calls she received from the taxi driver's cellular telephone on the night of the taxi cab robbery were from another individual.  The state trial ended with a hung jury.  At the subsequent federal trial, however, she testified under a grant of immunity that Mohamadi paid her money before and after her state testimony in exchange for false testimony.  During her federal

testimony, she indicated that she told Mohamadi that the police had been to her apartment and he said that he had done something stupid and had taken money from a cab driver. At his instruction, she never testified to that admission at the state trial. She further testified that she was called by Mohamadi the night before she flew to Alexandria to appear before the federal grand jury, instructing her to plead the Fifth Amendment and refuse to answer questions. Although she testified truthfully before the grand jury, she testified that Mohamadi had instructed her to testify falsely on these recorded conversations (recorded because Mohamadi was speaking on a recorded jail telephone.

5. In the months before Mohamadi's state trial he also sought to hire inmates to murder the taxi cab driver. Three different inmates from two different jails testified at the federal trial regarding their interactions with Mohamadi.

## PROCEDURAL HISTORY

6. Mohamadi was prosecuted in the Commonwealth of Virginia for the armed robbery of a taxi cab driver. In December 2008, the state prosecution resulted in a hung jury. Thereafter, on April 9, 2009, a federal grand jury sitting in the Eastern District of Virginia charged Mohamadi with two counts of Hobbs Act armed robbery in violation of 18 U.S.C. § 1951 (Counts One and Two) relating to the armed robberies of a prostitute and taxi cab driver on the night of May 26 to May 27, 2007, two counts of using a firearm in a crime of violence in violation of 18U.S.C. § 924(c)(1) (Counts Three and Four), one count of felon in possession in violation of 18 U.S.C. § 922(g) (Count Five), two counts of solicitation to commit murder for hire in violation of 18 U.S.C. § 373 (Counts Six and Seven), one count of murder for hire in violation of 18 U.S.C. § 1958 (Count Eight), and two counts of witness tampering in violation of 18 U.S.C. § § 1512(b)(1) and (b)(3) (Counts Nine and Ten). Following a jury trial before this

Court, Mohamadi was convicted of Counts One, Two, Three, Four, Seven, Eight, Nine, and Ten, but acquitted of Count Six.  Mohamadi waived a jury trial for Count Five and was subsequently convicted by this Court post-trial.

7.      Mohamadi filed numerous pretrial motions in this case, both through counsel and subsequently *pro se*.  He filed a motion to dismiss for lack of venue on May 7, 2009.  On May 20, 2009, Mohamadi filed motions to sever counts; dismiss counts one through four for lack of federal jurisdiction; dismiss counts one through five for an alleged speedy trial violation; and to suppress the identifications of the prostitute and taxi cab driver.  A hearing on these motions was held before this Court on September 29, 2009.  After receiving testimony and evidence, this court denied the motions, deferring judgment on the identification motion until after it had the opportunity to view the videotapes of witness interviews and the prostitute's identification.  On May 20, 2009, Mohamadi filed a motion to exclude the videotaped statements he made to a cooperator inside the jail whom he sought to hire to murder the taxi cab driver.  Mohamadi subsequently filed a motion in limine to exclude portions of the recordings which captured him discussing other murders he had committed, his drug dealing, and his prostitution business.  This Court examined the transcripts of the videotaped conversations between Mohamadi and the cooperating inmate and granted the motion in part and denied it in part pursuant to a written order dated March 8, 2010.  The Court precluded as unduly prejudicial those portions of the tape where Mohamadi discussed his prior murders for which he was never arrested as background for the detailed instructions as to how to commit the murder he gave the cooperating witness.

8.      On October 2, 2009, a week before his trial was scheduled to commence, Mohamadi filed a motion for a competency examination, asserting he was hearing voices and

was suicidal.  On October 5, 2009, this Court held a hearing as to Mohamadi's motion concerning his competency and postponed the trial date.  On October 9, 2009, the Court ordered a psychiatric examination of Mohamadi.  At a December 11, 2009 hearing, Dr. Raymond Patterson testified concerning his examination of Mohamadi and his written report was received in evidence.  At the conclusion of this hearing, the Court found Mohamadi competent to stand trial and set a new trial date of February 16, 2010.  Trial commenced on March 10, 2010, and the jury returned guilty verdicts as to Counts 1, 2, 3, 4, 7, 8, 9 and 10.  The jury returned a verdict of not guilty as to Count 6.  Mohamadi waived a jury trial as to Count 5 and the district court found him guilty of that count.  Mohamadi's counsel filed a post-trial motion for a judgment of acquittal or alternatively for a new trial.  On June 17, 2010, the Court denied the motion.  This Court sentenced Mohamadi to 684 months of incarceration.

