IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| MIRWAIS MOHAMADI, ) <br> ) <br> Petitioner, ) <br> ) <br> -v- ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Criminal No. 1:09-cr-179 <br> Civil Case No. 1:14-cv-496 <br><br> Hon. Liam O'Grady |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *pro se* Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 240). Since filing this motion, Petitioner has also filed a motion for production of transcripts (Dkt. No. 252), a motion for discovery (Dkt. No. 253), a motion to expand the record (Dkt. No. 254), and a motion for an evidentiary hearing (Dkt. No. 255). Petitioner's motion to expand the record with certain affidavits and exhibits (Dkt. No. 254) is **GRANTED**, however, that ruling has no practical effect on his petition. All of Petitioner's other motions are hereby **DENIED**, and his petition is hereby **DISMISSED**.

## I. BACKGROUND

On April 9, 2009, a grand jury sitting in the Eastern District of Virginia indicted Mirwais Mohamadi ("Mohamadi" or "Petitioner"). The indictment alleged that Mohamadi committed the following offenses: two counts of armed robbery in violation of the Hobbs Act, 18 U.S.C. § 1951 (Counts 1 and 2); two counts of using a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Counts 3 and 4); one count of being a felon in possession of a

1

firearm in violation of 18 U.S.C. § 922(g) (Count 5); two counts of solicitation to commit murder for hire in violation of 18 U.S.C. § 373 (Counts 6 and 7); one count of murder for hire in violation of 18 U.S.C. § 1958 (Count 8); and two counts of witness tampering in violation of 18 U.S.C. §§ 1512(b)(1), (3) (Counts 9 and 10).

On March 18, 2010, a jury convicted Mohamadi of Counts 1, 2, 3, 4, 7, 8, 9, and 10. He was acquitted of Count 6. With respect to Count 5, Mohamadi had waived a jury trial. Following a bench trial, this Court convicted Mohamadi of Count 5. On June 18, 2010, the Court sentenced Mohamadi to a total term of 684 months of imprisonment, consisting of 180 months on Counts 1, 2, 5, 9, and 10, to run concurrently to each other; 60 months on Count 7, to turn concurrently with the above counts; 120 months on Count 8, to run consecutively with all other counts; 84 months on Count 3, to run consecutively with all other counts; and 300 months on Count 4, to run consecutively to all other counts.

Mohamadi appealed the judgment of conviction to the United States Court of Appeals for the Fourth Circuit. By unpublished opinion dated January 13, 2012, the Fourth Circuit affirmed each of the petitioner's convictions. *See United States v. Mohamadi*, 461 F. App'x 328 (4th Cir. Jan. 13, 2012) (per curiam). Petitioner's subsequent petition for a writ of *certiorari* to the United States Supreme Court was denied on April 29, 2013. *See Mohamadi v. United States*, 133 S. Ct. 2020, 185 L. Ed. 2d 888 (2013).

On June 20, 2014, Mohamadi filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 240). At the Court's direction, the Government responded to this motion (Dkt. No. 245), and Petitioner has replied (Dkt. No. 249). Petitioner has also filed two supplemental briefs in support of his motion. (Dkt. Nos. 257, 258). After reviewing these filings, the motion is now ripe for resolution.

2

## II. STANDARD OF REVIEW

Petitioner is entitled to relief under 28 U.S.C. § 2255 if he demonstrates that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Petitioner bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[ ] in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 442, 428 (1962)). A motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived by a failure to appeal are therefore procedurally defaulted unless the movant can show cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 165–67 (1982); *United States v. Maybeck*, 23 F.3d 888, 891–92 (4th Cir. 1994) (applying standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral attack on his conviction or sentence. *See United States v. Martinez*, 136 F.3d 972, 979 (4th Cir. 1998); *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991); *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).

## III. DISCUSSION

Mohamadi has alleged 21 "grounds" for relief. All of them appear to make some iteration of a Sixth Amendment "ineffective assistance of counsel" argument. *See generally*

Petr's Mem. in Supp. None of these grounds meet the standard for ineffective assistance of counsel.