9. On appeal, Matthew Robinson represented the defendant.  On January 13, 2012, the Fourth Circuit affirmed the defendant's conviction and sentence, holding that the offenses against him were properly joined in a single indictment,  that the admission of incriminating statements made to fellow inmates were not violations of his Sixth Amendment right to counsel, and that venue in the Eastern District of Virginia was proper.  *See United States v. Mohamadi*, 461 Fed.Appx. 328 (4th Cir. 2012) (unpublished).

10. On November 14, 2012, Mohamadi filed a petition for a writ of certiorari to the Supreme Court of the United States, proceeding *in forma pauperis*.  On April 29, 2013, the Supreme Court denied certiorari.  *See Mohamadi v. U.S.*, 133 S.Ct. 2020 (April 29, 2013).

11. On June 20, 2014, pursuant to 28 U.S.C. §2255, Mohamadi collaterally attacked his conviction through a "Motion to Vacate, Set Aside or Correct his Conviction or Sentence or Order an Evidentiary Hearing and Allow Him to Demonstrate Counsel's Ineffectiveness or his

Innocence."  On June 2, 2015, this Court ordered the United States to answer within 23 days of its Order.

## STANDARD OF REVIEW

12. "Under 28 U.S.C. §2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *Cameron v. United States,* 2008 WL 1984254, *1 (E.D.Va. 2008) (citing 28 U.S.C. §2255; *Hill v. United States*, 368 U.S. 424, 426-27 (1962)).  Petitioner bears the burden of proof by a preponderance of the evidence.  *Id.* at *1 (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

13. Petitioner's claim is based upon his assertion of the ineffective assistance of counsel.  Claims of ineffective assistance of counsel are evaluated by the rigorous two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The first prong addresses a counsel's professional competence.  To meet this standard, a defendant must demonstrate that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," i.e., "prevailing professional norms."  *Strickland*, 466 U.S. at 687-88.  However, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  *Id.* at 689-90; *United States v. Terry*, 366 F.3d 312, 316-18 (4th Cir. 2004); *Matthews v. Evatt*, 105 F.3d 907, 919 (4th Cir. 1997).  For a defendant to overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings."  *See Strickland*, 466 U.S. at 689.  The Supreme Court has

cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* The Court noted in particular that the reasonableness of a counsel's actions often depend on "informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691.

14. To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. In other words, a defendant must affirmatively prove prejudice that is so serious as to have deprived him of a fair trial, a trial whose result is unreliable. *See Strickland*, 466 U.S. at 687, 693.

15. The Fourth Circuit has labeled the two prongs of the *Strickland* test as the "performance prong" and the "prejudice prong." *See Fields v. Attorney Gen. Of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Because "[t]he defendant bears the burden of proving *Strickland* prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." *See Fields*, 956 F.2d at 1297; *Strickland*, 466 U.S. at 697; *Terry*, 366 F.3d at 315; and *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

ARGUMENT

16. Mohamadi's motion asserts that his counsel was ineffective. However, his Section 2255 claim on the basis of ineffective assistance of counsel must fail as it does not substantively define any allegations of how his counsel's assistance was deficient or resulted in prejudice. His instant motion contains no substantive allegations that any of his numerous

retained or appointed counsel rendered deficient performances during his trial.  Mohamadi lists four grounds of ineffective assistance of counsel; however, in each instance, he does not provide the supporting facts or law to support his claim, nor does he define which counsel he specifically believes was ineffective.  Instead, each ground references the attached exhibits, which constitute a collection of documents related to matters previously raised and denied during Mohamadi's trial, as well as an affidavit from Mohamadi.