To establish ineffective assistance of counsel, Mohamadi must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires showing "that counsel's representation fell below an objective standard of reasonableness" and that the defendant suffered prejudice from that substandard performance. *Id.* at 687–688. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "Once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are virtually unchallengeable." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009). To show prejudice, Mohamadi must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also id.* at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). The burden of proving both prongs is on the petitioner, who must do so by a preponderance of the evidence. *See Strickland*, 466 U.S. 668 at 696-97; *Berry v. United States*, 884 F. Supp. 2d 453, 457 (E.D. Va. 2012).

In large part, Mohamadi's claims contain arguments that are either duplicative or otherwise seek to re-litigate issues that were raised, or should have been raised, on appeal. Thus, where appropriate, the Court will group these claims together and address them summarily. Nonetheless, there are a few categories of claims that warrant additional attention. They are the: (1) "counsel of choice" argument; (2) the "failure to investigate" argument; and (3) the *Brady*/evidentiary arguments. The Court will address these arguments in turn.

A. **Counsel of Choice**

Mohamadi argues that he was denied effective assistance of counsel because he was unable to obtain his counsel of choice. *See* Petr's Mem. in Supp. at 3–5. After he was indicted, Mohamadi retained attorney Frank Salvato as defense counsel. Mohamadi alleges that he and Mr. Salvato had an agreement under which Mohamadi would put $40,000 in a trust account to pay for Mr. Salvato's services, and Mr. Salvato would return unused money. Specifically, when Mohamadi chose to terminate Mr. Salvato's representation, Mr. Salvato was to return $20,000 to Mohamadi. Evidently Mr. Salvato failed to do so.

Initially, it is worth noting that Mr. Salvato was not Mohamadi's trial counsel. Instead, the Federal Public Defender personally handled Mohamadi's defense, with the help of two experienced assistants. This defense team filed numerous pre-trial motions, and was successful in suppressing prejudicial videotape evidence of some of Mohamadi's incarcerated conversations. On appeal, Mohamadi was represented by Matthew Robinson, who raised both procedural and substantive challenges to his convictions. Thus, the record reveals that Mohamadi's counsel zealously defended him at every stage of the proceedings.

Nonetheless, Mohamadi argues that he was unable to obtain counsel of his choice because he lacked funds due to Mr. Salvato's failure to return the $20,000. In support of his argument, he cites to the following cases: *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557 (2006); *United States v. Inman*, 483 F. 2d 738 (4th Cir. 1973); and *United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006), aff'd 541 F.3d 130 (2d Cir. 2008). *See* Petr's Mem. in Supp. at 5. These cases are all distinguishable.

In *Gonzalez-Lopez*, the Supreme Court held

> Where the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a

5

> Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

*Gonzalez-Lopez*, 548 U.S. at 149.

In that case, the district court denied the applications for *pro hac vice* admission filed by the attorney the defendant wished to have as his counsel. *Id.* at 142. The Eighth Circuit vacated the conviction because the defendant's Sixth Amendment right to counsel of his choice was violated by the district court's refusal to grant *pro hac vice* admission under the circumstances. *Id.* at 143–144. The Supreme Court affirmed the Eighth Circuit. *Id.* at 152.

*Gonzalez-Lopez* is entirely distinguishable from the instant case. This Court did not refuse to grant *pro hac vice* admission to the attorney of Mohamadi's choice. Indeed, the Court did not interfere in any way with Mohamadi's relationship with Mr. Salvato; it was Mohamadi who fired Mr. Salvato. The Court played no part in that decision. Mohamadi's sole claim is that Mr. Salvato's failure to return the $20,000 precluded Mohamadi from hiring other counsel. But Mr. Salvato's failure to return Mohamadi's money is in no way attributable to this Court or to the Government. Indeed, Mohamadi's claim appears to be no more than a breach of contract case against his former lawyer. Thus, this case is different from the facts presented in *Gonzalez-Lopez*, and the Court concludes that it does not amount to the Government denying access to Mohamadi's counsel of choice.