17. Drawing inferences from those documents, Mohamadi asserts that his counsel's performance was deficient, and thus ineffective, in failing to convince the court of the legal sufficiency of several motions he made at trial, as well as in failing to return funds related to his defense in order to allow him to retain new counsel.  This assertion does not even approach the level necessary to demonstrate a deficiency on the part of his various counsel.  First, Mohamadi had numerous defense attorneys and was indulged an extraordinary number of continuances to obtain various counsel of his selection.  Frank Salvato was not his first attorney nor was he trial counsel.  His trial counsel consisted of the Federal Public Defender who personally handled the case with two of his experienced assistants.  This trial representation in no way depended upon Mohamadi's money or lack thereof.  As this Court is aware, the Federal Public Defender is now a United States Magistrate Judge.  Having witnessed the trial, the Court can be assured that no deficient performance occurred and that Mohamadi's defense was extensive and zealous.  Indeed, Mohamadi frequently interrupted proceedings as he make courtroom outbursts, held up a sign during the government's opening and ultimately elected to exercise his right to testify in his own defense.  Counsel's actions were certainly within the range of reasonably effective assistance, if not far exceeding it.  *See Strickland*, 466 U.S. at 689-90.  Mohamadi is no doubt disappointed in the result, but that is not a reflection of his counsel but rather Mohamadi's own

words captured on videotape and recorded.  The trial jury had abundant evidence upon which to judge this case.

18.     Mohamadi claims that he had an agreement with a retained counsel to return some fees upon termination of their relationship.  Mohamadi represents that a Deputy U.S. Marshal was present.[1]   However, the affidavit simply notes that the return of some funds "may" have been possible, depending on the circumstances.  Though Mohamadi asserts that the return of these funds impaired his ability to hire yet more retained counsel, such a failure to return funds does not constitute ineffective assistance of counsel nor must a court explore private contractual relationships not before the Court.  Mohamadi was not represented at trial by this attorney and this Court's attention must be to the substantive defense provided by the Federal Public Defender to whom this defendant owed no funds at trial.  Mohamadi was personally represented by the Federal Public Defender and two of his assistants at trial with all of the resources of their office.  Thus, the record does not reflect ineffective assistance by virtue of funds paid an earlier attorney.  That matter is simply not relevant and courts cannot begin to examine those circumstances outside the scope of the trial conducted before this Court.

19.     The Court's refusal to alter the Marshals' security arrangements under the circumstances is not grounds for an ineffective assistance of counsel claim.   The arrangements imposed by the U.S. Marshals Service were imposed as a matter of security, rather than as a means of punishment, and Mohamadi's access to counsel of record was not restricted.  The Court had before it the substantial security concerns present with a defendant who was ordering murders, established via videotape evidence, from the Alexandria Adult Detention Center as well as similar behavior when previously housed at the Fairfax Detention Facility.  The grand jury found probable cause to believe this defendant had tampered with a witness who testified falsely

---

[1] The government has checked with Mr. Stalnaker, and as he recalls, there was no set agreement.

in a state criminal trial and he repeated the same behavior during the federal grand jury proceedings. Understood within the context of this extremely dangerous pretrial behavior, the steps taken by the U.S. Marshals Service addressing Mohamadi's detention conditions are certainly within the scope of reasonableness.

20. Mohamadi points to security camera footage from the scene of any earlier attempted robbery arguing it may constitute deficient performance. In support of this contention, he provided an affidavit from Mr. Nick Marmaras, manager of the building where Mohamadi used this firearm in an earlier taxi robbery to suggest video footage of that evening could have been obtained. However, as noted in the affidavit, the videotapes were only kept for two years, and thus would have been destroyed around May 2009. This is before the firearm was located and its connection to Mohamadi made by law enforcement at the end of 2009. Mohamadi's counsel simply could not have obtained such footage. In any case the footage would have been further evidence for the government.

21. As detailed in the government's 404b Notice, in the course of this prosecution, a District of Columbia detective summoned to appear during pretrial motions mentioned that a weapon connected to Mohamadi may have been recovered years earlier in a similar crime. The government promptly informed defense counsel that they intended to locate the weapon and related witnesses, and upon location of both, submitted a 404(b) Notice. The Court permitted the gun to be admitted into evidence. Mohamadi does not contest the admission of the gun into evidence, rather points to the surveillance video. However, the video would have already have been lost by the time the firearm was discovered. In any case, the trial jury heard from a witness who knew the defendant well for over a year connecting Mohamadi to the firearm he abandoned

after shattering the taxi window. The firearm was identical to the weapon described by the prostitute as the weapon held to her temple by this defendant.