In *Stein*, the Second Circuit affirmed the district court's dismissal of the indictment due to violation of defendants' right to counsel of choice. There, the defendants claimed that the government "unjustifiably interfered with their relationship with counsel" when the Government pressured a company to stop paying its employees' attorneys' fees. *Stein*, 541 F.3d at 155 (2d Cir. 2008). There is no allegation in the instant case that the government caused Mr. Salvato to

6

refuse to return Mohamadi's money, and there is no governmental bar to Mohamadi seeking to recover his money directly from Mr. Salvato. Accordingly, *Stein* is also thoroughly distinguishable.

The third case cited by Mohamadi, *Inman*, is similarly distinct. In that case, the defendant was appointed counsel. *Inman*, 483 F.2d at 739. Approximately one week before trial was set to begin, defendant's mother retained private counsel to represent defendant. *Id.* Six days before trial, retained counsel suggested that the trial date be continued. *Id.* The district judge declined to grant a continuance and ruled that appointed counsel would continue to represent the defendant. *Id.* Retained counsel did not file a formal motion for continuance until the morning of trial, at which time, the motion was denied. *Id.* The trial went forward with appointed counsel representing the defendant. The Fourth Circuit affirmed the district court's exercise of discretion under the circumstances.

Mohamadi makes no allegation that he sought to receive a continuance after having retained new counsel. Indeed, he argues elsewhere in his motion that the Court improperly granted continuances to the Federal Public Defender appointed to represent him after Mr. Salvato withdrew. Accordingly, *Inman* provides no support for Mohamadi's position. For these reasons, Mohamadi has failed to show that his right to choice of counsel was violated.

Mohamadi makes the same assertion with respect to his appellate counsel's failure to raise his counsel of choice argument on appeal. Petr's Mem. in Supp. at 31–34. Mohamadi now argues that the Court "blocked [his] access to [his] money," thereby preventing him from obtaining counsel of choice. *Id.* at 31. However, he does not contend that the Court restrained his assets.[1] Rather, Mohamadi's argument is that, because of restrictions on his ability to

---

[1] Indeed, Mohamadi now appears to contend that he had assets including money, jewelry, and a vehicle, the implication being that he could have used these assets to hire a lawyer. Petr's Mem. in Supp. at 31. This is directly

7

communicate with people outside of the jail, he was constructively denied access to his money. *See id.* at 32 ("[N]o matter how much money you have if the Courts block all forms of communication there is no way to use your money in your defense.").

More broadly, he alleges that the communication restraints he experienced while incarcerated prevented him from accessing counsel. Mohamadi filed a *pro se* pretrial motion to dismiss the indictment or alternatively to continue the trial and modify restrictions of his confinement pending trial on the ground that these restrictions violated his Sixth Amendment rights. (Dkt. No. 146). The Court denied the motion and Mohamadi did not address this decision on appeal. In this vein, it is worth recalling that Mohamadi was indicted for obstruction of justice and for soliciting murder while in prison. Thus, the restrictions on Mohamadi's communications were made as a matter of security rather than a means of punishment. Moreover, the Marshals' service never impeded Mohamadi's access to counsel, and the Federal Public Defender represented him at every stage of the trial. Because there is no evidence that the security restrictions imposed on Mohamadi in jail prevented him from retaining a lawyer, the Court finds there was no ineffective assistance of appellate counsel.

Mohamadi also argues that counsel was ineffective by failing to raise on appeal that his right to self-representation was violated when the Court denied Mohamadi's motion to proceed *pro se*. Because the Court does not believe Mohamadi's right to self-representation was violated, Mohamadi has shown neither deficient performance nor prejudice.

### B. Failure to Investigate and Obtain Evidence

Mohamadi also argues that counsel failed to investigate or uncover favorable evidence pertaining to the robbery charges (Counts 1 and 2) and the charges of murder for hire and

---

contradictory to his argument that he was without money to hire a lawyer due to Mr. Salvato's failure to return the $20,000.

8

witness tampering that occurred while Mohamadi was in jail (Counts 6, 7, 8, 9, 10).[2] *See* Petr's Mem. in Supp. at 7–10.