22. Mohamadi cannot prove that he was prejudiced by experienced counsel's performance and accordingly cannot prevail on an ineffective assistance of counsel claim. Mohamadi cannot demonstrate prejudice as a result of any actions taken by his counsel. With respect to his detention conditions, the U.S. Marshals Service noted that aside from his valid security-related restrictions on communications, Mohamadi was subject to the same conditions at the prison as all other inmates. With respect to his other issues, there is no reasonable probability that Mohamadi would have prevailed on any contested issue at trial. This Court will recall having presided over this lengthy trial, numerous eyewitnesses testified to the defendant's actions extensively corroborated by recorded telephone calls, cell phone records and videotaped efforts to kill a witness before the trial began. Against this rich picture of his actions, Mohamadi's discussion of a surveillance tape and failure to return some portion of fees paid is irrelevant and certainly does not approach prejudice. This is a case where the longer Mohamadi delayed the trial through feigned mental illness and repetitively switching counsel, the government case just got stronger, as demonstrated by the discovery of the firearm.

23. After considering all the material offered by Mohamadi in support of his § 2255 petition, his petition should fail. Mohamadi's personal affidavit is worthless, particularly having been afforded the opportunity to testify at trial in his own defense and to have been convicted by the jury after hearing his various explanations. His offer to leave the United States does not address the need to punish such a dangerous individual, nor does it protect individuals residing in other countries. It is simply a desperate plea to avoid accountability for his actions. Mohamadi's factual contentions about his whereabouts on the night of the crime and his

relationships with the victims constitute factual considerations which should have been addressed in his direct appeal. Having elected to focus on procedural issues, such as venue, joinder, and admissibility of evidence, he cannot now attempt to raise such assertions under the guise of ineffective assistance of counsel. His failure to contest the substantive merits of his conviction on appeal constitutes a waiver of appeal on all matters not raised, and thus his § 2255 petition to vacate or set aside his conviction should be denied.

## CONCLUSION

24. No credible evidence supports Mohamadi's petition that his conviction should be overturned due to ineffective assistance of counsel. He provides no substantive allegations that his counsel was deficient at any point during the trial or appellate processes. Additionally, the matters contested in his affidavit do not constitute performance deficiencies, nor did the asserted failure to consider them prejudice his conviction. To the contrary, the record indicates that defense counsel acted professionally, and went above and beyond to accommodate their client's many requests for motions and changes to his trial timeline. Finally, the factual grounds now contested were not raised on appeal, and thus cannot be considered as new grounds for overturning his conviction. While Mohamadi would surely like his appropriate sentence to be vacated, this petition fails to provide any basis for the relief he seeks. Thus, the Court should summarily deny the defendant's Motion to Vacate, Set Aside, or Correct Sentence.

WHEREFORE, the government respectfully submits that Mohamadi's instant motion be denied.

                                      Respectfully submitted,
                                      Dana J. Boente
                                      United States Attorney


By       _____/s/_____/
              Ronald L. Walutes, Jr.
              Virginia Bar number 26312
              Assistant United States Attorney
              United States Attorney's Office
              Justin W. Williams U.S. Attorney's Building
              2100 Jamieson Avenue
              Alexandria, VA 22314-5794
              Phone: 703-299-3700
              Fax: 703-739-9556
              Email Address: Ron.Walutes@usdoj.gov

              _____/s/_____/
              Michael P. Ben'Ary
              Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing government's opposition using the CM/ECF system, on June 19, 2015, as well as mail a copy of the motion to:

Mirwais Mohamadi
#73533-083
U.S.P. Atwater
P.O. Box 019001
Atwater, CA 95301


                                        /s/
                                        Ronald L. Walutes, Jr.
                                        Virginia Bar number 26312
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Justin W. Williams U.S. Attorney's Building
                                        2100 Jamieson Avenue
                                        Alexandria, VA 22314-5794
                                        Phone:  703-299-3700
                                        Fax: 703-739-9556
                                        Email Address: Ron.Walutes@usdoj.gov