1. *Video Recordings*

Mohamadi first argues that counsel failed to obtain video recordings from "Steve's Bar Room" in Washington, D.C. He believes these videos would have rebutted statements by a prostitute, Ms. Riley, who claimed that she and Mohamadi were at the bar together. In support, Mohamadi attached to his motion the affidavit of a building manager at Steve's Bar Room. *See* "Ex. F" (Dkt. No. 240-2). However, the affidavit is fatal to Mohamadi's argument, because it would not have been reasonable for defense attorneys to obtain the video footage in the time allotted. The bar employee swore in his affidavit that the building had security cameras which would have been produced had the government or the defense requested the videos. *Id.* However, he also stated that the recordings were only available for 2 years. Ms. Riley testified that she and Mohamadi went to the bar very early in the morning on May 27, 2007, meaning the relevant footage would not have been available past May 27, 2009.[3] Mohamadi was not indicted until April 9, 2009, and the Federal Public Defender was appointed on April 13, 2009. Defense counsel's alleged failure to obtain the video recordings within approximately a month and a half of joining the case does not fall below an objectively reasonable standard of performance. Accordingly, Mohamadi has failed to satisfy the performance prong of *Strickland*.

Moreover, given the "overwhelming evidence of Mohamadi's guilt on each offense on which he was convicted," *Mohamadi*, 461 F. App'x at 333 n.6, the Court has reason to doubt that the security footage would have provided anything beneficial to Mohamadi's defense. Indeed,

---

[2] Mohamadi was acquitted of Count 6, yet strangely he argues that defense counsel performed deficiently with respect to this Count as well.
[3] The affiant incorrectly refers to "Labor Day" weekend, but the events in question occurred on Memorial Day weekend.

9

even if the security camera did not clearly show him at the bar, the jury could have concluded that it simply did not capture him on that night. Thus, he has not met the prejudice prong of the *Strickland* test either.

### 2. *Cell Phone Information*

Mohamadi also argues that counsel failed to obtain the "cell site location for [his] phone" and "cell site location of [the victims'] phones." Petr's Mem. in Supp. at 8. The argument is mentioned in a parenthetical and Mohamadi does not elaborate on why such information would have helped his defense. Absent more information as to why Mohamadi believes this constituted deficient performance and what the effect of this evidence may have been, the Court cannot make a determination regarding ineffective assistance of counsel.

### 3. *Fingerprint Examiner*

Mohamadi makes a very brief argument concerning counsel's alleged failure to "investigate" the fingerprint examiner. Petr's Mem. in Supp. at 8. Mohamadi's argument spans two sentences with no supporting information. He has therefore failed to carry his burden to show deficient performance and prejudice and by a preponderance of the evidence.

### C. **Brady Violations and Discovery Motions**

Mohamadi next argues that counsel failed to raise arguments regarding the Government's alleged *Brady* violations. Petr's Mem. in Supp. at 16–19. Mohamadi previously raised this issue in a *pro se* motions on March 2, 2010 (Dkt. No. 125), and again on April 22, 2010. (Dkt. No. 172). The Court found that these objections had no merit and denied the motions. Mohamadi did not raise the issue again on appeal, and therefore he has procedurally defaulted on the claims.

This argument leads directly into Petitioner's additional post-appeal motions. These are: a motion to add certain affidavits and exhibits to the record (Dkt. No. 254), a motion for

production of transcripts (Dkt. No. 252), a motion for discovery (Dkt. No. 253), a motion to expand the record, and a motion for an evidentiary hearing (Dkt. No. 255). Initially, the Court GRANTS Mohamadi's motion to expand the record. Indeed, the discussion above shows that the Court readily considered and analyzed the exhibits and affidavits that he submitted in support of his petition. That ruling, however, does nothing to change the disposition of his petition.

In large part, these motions all seek to expand the record to address factual challenges to his conviction. For example, the motion for discovery states that he will seek evidence to prove that "Joseph Battista and the A.T.F. paid Richard Bryan to set up Petitioner." Mot. for Discov. ¶ 3. The time for this sort of factual challenge was at trial. Motions under § 2255 do not exist to explore every potential defense that petitioners might have raised, but are instead to protect against "a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 442, 428 (1962)). In this case, the only evidence that Mohamadi adduces to support his factual claims comes in the form of his own unsupported statements. *See* Mohamadi Aff. (Dkt. No. 240-2).

Because Mohamadi took the stand in his own defense, the jury had ample opportunity to consider his side of the story, and the Court therefore finds that Mohamadi has not met the high burden of showing any miscarriage of justice in the failure to consider or further develop his allegations. For the same reasons, the Court finds that an evidentiary hearing is not necessary.

The motion for transcripts is denied on similar logic. First, these transcripts were available to Mohamadi beginning on March 25, 2011, when the Court notified the parties that it had released the official transcript for appeal. (Dkt. No. 230). Second, Petitioner only filed this motion after fully briefing his § 2255 and fully responding to the Government's opposition. He has even filed two supplemental briefs after those filings. Thus, he has exhausted his

opportunity to file briefs in support this motion, and any addition filing would likely constitute a successive § 2255 petition, for which prior approval is required. *See* 28 U.S.C. § 2244(b)(3)(A); *United States v. Winestock*, 340 F. 3d 200, 207 (4th Cir. 2003) (setting forth the standard for determining whether a motion qualifies as a successive § 2255). Thus, the availability of these transcripts would not serve any legitimate purpose.

### D. Procedural Default and Prejudice Under *Strickland*

Underlying the Court's consideration of these issues is the fact that the arguments Mohamadi raised on appeal (or should have raised on appeal) cannot be re-litigated here. *See Frady*, 456 U.S. at 165–67. On appeal, the Fourth Circuit specifically stated that: "Put simply . . . there was overwhelming evidence of Mohamadi's guilt on each offense on which he was convicted." *Mohamadi*, 461 F. App'x at 333 n.6. In affirming Mohamadi's conviction, the Fourth Circuit specifically considered and rejected arguments regarding (1) whether the charges were appropriately joined; (2) the admission of incriminating jailhouse statements; (3) venue; and (4) sufficiency of the evidence for Hobbs Act robbery. *Id.* at 331–32. In addition, the court summarily rejected a variety of arguments, including: (1) the admission of a photographic line-up identification; (2) the difference between the allegations in the indictment and the jury instructions; and (3) alleged violations of the Speedy Trial Act. *Id.* at 332 n.4. Thus, to the extent Mohamadi raises any of these issues in this Motion (as opposed to Sixth Amendment claims), he must be able to allege "cause" and "prejudice" in order to levy a proper collateral challenge against his conviction. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Moreover, in light of the Fourth Circuit's finding that "there was overwhelming evidence of Mohamadi's guilt," the burden of showing prejudice is extremely high. *Mohamadi*, 461 F. App'x at 333 n.4. This means that, in order to succeed, Mohamadi must do more than suggest

that his counsel was inadequate because it failed to persuade the Court that it should grant Mohamadi's motions. He must instead point to specific evidence of misconduct or inadequacies in order to maintain his burden. In this case, he has failed to do so. Under these principles, the Court can summarily reject many of Mohamadi's arguments.

1. *Speedy Trial*

Mohamadi argues that counsel failed to secure a speedy trial. Petr's Mem. in Supp. at 5–6. The Fourth Circuit has already rejected Mohamadi's arguments regarding speedy trial. *See Mohamadi*, 461 F. App'x at 332 n. 4 ("Mohamadi asserts that his speedy trial rights were contravened. This contention is…baseless."). Because there was no speedy trial violation, Mohamadi cannot show ineffective assistance of counsel in this regard.

2. *Actual Innocence*

Mohamadi argues that he is actually and factually innocent of the crimes of conviction. Petr's Mem. in Supp. at 37–41. This portion of Mohamadi's memorandum is largely duplicative of his previous arguments, and it fails to assert any plausible claim of ineffective assistance of counsel. Moreover, it runs directly contrary to the Fourth Circuit's statement that there was overwhelming evidence to support each conviction.

3. *Jury Challenge*

Mohamadi also argues that counsel failed to raise on appeal the denial of his motion to challenge the jury selection procedures. Petr's Mem. in Supp. at 24. Mohamadi makes baseless assertions that Hispanics, blacks, and "blue collar citizens" were excluded from the jury. *Id.* Because these assertions are without merit and devoid of supporting evidence, the Court concludes Mohamadi has failed to show deficient performance or prejudice.

13

### 4. *Failure to Object*

Mohamadi's next assertion is that counsel failed to object to this Court's "constructive amendment" of the indictment. Petr's Mem. in Supp. at 10. Mohamadi argues that the Court lacked jurisdiction to sentence him for Counts 6 and 7, the solicitation to commit murder for hire charges, and counsel improperly failed to object. *See id.* at 25 – 26. With respect to Count 6, the argument is obviously moot, since Mohamadi was acquitted of that Count. With respect to Count 7, the Court summarily rejects the argument that jurisdiction was lacking. Accordingly, counsel could not be deficient.

### 5. *Sufficiency of the Indictment*

Mohamadi contends that counsel failed to challenge the deficiency of the indictment with respect to Counts 1 and 2, the Hobbs Act robbery charges. *See* Petr's Mem. in Supp. at 26–29. Specifically, he challenges this Court lacked jurisdiction and venue over the crimes. Mohamadi is wrong that counsel failed to raise these arguments—indeed, counsel filed a motion for acquittal arguing that the Court lacked jurisdiction on Counts 1–4 and lacked venue on Counts 1–3. The Court rejected the arguments. For this reasons, the ineffective assistance of counsel argument is rejected for these counts.

### 6. *Suppression*

Mohamadi argues that his counsel was ineffective in failing to achieve suppression of certain video recordings of Mohamadi making statements to a jailhouse informant. He does not contend, and he cannot contend, that counsel failed to argue for suppression. Mohamadi readily admits, and the record discloses, that counsel filed several pretrial motions to suppress, including a motion to suppress the statements made to the jailhouse informant (Dkt. No. 21) and a

14

supplemental motion arguing for, among other things, suppression of the statements to the jailhouse informant. (Dkt. No. 93).

Rather, Mohamadi argues that counsel misunderstood the relevant case law and failed to cite a controlling case, *Kansas v. Ventris*, 556 U.S. 586 (2009), which elaborated on the meaning of *Massiah*. The Court does not believe that counsel performed deficiently because this particular case was not cited, nor has prejudice been shown.

Mohamadi then asserts that appellate counsel was deficient for the same reason as trial counsel. Petr's Mem. in Supp. at 29–31. The Fourth Circuit has already rejected Mohamadi's *Massiah* arguments. Again, he argues merely that counsel failed to cite *Ventris* in making the *Massiah* argument to the Fourth Circuit. Mohamadi is essentially attempting to collaterally attack the appellate court's ruling under the guise of ineffective assistance of counsel. The Court does not believe appellate counsel was deficient, nor is there any showing that the Fourth Circuit likely would have ruled otherwise had *Ventris* been cited.

    7.    *Grand Jury Testimony*

Mohamadi contends that counsel failed to object to allegedly false grand jury testimony by Riley. Petr's Mem. in Supp. at 20–21. The Court previously rejected a pre-trial *pro se* motion for production of grand jury material, finding that Mohamadi demonstrated no cause for the production. (Dkt. No. 143). Accordingly, no claim for ineffective performance of counsel arises on this ground. To the extent Mohamadi renews his request for grand jury material, the Court denies the request for failure to show cause pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii) and *U.S. v. Wallace*, 528 F.2d 863, 865 (4th Cir. 1976).

8.  *Diminished Capacity*

Mohamadi also argues that counsel failed to "pursue a diminished capacity defense" to the murder for hire and witness tampering charges. Petr's Mem. in Supp. at 9. This argument is belied by the record, which shows that the Court granted Mohamadi's motion for a psychiatric exam (Dkt. No. 54) and found him competent to stand trial. The evidence therefore does not support these contentions, and further discussion of the issue is not warranted.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, it is hereby

**ORDERED** that Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255 (Dkt. No. 240) is **DENIED** and the petition is **DISMISSED**.

This is a final order for purposes of appeal. To appeal, petitioner must file a written notice of appeal with the Clerk's Office within sixty (60) days of the date of this Order. *See* Fed. R. App. P. 4(a)(1)(B). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order that Petitioner wishes to appeal. Petitioner need not explain the grounds for appeal until so directed by the court. Petitioner must also request a certificate of appealability from a circuit judge. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b). For the reasons stated above, this Court expressly declines to issue such a certificate.

The Clerk is **DIRECTED** to forward a copy of this Order to the *pro se* petitioner.

May ___, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge